# EXHIBIT 6

**'616 Patent – Preliminary Initial Infringement Contentions**

*The Earbuds Software (www.earbudsmusic.com)*

| Claim Language | Elements Shown in Accused Product |
|---|---|
| Claim 14(a). A social broadcasting method for enabling members of a user group to synthetically broadcast select content to other members of the user group… | As shown below in image A, the Earbuds system allows users, individuals, consumers such as @jamesjameson (upper right) to broadcast live a feed. In the square, the icon shows the image and a word. The pink shows a "live" feed and lists the number of people looking / listening in (e.g. here only 1). Image B shows a selection from the Image A of Ms. Jameson. The system immediately broadcasts music from the user's own selected legal library (i.e. Apple Music, Spotify, etc.). Images are offered and also in addition to the "live" tab is a "Comments" live button. Image C is shows comments and here text or gif images are entered for discussion between the different people in this "channel" managed by Ms. Jameson.<br><br>Image A        Image B        Image C |

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
|  | The above cleary is a social broadcasting system and associated method for enabling members of a user group (here all those who listen in to Ms. Jameson's music experience) to synthetically broadcast select content to other members of the user group. For example, here Ms. Jameson broadcasts music, speech between songs and can even add text. Other memebers of the user group can broacast images and text to the other members of this customized user group.<br><br>If the body of a claim fully and intrinsically sets forth all of the limitations of the claimed invention, and the preamble merely states, for example, the purpose or intended use of the invention, rather than any distinct definition of any of the claimed invention's limitations, then the preamble is not considered a limitation and is of no significance to claim construction. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305,51 USPQ2d 1161, 1165 (Fed. Cir. 1999). |
| Claim 14(a2) … the members of the user group each having access to a medium-processing computer, | Here, every member of the above group who uses Earbuds uses one of multiple types of devices accessible for the Earbuds system such as a cell phone, a tablet or a computer. The computer (e.g. cell phone, a tablet or a computer) is able to process the medium (i.e. the images, the music, the text, etc.) and is thus a medium-processing computer where each user can access as part of the group. |
| Claim 14(a3)… the social broadcasting method comprising the steps of: | This is a transitory language which does not add additional elements or limitations except for the term "comprising" which is a patent-law term of art inclusive and open-ended and does not exclude additional, unrecited elements or method steps. *Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir.. 2004); MPEP § 2111.03(I). As such, the current analysis can disregard any additional elements and functions as long as all the elements described in the claim Steps 1 to 9 below are explicitly or implicitly found in the Earbuds routing and synchronization system. |
| Claim 14 (Step 1) … establishing an instruction-passing second channel to each medium-processing computer over an operable network via a first non-transitory | As defined by the invention, the second channel is a direct communication between the users of Earbuds who are in relation with each other. Information between users, using a Wi-Fi or Wireless connection use the medium-processing computers (i.e. the cells, tables, or computers) to establish between users an instruction-passing second channel to each |

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
| computer-implementable medium made operable via medium-processing computers; | device over the internet or such related connections between users forming an operable network. As explained, the system of Earbuds is not transitory. |
| Claim 14 (Step 2) …. generating routing and playback instructions at each medium-processing computer over the operable network via the first non-transitory computer-implementable medium, the routing and playback instructions for governing playback of the select content via a content-delivery first channel; | In the above example, Ms. @jamesjohnson generates routing and playback instruction relating to a set of music sections. Below is reproduced part of the screen shots from the process by any user of selection of music. <br><br> *[screenshot of live feed showing jamesjameson, with "Just What I Needed" by The Cars playing, "Up Next" below]* <br><br> In above, the live feed plays "Just What I Needed" from The Cars and below other songs / media is "Up Next." In the above, Ms. James Jameson's cell is generating routing and playback instructions at each medium-processing computer (i.e. ever cell from the group) over the operable network (e.g. the internet) via the first non-transitory computer-implementable medium as described at Step 1. The information sent includes routing and |

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
|  | playback instructions for governing playback of the select content (e.g. "Just What I Needed" from The Cars" via a content-delivery first channel such as a direct connection from Spotify or Apple Music. |
| Claim 14 (Step 3) … passing the routing and playback instructions to each medium-processing computer via the instruction-passing second channel; | In the above, information which was generated is now passed to each medium-processing computer (e.g. cell, tablet, or computer) of the different members of the group. Such is done via an instruction-passing second channel that is established and must remain open between all of the members of this group. |
| Claim 14 (Step 4) …. sharing sourced content with content-receiving members of the user group via a group origination member; | Image D  Image E  Image F  In the above, a group origination member, such as either Ms. @jamesjones or even the person itself is invited in sharing music live as shown at Image D. The person then uses a |

