IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERTIGO MEDIA, INC. and REMOTE MEDIA LLC, | ) ) ) | ████████████████ |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-120-MN |
| EARBUDS INC. | ) ) | |
| Defendant. | ) ) ) | |

## EARBUDS INC.'S ANSWER IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Of Counsel:*

Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Boulevard, Suite 2170
Los Angeles, CA  90025
(310) 975-7074

Douglas L. Bridges
NOROOZI PC
4204 Rochester Road
Mobile, AL 36608
(251) 533-0461

Dated:  July 21, 2021

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

# Table of Contents

I.      Introduction                                                                              1

II.     Nature and Stage of the Proceedings                                                        1

III.    Summary of the Argument                                                                    1

IV.     Statement of Facts                                                                         2

V.      Argument                                                                                   2

        A.      Plaintiffs' Motion violates this Court's Rules, and lacks any evidence             2

        B.      Plaintiffs cannot succeed on the merits                                            5

                1. The '024 patent claims are invalid under Section 112(f)                         5

                2. The '024 patent claims are invalid under Section 112(a)                         7

                3. All asserted claims of each patent are invalid under Section 101                9

                4. Earbuds does not infringe any asserted claim                                    13

        C.      Plaintiffs do not show irreparable harm                                            18

        D.      The balance of hardships weighs against an injunction                              19

        E.      The public interest weighs heavily against a preliminary injunction                20

VI.     Conclusion                                                                                 20

# Table of Authorities

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,

   324 F. Supp. 3d 470 (D. Del. 2018) ........................................................ 20

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*,

   579 F. Supp. 2d 554 (D. Del. 2008) ........................................................ 21

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,

   838 F.3d 1253 (Fed. Cir. 2016) .............................................................. 12

*Akshayraj, Inc. v. Getty Petroleum Mktg.*,

   2007 U.S. Dist. LEXIS 15621 (D.N.J. Mar. 6, 2007) ................................ 3

*Alice Corp. v. CLS Bank Int'l*,

   134 S. Ct. 2347 (2014) ........................................................................ 11

*Apple, Inc. v. Samsung Ele.*,

   695 F.3d 1370 (Fed. Cir. 2012) ....................................................... 19, 22

*British Telecomms. PLC v. IAC/InterActiveCorp*,

   381 F. Supp. 3d 293 (D. Del. 2019) ........................................................ 13

*Centillion Data Sys., LLC v. Qwest Comme'ns Int'l Inc.*,

   631 F.3d 1279 (Fed. Cir. 2011) .............................................................. 20

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,

   636 F.3d 1341 (Fed. Cir. 2011) ................................................................ 8

*D'Alessandro v. Bugler Tobacco Co.*,

   2007 U.S. Dist. LEXIS 2735 (D.N.J. Jan. 12, 2007) .................................. 5

*Docusign, Inc. v. Sertifi, Inc.*,

468 F. Supp. 2d 1305 (W.D. Wash. 2006) ................................................................. 5

*Doe v. Nat'l Bd. Med. Exam'rs*,

199 F.3d 146 (3rd Cir. 1999) ...................................................................................... 4

*Elec. Power Grp. V. Alstom S.A.*,

830 F.3d 1350 (Fed. Cir. 2016) ................................................................................. 12

*Graceway Pharm., LLC v. Perrigo Co.*,

697 F. Supp. 2d 600 (D.N.J. 2010) ........................................................................... 23

*Intellectual Ventures 1 LLC v. Symantec Corp.*,

838 F.3d 1307 (Fed. Cir. 2016) ................................................................................. 13

*Issa v. Sch. Dist. of Lancaster*,

847 F.3d 121 (3d Cir. 2017) ........................................................................................ 2

*Keystone Driller Co. v. General Excavator Co.*,

290 U.S. 240 (1933) ................................................................................................... 22

*Lear, Inc. v. Adkins*,

395 U.S. 653 (1969) ................................................................................................... 23

*Lewis v. Johnston*,

2010 U.S. Dist. LEXIS 32310, 2010 WL 1268024 (N.D.N.Y. April 1, 2010) ........... 3

*Litton Sys. Inc. v. Sundstrand Corp.*,

750 F.2d 952 (Fed. Cir. 1984) ................................................................................... 22

*Mazurek v. Armstrong*,

520 U.S. 968 (1997) ................................................................................................ 2, 3