4

DM2\13668702.2

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
| | tool to select songs as shown at Image F from a library which is connected to a legal source. Image E shows how the system manages information as to listened and shared information.<br><br>In the above illustrations, Earbuds is sharing sourced content with content-receiving members (i.e. all those who are listening live or connected to hear) of the user group (e.g. the set up group, a live connection, or any other group offered at Image A and this is done via a group origination member such as the user or @jamesjameson. |
| Claim 14 (Step 5) … querying whether the shared sourced content is most efficiently sourced at each of the medium-processing computers associated with the content-receiving members; | The Apple music description above describes a routing and synchronization system using several hand-held devices which is operable in tandem with a person's own one or more data sources (e.g. Apple Music, Spotify, etc.) within a network-based media content playback environment named generally EarBuds. In this environment, music is played along with other media. The network operates between people placed in a network-based media content playback environment. Earbuds' main purpose is to provide a music as selected for broadcast to a consumer. Earbuds allows, as explained, for two or more people to listen to the same music and media irrespective of the source. The Terms of Services issued by Defendant read at Section 7: "Earbuds enables End Users to synchronize music streams in real time to create a social listening experience as available through the Application and through the Site; the Application and Site also make available products, certain features, functionality, and content accessible on or through the Application may be hosted on the Site (collectively, "Content and Services")." Then describing the sources, Earbuds advertises: "Syncs with Apple Music and Spotify: Connect your paid Apple Music or Spotify account to share music LIVE and tap to play any song. Listen together regardless of streaming service."<br><br>Earbuds itself describes the service as used to synchronize music and route consumable legally-protected media such as music in real time between people and the sites offered such as Apple Music or Spotify account are legally-protected media content. As part of the "FAQ" section on www.earbudsmusic.com/faq one of the situation is: "Why can't I create an account with my Spotify?" and the answer is "*EarBuds only works with premium music services right now. If you can't login with your Spotify account, you probably only have a free account. We are working to make free accounts in the future, but in the meantime you* |

5

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
| | *can check out Spotify to see if they are offering a free premium trial. You can also click the "Get a free trial today!" link on the Connect Your Paid Music Service screen to sign up for a free trial with Apple Music."*<br><br>Earbuds then is querying whether the shared sourced content (i.e. the music to be played) is most efficiently sourced at each of the medium-processing computers associated with the content-receiving members, in this case to be uploaded via a principal channel from the legal source. |
| Claim 14 (Step 6) …. and sourcing content to each of the medium-processing computers associated with the content-receiving members from an optimal secondary content source selected from at least two secondary content sources in communication with each medium-processing computer associated with the content-receiving computers via the first non-transitory computer-implementable medium, each secondary content source being characterized by a separate secondary legal access point, said source selection being based on individually-defined parameters; | As explained above, after securing the information each user's cell, table, or computer using Earbuds and connected to either Spotify, Apple Music, etc. is then sourcing content (i.e. the music to be played) to each of the medium-processing computers (e.g. the cell phone) associated with the content-receiving members (e.g. the live music group individuals) from an optimal secondary content source (such as Spotify or Apple Music) selected from at least two secondary content sources (i.e. Spotify or Apple Music) in communication with each medium-processing computer associated with the content-receiving computers via the first non-transitory computer-implementable medium, each secondary content source being characterized by a separate secondary legal access point, said source selection being based on individually-defined parameters. The connection to these legal sources is described with precision to new users of the Earbuds system. |

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
|  | **Syncs Seamlessly with Spotify and Apple Music**<br>Connect your paid Apple Music or Spotify account to share music LIVE and tap-to-play any song. Listen together regardless of streaming service.<br><br>From www.earbudsmusic.com |
| Claim 14 (Step 7) …mapping content resources from amongst differing legal access points without redistributing sourced content; | Since not all users of the system are connected to the same source, Earbuds is able once a specific song is selected (content resource) to map this content for different legal access points without redistributing sourced content between the different users. The FAQ offer:<br><br>*"Right now, you can only be logged in to EarBuds with one or the other music service at a time. To switch between music service accounts, go to your profile on the My Music tab, tap the ⋮ menu in the top right corner and Sign Out. Close and reopen the app, choose Sign In, then choose the music service account you want to use."*<br><br>For example, if a person has Apple Music and the other has Spotify, the system maps this resource from both legal access points but the content (the music) is not shared ore redistributed. |

**EXHIBIT 6**

| Claim Language | Elements Shown in Accused Product |
|---|---|
| Claim 14 (Step 8) … and simultaneously accessing the select content by the members of the user group as initiated by the content origination member and received from the select optimal content resource locations by the content-receiving members within the user group for the purpose of providing a content-based platform for social interaction. | This final step relates to Earbuds simultaneously accessing the select content by the members of the user group, such as all the thousands of live listeners in a specific selected group as initiated by the content origination member (e.g. the DJ here @jamesjameson) and received from the select optimal content resource locations (e.g. Spotify and Apple Music) by the content-receiving members (i.e. all the members who will be played the song selected from these sources) within the user group for the purpose of providing a content-based platform for social interaction. |