*McRo, Inc. v. Bandai Namco Games Am. Inc.*,

837 F.3d 1299 (Fed. Cir. 2016) ................................................................................. 12

{01706788;v1 }

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,

    290 F.3d 578 (3d Cir. 2002)...................................................................................... 1, 3

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,

    723 F.3d 1336 (Fed. Cir. 2013)................................................................................. 8, 9

*Pennsylvania v. Dejoy*,

    490 F. Supp. 3d 833 (E.D. Pa. 2020) ........................................................................ 4

*Realtime Data LLC v. Array Networks Inc.*,

    2021 U.S. Dist. LEXIS 84699 (D. Del. May 4, 2021)............................................... 12

*Saldana v. Kmart Corp.*,

    260 F.3d 228 (3d Cir. 2001)...................................................................................... 3

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,

    137 F.R.D. 238 (N.D. Tex. 1991) .............................................................................. 5

*TLI Communs. LLC v. AV Auto LLC*,

    823 F.3d 607 (Fed. Cir. 2016).................................................................................... 12

*Tracbeam, L.L.C. v. T-Mobile US, Inc.*,

    2016 U.S. Dist. LEXIS 91375 (E.D. Tex. July 14, 2016)........................................... 7

*TV Interactive Data Corp. v. Sony Corp.*,

    2012 U.S. Dist. LEXIS 171526  (N.D. Cal. Dec. 3, 2012) ........................................ 4

*Two-Way Media Ltd v. Comcast Cable Communs., LLC*,

    874 F.3d 1329 (Fed. Cir. 2017)................................................................ 11, 12, 14, 15

*Williamson v. Citrix Online, LLC*,

    792 F.3d 1339 (Fed. Cir. 2015).................................................................................. 6

*Winter v. NRDC, Inc.*,

555 U.S. 7 (2008)............................................................................................ 2, 3

*Yamashita v. Wilbur-Ellis Co.*,

   2006 WL 1320460 (N.D. Cal. May 15, 2006) ......................................... 23

*Zapfraud, Inc. v. Fireeye, Inc.*,

   2020 U.S. Dist. LEXIS 217702 (D. Del. Nov. 20, 2020) ......................... 13

**Statutes**

35 U.S.C. § 101 ................................................................................................ 9

35 U.S.C. § 112 ................................................................................................ 5

35 U.S.C. § 271 ............................................................................................... 18

**Rules**

L.R. 1.3 ............................................................................................................ 2

L.R. 7.1.3 ....................................................................................................... 2, 4

## I.      Introduction

Plaintiffs seek the extraordinary remedy of a preliminary injunction. But they present no evidence whatsoever of infringement, standing, or irreparable harm—as they must. Nor could they. Each asserted claim of the '024 patent is invalid as indefinite and lacking written description. All asserted claims of all three asserted patents cover mere abstract ideas, and are invalid under Section 101. Earbuds does not and cannot infringe any asserted claim at multiple levels. And Plaintiffs, ███████████████████████████████████, cannot show irreparable harm. Nor do they have standing to seek an injunction, as Earbuds' pending motion to dismiss demonstrates. D.I. 12-13. The balance of hardships further weighs against a preliminary injunction: Plaintiffs come to this Court with unclean hands, ████████████████████████████████████ ████████████████████████████. Finally, the public interest is certainly not served by shutting down Earbuds, which provides a valuable service.

## II.     Nature and Stage of the Proceedings

Plaintiffs allege infringement of U.S. Patents 9,549,024, 10,198,777, and 10,116,616 (the "Asserted Patents"). On April 14, 2021, Defendant moved to dismiss, which motion remains pending. D.I. 12-13. Plaintiff moved for a preliminary injunction on April 21, 2021. D.I. 14-15.

## III.    Summary of the Argument

1.       A preliminary injunction is "an extraordinary remedy." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

2.       The moving party must establish that (1) "they are likely to succeed on the merits of their claims," (2) "they are likely to suffer irreparable harm without relief," (3) the balance of harms favors them," and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017).

{01706788;v1 }

1

3.      A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). That "clear showing" requires "substantial proof" at a level that is "much higher" than for a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## IV.    Statement of Facts

Plaintiffs have failed to present any evidence of infringement, standing, or irreparable harm. As shown here, the asserted claims are invalid and not infringed. And Plaintiffs, who are willing and eager licensors, do not suffer irreparable harm. Moreover, ███████████████████ ████████████████████████. They come with unclean hands, and do not merit equity. Nor is the public served by shutting down Earbuds, as Plaintiffs seek.

## V.     Argument

### A.     Plaintiffs' Motion violates this Court's Rules, and lacks any evidence

Local Rule 7.1.3(c)(1) requires that an opening brief contain a "summary of the argument" and "a concise statement of facts, with supporting references to the record. . . ." L.R. 7.1.3(c)(1)(D), 7.1.3.(c)(1)(E). Plaintiffs' Opening Brief provides neither.

Plaintiffs' Motion also fails to provide any evidence of infringement, standing, or irreparable harm. A preliminary injunction is "an extraordinary remedy" to be granted "only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). The party seeking a preliminary injunction in a patent infringement suit must present actual evidence to demonstrate its entitlement to that extraordinary relief. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). "[T]he

requirement for substantial proof is much higher" for preliminary injunctive relief than a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Plaintiffs seeking a preliminary injunction thus cannot "simply rest upon mere allegations, general denials, or vague statements to meet their burden." *Akshayraj, Inc. v. Getty Petroleum Mktg.*, 2007 U.S. Dist. LEXIS 15621, at *15 n.2 (D.N.J. Mar. 6, 2007) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001)); *Lewis v. Johnston*, 2010 U.S. Dist. LEXIS 32310, 2010 WL 1268024, at *2 (N.D.N.Y. April 1, 2010) ("Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief.").

Plaintiffs' motion, however, contains ***no evidence*** of patent infringement. Plaintiffs only provide claim charts containing pure attorney argument, unsupported by the testimony or sworn declaration of any witness. "[C]laim charts and other attorney-prepared exhibits are not evidence . . . ." *TV Interactive Data Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 171526, at *62 (N.D. Cal. Dec. 3, 2012). ███████████████████████████████

███████████████████████████████████████████████

███[1]. And when asked to provide a witness who could testify on behalf of Plaintiffs as to their infringement allegations and purported infringement evidence, Plaintiffs refused. *See* Ex. D (Email correspondence between counsel). Moreover, Plaintiffs have not submitted actual exhibits in support of the allegations made in their claim charts, nor have they purported to authenticate the alleged documents on which their charts rely. Accordingly, there is no evidence of infringement.

Plaintiffs have also failed show that they have standing to obtain injunctive relief. "Mere allegations will not support standing at the preliminary injunction stage." *Doe v. Nat'l Bd. Med.*

---

[1] All Exhibits listed are filed as exhibits to the Declaration of Douglas L. Bridges unless otherwise noted.
{01706788;v1 }

*Exam'rs*, 199 F.3d 146, 152 (3rd Cir. 1999). Rather, "Plaintiffs must make a 'clear showing' that they have standing" to obtain a preliminary injunctive "[b]ecause standing requirements 'are not pleading requirements, but are necessary elements of a plaintiff's case. . . .'" *Pennsylvania v. Dejoy*, 490 F. Supp. 3d 833 (E.D. Pa. 2020). Plaintiffs jointly seek a preliminary injunction as to each asserted patent, D.I. 14, but present no evidence that each has standing to do so. As shown in Defendants' pending Motion to Dismiss, D.I. 12, Plaintiffs do not and cannot show standing.

Plaintiffs' motion likewise lacks evidence of irreparable harm. *See* Section V.C, *infra*.

Moreover, Plaintiffs cannot attempt to cure their evidentiary deficiencies in their Reply or at a hearing before the Court. Local Rule 7.1.3 states that a party "shall not reserve material for the reply brief which should have been included in a full and fair opening brief." L.R. 7.1.3(b)(2). Numerous decisions nationwide have held the same. *D'Alessandro v. Bugler Tobacco Co*., 2007 U.S. Dist. LEXIS 2735, at *2 (D.N.J. Jan. 12, 2007) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief."); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived."); *Paz Sys. v. Dakota Grp. Corp*., , 2006 U.S. Dist. LEXIS 103301, at *10 (E.D.N.Y. June 16, 2006) ("A reply brief should not, however, be used to cure a defective motion by providing new evidence."); *Springs Indus., Inc. v. Am. Motorists Ins. Co*., 137 F.R.D. 238, 239 (N.D. Tex. 1991) ("It cannot seriously be disputed that a movant is obligated to file with a motion the evidentiary materials necessary to justify the relief it seeks."). Accordingly, the motion must be denied.

### B.      Plaintiffs cannot succeed on the merits

Plaintiffs cannot meet the first factor of the preliminary injunction analysis—a likelihood of success on the merits—because the asserted claims are indefinite, lack written description, are patent ineligible and are not infringed with respect to multiple limitations.[2]

### 1.      The '024 patent claims are invalid under Section 112(f)

A patentee may express a claim limitation in terms of the function to be performed without reciting a definite structure for performing that function, but such "means plus function" claiming restricts the scope of the limitation "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (discussing 35 U.S.C. § 112 ¶ 6).

A claim term that does not use the word "means" is presumed not to invoke § 112 ¶ 6, but "[t]he presumption [ ] is not a strong one." *Tracktime, LLC v. Amazon.com, LLC*, 2021 U.S. Dist. LEXIS 126144, at *13 n.13 (D. Del. July 7, 2021) (Noreika, J.) (citing *Williamson*, 792 F.3d at 1349). A challenger may simply show that the claim "recites function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1349.

"Generic terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson*, 792 F.3d at 1350.

The asserted claims of the '024 patent recite two clear means-plus-function limitations: "routing instruction generation source" and "routing instruction fulfillment source." The phrases

---

[2] Earbuds does not waive or concede validity under Sections 102 and 103. Those arguments are not necessary here.
{01706788;v1 }

"routing instruction generation" and "routing instruction fulfillment" are claimed functions; the term "source" is a generic means corresponding to those functions, lacking definite structure. The term "'source' do[es] not provide meaning to one skilled in the art being some specific hardware or software structure beyond the mere recited function." *Tracbeam, L.L.C. v. T-Mobile US, Inc.*, No. 6:14-CV-678, 2016 U.S. Dist. LEXIS 91375, at *21-22 (E.D. Tex. July 14, 2016). And nothing in the surrounding claim language provides definite structure. The terms "routing instruction generation source" and "routing instruction fulfillment source" are thus means-plus-function terms, reciting functions with no corresponding structure.

The specification must thus disclose adequate structure that "corresponds to the claimed function." *Williamson*, 792 F.3d at 1351. "Structure disclosed in the specification qualifies as 'corresponding structure' if the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Id.* at 1352. "[I]f a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite." *Id.*

But the specification ***never once recites*** the term "routing instruction fulfillment source" or the term "routing instruction generation source." The specification also ***never*** recites the term "fulfillment source" or "generation source." And the specification does not use the term "source" to describe any definite structure that "corresponds" with "routing instruction generation" or "routing instruction fulfillment." Rather, the specification simply uses "source" in its generic sense, *i.e.*, as an undefined place from which things emanate. *See, e.g.,* '024 Patent at 1:58-60 ("data source"); 5:3-7 ("remote source"); 9:8-11 ("origin source"); 10:45-58 ("transmission sources"). Moreover, nothing in the specification identifies an algorithm or procedure that

"corresponds to" (*i.e.*, "clearly links or associates," *Williamson*, 792 F.3d at 1352) either "routing instruction generation" or a "routing instruction fulfillment."

Tellingly, Plaintiffs' claim charts identify a generic "cell phone as the source" for both "routing instruction generation source" and "routing instruction fulfillment source." D.I. 16-2 at 5 ("routing instruction generation source"); *id.* at 3 ("the cell phone [is] set as a select routing instruction fulfillment source"); *id.* at 6 (same).

The asserted claims of the '024 patent are thus indefinite and invalid. *Tracktime, LLC v. Amazon.com, LLC*, 2021 U.S. Dist. LEXIS 126144, at *20 (D. Del. July 7, 2021) (Noreika, J.).

## 2. The '024 patent claims are invalid under Section 112(a)

"To satisfy the written description requirement, the applicant must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (internal quotations omitted). Pointing to an "amalgam of disclosures" from which an artisan could have created the claimed invention does not satisfy the requirement. *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013). Instead, the specification must present each claim as an "integrated whole." *Novozymes*, 723 F.3d at 1349.

During prosecution of the '024 patent, the patentee completely rewrote claim 21 to traverse multiple rejections under § 103 and § 112. In doing so, the patentee for the first time added the concepts of distinct primary and secondary "channels," and passing content over the primary channel while passing instructions over the secondary channel. Ex. A ('024 File History) at 47.

The specification did not disclose the concept of an instruction-passing "secondary channel." The '024 specification instead only teaches an "internet radio channel" or "internet

service provider channel" from a streaming service. *See* '024 Patent at 10:59-61, 11:18-21. The specification never discloses using a dedicated channel to send instructions to a client.

During prosecution, the patentee alleged that Col. 15:13-17:67 of the '024 patent, and Figures 26-28, provided support. Ex. A ('024 File History) at 73, 263-269. But in fact, the patentee excerpted portions of this disclosure and then ***added parentheticals*** with the phrases "***via a first channel***" and "***via a second channel***" to the actual text of the specification, without informing the examiner that the parentheticals were not in the original specification. *Compare id.* at 73-74 *to id.* at 267. Neither that passage of the specification nor any other passage ever uses the terms "first channel," "primary channel," "second channel," or "secondary channel."

Moreover, even an arguable disclosure of an instruction-passing "secondary channel" would not demonstrate written description support for claim 21. As the Federal Circuit has made clear, pointing to "an amalgam of disclosure" does not satisfy Section 112(a). *Novozymes*, 723 F.3d at 1349. Claim 21 recites that: (1) an "application" must "establish" the "secondary channel" "***to the consumer***" (2) and that same "application" must pass routing and playback instructions over that "secondary channel" "***to the consumer***." Nothing in the specification's text or figures supports those claim limitations as a whole.

In Figure 28, for instance, the alleged second channel 261 is established by a ***different device*** (gateway server 184) from the device that passes playback instructions (remote database 186). "[T]he gateway server 184 [ ] preferably loads 261 the events queue from the remote database 186," *i.e.*, the gateway server establishes a connection with the remote database. '024 Patent at 17:15-19. But remote database 186 passes information to the gateway server 184, not the other way around. '024 Patent at 17:17-19. Thus, one "application" does not both establish a connection (much less a "second channel") and pass information over that connection, as the claim recites.

Furthermore, the specification, including Figures 26-28, never teaches "establish[ing]" a secondary channel "*to the consumer*" and passing routing and playback instructions "*to the consumer via the instruction-passing secondary channel*," as claim 21 recites. In Figure 28, item 183 represents a "local client application," *i.e.*, the "consumer." '024 Patent at 17:6-7. The consumer 183 does not have a connection over a "secondary channel." Rather, all information flows to client/consumer 183 from gateway server 184 over *a single channel*. *See* Fig. 28 (below). Notably, the alleged routing and playback instructions—information 261 sent from remote database 186 to gateway server 184—can only be passed to consumer 183 over the *same single channel* that carries live audio stream 181 and mixed stream 182. In other words, Figure 28 teaches the opposite of passing instructions to the consumer over a secondary channel.



Accordingly, the claims are invalid for lack of written description support.

### 3.   All asserted claims of each patent are invalid under Section 101

Abstract ideas cannot be patented. 35 U.S.C. § 101. Courts apply a two-step test to determine patent eligibility. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). First, courts assess whether representative claims are directed to an abstract idea. *Id.* at 2355. If so, courts consider whether the claims contain an "inventive concept" sufficient to "transform the nature of

the claim into a patent-eligible application." *Id.* Claims directed to abstract ideas that do not contain a transformative inventive concept are invalid. *Id.* at 2360.

### a.    The '024 Patent

Under *Alice* step one, courts look to whether the representative claims, as a whole, "focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). System claims are no less directed to an abstract idea than method claims. *Realtime Data LLC v. Array Networks Inc.*, 2021 U.S. Dist. LEXIS 84699, at *31 (D. Del. May 4, 2021) (citing *TLI Communs. LLC v. AV Auto LLC*, 823 F.3d 607, 613 (Fed. Cir. 2016)). "Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible." *Id.* Stated otherwise, claims directed to desired results or functions that do not recite *how* to implement those results or functions are ineligible. *Elec. Power Grp. V. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("'there is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general.'"); *TLI*, 823 F.3d at 615 ("vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention"); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016); *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Representative claim 21 is directed to the abstract idea of routing media and instructions to a consumer, where media is sent on one channel and instructions are sent on a second channel.

As in *Two-Way Media*, claim 21 "recites a method for routing information using result-based functional language." 874 F.3d at 1337. The claim requires a generic "computer-implementable application" to "generate" instructions, "establish" a second channel, and "pass"

the instructions on the second channel, but does not "describe how to achieve these results in a non-abstract way." *Id.* The claim simply requires results to occur, but says nothing as to *how* to perform the recited results. "[A] claim to a result, however achieved, is not patentable, and [ ] allowing such a patent would have impermissible preemptive effects." *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 306 (D. Del. 2019).

Moreover, "apart from 'generic computer-implemented steps, there is nothing in the claim itself that forecloses it from being performed by a human." *Zapfraud, Inc. v. Fireeye, Inc.*, 2020 U.S. Dist. LEXIS 217702, at *15 (D. Del. Nov. 20, 2020) (quoting *Intellectual Ventures 1 LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016)). A human can readily send a box of CDs to someone by FedEx (media on one channel) while separately shipping a written list of playback instructions (e.g., playlist order information) by UPS (instructions on a second channel). Alternatively, a human could simply ship the CDs (media over one channel) and then call the recipient ("establish" a second channel) to "pass" playback instructions that he or she has "generated." Plaintiffs themselves admit that claim 21 is a "simple claim" that only appears complex because it is "written in computer technology terminology." D.I. 15 at 3.

The '024 patent claims are thus plainly directed to an "abstract idea."

Under *Alice* step two, courts consider the claim elements, "both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Two-Way Media*, 874 F.3d at 1338. "Merely reciting the use of a generic computer . . . cannot convert a patent-ineligible abstract idea into a patent-eligible invention." *Id.* "To save a patent at step two, an inventive concept must be evident in the claims." *Id.* A claim directed to an abstract idea that merely requires "conventional computer and network components operating according to their ordinary functions" is ineligible. *Id.* at 1339.

Representative claim 21 recites a "computer-implementable application," a "routing instruction fulfillment source," a "routing instruction generation source," a "content-delivery primary channel," an "instruction-passing secondary channel," and "network infrastructure." Computer applications, communication channels, and network infrastructure are all long-known, generic computing and network components. "Routing instruction fulfillment source" and "routing instruction generation source" are mere nonce terms that find no definite structure in the claims or specification, and that mean nothing at all. *See* Section V.B.1, *supra.*

Accordingly, the claims of the '024 patent are invalid under Section 101 as ineligible.

### b.      The '616 Patent

*Step 1:* Like the '024 patent claims, representative claim 14 of the '616 patent is directed to the abstract idea of routing media and instructions to a consumer, where media is sent on one channel and instructions are sent on a second channel, with the additional function or result of providing a social platform. In their own words, Plaintiffs describe claim 14 as covering "social broadcasting methods (i.e. some type of social media), which also require 'legal access' and management content thereto." D.I. 15 at 5. That is plainly an abstract idea, and the claims thus fail the eligibility test at step one. *Two-Way Media*, 874 F.3d at 1338.

*Step 2:* Nothing in the '616 patent claims transforms the claims' abstract idea into a patentable invention. Rather, the claims merely recite convention computer and network components, or else do not require technological components at all. For example, claim 14 requires that content be sourced "from an optimal secondary content source selected from at least two secondary content sources." Plaintiffs allege, however, that the limitation is met when a user pre-selects a music service. D.I. 16-4 at 6. The '616 patent claims are thus invalid as patent ineligible.

### c.      The '777 Patent

*Step 1:* The asserted claims of the '777 patent are almost identical to those of the '024 patent, with the addition that the recited system is "for sharing user-selected/generated social content" while simultaneously broadcasting and consuming variously sourced media content. That addition is simply directed to the abstract idea of adding social interaction to a system that routes media and instructions to a consumer, where media is sent on one channel and instructions are sent on a second channel. Indeed, Plaintiffs allege that Earbuds infringes because Earbuds broadcasts have "thousands of simultaneous interactions creating a discussion." D.I. 16-6 at 9. "Thousands of simultaneous interactions creating a discussion" is not a patentable invention under Section 101.

*Step 2:* The '777 patent does not include any structure or innovative step that transforms the abstract idea of the claims into patentable subject matter. Plaintiffs simply seek to monopolize and monetize the abstract idea of using conventional computer components and networks to broadcast media and create social interactions. Section 101 does not permit abstract patent claims to create such sweeping preemptive effects. The '777 patent asserted claims are likewise ineligible.

### 4.      Earbuds does not infringe any asserted claim

### a.      Earbuds does not infringe the '024 Patent

Claim 21 recites a "primary computer-implementable application" that must be "operable to (a) generate the routing and playback instructions. . . (b) establish an instruction-passing secondary channel to the consumer. . .; and (c) pass the routing and playback instructions to the consumer via the instruction-passing secondary channel. . . ." Plaintiffs allege that "a primary computer-implementable application" is a "a set of software type instructions" and that "[t]he App sold by Earbuds is fully and completely a computer-implementable application and is a computer-

implemented set of software type instructions." D.I. 16-2 at 2. Plaintiffs identify the Earbuds App as "a primary computer implementable application" because it is a "mobile application." *Id.*

Defendant agrees that "a primary computer implementable application" is limited to a set of software type instructions running on a client device, such as the Earbuds App. The '024 patent's specification distinguishes a client application from a server program. For instance, "when a request for the stream is made by a ***client application 183***, the request is served 260 by the ***gateway server 184***." '024 Patent at 17:7-9. Thus, "a primary computer implementable application" is ***not*** a combination of software on a client device ***and*** software or hardware on a remote server device. Indeed, if the term covered more than software on a specific client device, it would be indefinite, as it could encompass endless programs on endless different computers.

Under the correct scope of "a primary computer-implementable application," *i.e.*, software running on a client device, Earbuds cannot infringe the '024 patent. Whereas the asserted claims require the "application" to (a) "generate" routing and playback instructions; (b) "establish" a secondary channel to the consumer; and (c) "pass" the routing and playback instructions to the consumer over the secondary channel, ████████████████████████████████ ████████████████████████████████████ .

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████.

    ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

Plaintiffs' claim chart does not so much as *allege* otherwise. Plaintiffs' chart says nothing as to *who or what* allegedly establishes a secondary channel between a host and a listener. Instead, Plaintiffs rely on passive voice to sidestep their burden, stating "[t]he secondary channel established *is between* the cell phone of Mr. Mahomes II and the 20,000 listeners of his live broadcast." D.I. 16-2 at 7 (emphasis added). In other words, Plaintiffs make *no allegation* (and certainly provide no evidence) that the Earbuds Application on a client device "establishes" an instruction-passing secondary channel to consumers, as claim 21 of the '024 patent requires.

    ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



Plaintiffs' contrary allegation that "the connection between both emitter and listeners could be rupture [sic] (i.e. interruption of the instruction-passing secondary channel) which would end the live connection," is thus false. D.I. 16-2 at 8.

### b.   Earbuds does not infringe the '616 Patent

Plaintiffs' Motion only alleges that Earbuds directly infringes the '616 Patent; there is no allegation of induced or contributory infringement.  D.I. 15 at 10. Plaintiffs' allegations fail.

***First,*** representative claim 14 is a method claim. To directly infringe, Earbuds must perform each step. But Plaintiffs admit Earbuds does not. Instead, Plaintiffs allege that individual ***users*** perform the method. *See* D.I. 16-4 at 3 ("@jamesjohnson generates routing and playback instruction"). Accordingly, Plaintiffs provide no direct infringement theory as to Earbuds.

***Second,*** claim 14 (Step 2) claims "generating routing and playback instructions ***at each*** medium-processing computer. . . ." The "medium-processing computer," according to Plaintiffs, is the user's mobile device. D.I. 16-4 at 2. Because the claim specifically requires "***each*** medium-processing computer" to generate the recited instructions, the claim requires ***every*** Earbuds user to

generate such instructions. But Plaintiffs only allege that *one* user--@jamesjohnson--generates such instructions. D.I. 16-4 at 3. Plaintiffs' theory is thus self-defeating.



**Fourth,** the claims require "querying whether the shared sourced content is most efficiently sourced at each of the medium-processing computers associate with the content-receiving members." D.I. 16-4 at 5. The claims further require "sourcing content . . . from an optimal secondary content source selected from at least two secondary content sources in communication with each medium-processing computer . . . ." Plaintiffs allege that the Earbuds server queries Earbuds client devices to determine if the client devices will most efficiently source their music from Apple Music or Spotify. *See* D.I. 16-4 at 5-6.

Plaintiffs allege that a user pre-selecting a particular music subscription is "sourcing content … from an optimal secondary content source." D.I. 16-4 at 6.

**Fifth,** Plaintiffs do not and cannot show that each client device is in communication with at least two secondary content sources, as the claim requires. D.I. 16-4 at 6.

### c.  Earbuds does not infringe the '777 Patent

Plaintiffs' Motion only alleges that Earbuds directly infringes the '777 Patent. D.I. 15 at 10. Plaintiffs' claim charts fail to show direct infringement as to any asserted claim.

Claim 1 claims [a] "media content sharing system being operable within a network-based media content playback environment comprising at least two **computers** for providing a selectively sourced media content. . . ." Direct infringement thus requires the infringer to make, use, sell, or offer the at least two recited computers. Plaintiffs allege that at least one of the computers are user devices, e.g., mobile phones, running the Earbuds application. *See* D.I. 16-6 at 5 (Claim 1(a5). Plaintiffs never allege that Earbud makes or sells any **computers**; Earbuds does not. Good Decl. ¶ 18. Furthermore, when a developer supplies software that a user loads onto the user's own computer, the developer does not "use" the user's computer under 35 U.S.C. § 271(a). *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 480 (D. Del. 2018) (citing *Centillion Data Sys., LLC v. Qwest Comme'ns Int'l Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011)). Earbuds cannot directly infringe the '777 Patent because it does not make, use, sell, or offer to sell the recited computers.

### C.  Plaintiffs do not show irreparable harm

Plaintiffs make three allegations of irreparable harm: (1) that Earbud's offering of its application for free "is a complete price erosion and completely destroys the market and capacity to generate fees for Plaintiffs,"  D.I. 15 at 11; (2) that Plaintiffs have "suffered harm" from "Defendant's unreasonable delays," *id.* and (3) that Plaintiffs "contacted the NFL® to sell the organization their patent technology" and were unable to do so. *Id.* Each allegation is meritless.

**First,** Plaintiffs themselves offer their products for free, and have done so before Earbuds ever came to market. There is thus no price erosion—Plaintiffs have always priced at zero.

{01706788;v1 }

**Second,** there have been no unreasonable delays. Plaintiffs' allegations are without merit, as Earbuds has repeatedly conveyed to Plaintiffs, and as shown here. Plaintiffs' wishful thinking and delusional ambitions are not a basis for their claim of "unreasonable delays."

**Third,** Plaintiffs' NFL-related allegations lack evidence. ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ There is simply no detail or substance to provide a "clear showing" of irreparable harm regarding the NFL.

**Fourth,** ████████████████████████████████████████████ Monetary damages are thus adequate relief, and there is no irreparable harm. *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560 (D. Del. 2008).

**Fifth,** a plaintiff seeking a preliminary injunction must provide "evidence that directly ties consumer demand for the [allegedly infringement products] to its allegedly infringement feature." *Apple, Inc. v. Samsung Ele.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012). Plaintiffs have not done so.

### D.     The balance of hardships weighs against an injunction

"An injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted." *Litton Sys. Inc. v. Sundstrand Corp.*, 750 F.2d 952, 959 (Fed. Cir. 1984).

That is true here. Plaintiffs have offered no evidence of any legitimate harm to them. To the contrary, Defendant has demonstrated here that the asserted claims are invalid and not infringed. And Plaintiffs' allegations of easy non-infringing alternatives lack substance: there is no allegation or evidence of any specific, viable non-infringing alternative. Plaintiffs simply seek to shut down Earbuds' operations as leverage to extract a licensing payment for meritless patents.

Moreover, Plaintiffs come with unclean hands. "Those seeking equity must do equity." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 241-242 (1933).



Plaintiffs' unclean hands precludes their request for equitable relief.

### E.     The public interest weighs heavily against a preliminary injunction

A public interest in enforcing a patent does not "weigh heavily when [it] is balanced against the important public interest in permitting full and free competition in the use of idea which are in reality a part of the public domain." *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969); *Yamashita v. Wilbur-Ellis Co.*, 2006 WL 1320460 at *8 (N.D. Cal. May 15, 2006). The public interest is "enhanced by competition," *Graceway Pharm., LLC v. Perrigo Co.*, 697 F. Supp. 2d 600, 609 (D.N.J. 2010). Here, the public has a significant interest in continuing to enjoy Earbuds' revolutionary services; there is no demonstrated public interest in Plaintiffs' products or its intellectual property, and no public benefit from shutting down Earbuds here.

## VI.   Conclusion

The Court should deny Plaintiffs' Motion for Preliminary Injunction and find the asserted claims invalid and unpatentable for the reasons above.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

*Of Counsel:*

Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Boulevard, Suite 2170
Los Angeles, CA  90025
(310) 975-7074

Douglas L. Bridges
NOROOZI PC
4204 Rochester Road
Mobile, AL 36608
(251) 533-0461

Dated:  July 21, 2021