IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERTIGO MEDIA, INC. and REMOTE MEDIA LLC, | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) ) | C.A. No. 21-120-MN |
| v. | ) ) | |
| EARBUDS INC. | ) ) | |
| Defendant. | ) ) | |

**Declaration of Douglas L. Bridges**

I, Douglas L. Bridges, hereby declare as follows:

1.      I am Of Counsel with the firm Noroozi PC, counsel for Defendant Earbuds Inc. in the above-captioned matter.  I have personal knowledge of the matters stated in this declaration.

2.      Attached as Exhibit A is a true and correct copy of the file history of U.S. Patent No. 9,549,024 from the United States Patent and Trademark Office.

3.      Attached as Exhibit B is a true and correct copy of pages from the transcript of the deposition of Mr. Alain Villeneuve taken under oath on June 22, 2021 filed under seal.

4.      Attached as Exhibit C is a true and correct copy of Exhibit 18 from the Deposition of Mr. Alain Villeneuve filed under seal.

5.      Attached as Exhibit D is a true and correct copy of correspondence between Kayvan Noroozi to Alain Villeneuve dated July 7, 2021.

6.      Attached as Exhibit E is a true and correct copy of documents produced by Plaintiffs bearing Bates Numbers VER_000749 – VER_000761, VER_000900 – VER_000907, and VER_000373 – VER_000380 filed under seal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 21, 2021, in Mobile, Alabama.

*Douglas L Bridges*

Douglas Bridges

# EXHIBIT A

# File History of U.S. Patent No. 9,549,024

AO 120 (Rev. 08/10)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court    District of Delaware    on the following

☐ Trademarks or  ☑ Patents.   (  ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT<br>District of Delaware | |
|---|---|---|---|
| **PLAINTIFF**<br><br>Vertigo Media, Inc.<br>Remote Media LLC | | **DEFENDANT**<br><br>Earbuds Inc. | |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | US 9,549,024 B2 | 1/17/2017 | Remote Media LLC |
| 2 | US 10,198,777 B2 | 2/5/2019 | Vertigo Media, Inc. |
| 3 | US 10,116,616 B2 | 10/30/2019 | Vertigo Media, Inc. |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director**    **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**    **Copy 4—Case file copy**

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 9,549,024 B2                                    Page 1 of 1
APPLICATION NO.     : 14/099348
DATED               : January 17, 2017
INVENTOR(S)         : Gregory H. Leekley, Alexander Savenok and Pavel Savenok

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Claims

Claim 14, Column 22, Line 25, delete "recourse" and insert --resource--.

Signed and Sealed this
Tenth Day of October, 2017

*Joseph Matal*

Joseph Matal
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

PTO/SB/44 (09-07)
Approved for use through 01/31/2020. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
(Also Form PTO-1050)

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

Page __1__ of __1__

PATENT NO.        : 9,549,024

APPLICATION NO.: 14/099,348

ISSUE DATE       : January 17, 2017

INVENTOR(S)     :  Gregory H. Leekley, Alexander Savenok, Pavel Savenok

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Claim 14, Column 22, Line 25, the term, "recourse" should read, --resource--.

MAILING ADDRESS OF SENDER (Please do not use Customer Number below):
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, Illinois, 60118

This collection of information is required by 37 CFR 1.322, 1.323, and 1.324. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1.0 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Attention Certificate of Corrections Branch, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14099348 |
| **Filing Date:** | 06-Dec-2013 |
| **Title of Invention:** | ROUTING AND SYNCHRONIZATION SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Filer:** | Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| CERTIFICATE OF CORRECTION | 2811 | 1 | 100 | 100 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **100** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 30333933 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | ROUTING AND SYNCHRONIZATION SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 12-SEP-2017 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 11:39:59 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $100 |
| RAM confirmation Number | 091217INTEFSW11403300 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Certificate of Correction | CertificateOfCorrection.pdf | 71784 <br><br> e2644a5a79e86ef2d22b0719980bf600dac 76e55 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30267 <br><br> 13761222b9dec8a892db92370eeada691d 59fc29 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 102051 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/099,348 | 01/17/2017 | 9549024 | 12113 | 4880 |

115883          7590          12/28/2016
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 537 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

Receipt date: 12/06/2013                                                                        14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | |
| | Filing Date | |
| | First Named Inventor | Gregory H. Leekley |
| | Art Unit | |
| | Examiner Name | |
| Sheet: 1    of    3 | Attorney Docket Number | 12113 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,444,779  08/1995 | ~~8-22-1996~~ | Daniele | |
| | | US- 6,925,469 | 8-2-2005 | Headings et al. | |
| | | US- 7,643,459 | 1-5-2010 | Miller et al. | |
| | | US- 7,664,861 | 2-16-2010 | Guntupalli et al. | |
| | | US- 7,774,010 | 8-10-10 | Kokkonen et al. | |
| | | US- 7,779,123 | 8-17-2010 | Duggan | |
| | | US- 8,090,861 | 1-3-2012 | Miller et al. | |
| | | US- 8,176,325 | 5-8-2012 | Lai et al. | |
| | | US- 8,180,853 | 5-15-2012 | Lee et al. | |
| | | US- 2002/0032019 | 3-14-2002 | Marks et al. | |
| | | US- 2003/0131245 | 7-10-2003 | Linderman | |
| | | US- 2003/0135639 | 7-17-2003 | Marejka et al. | |
| | | US- 2005/0114562 | 5-26-2005 | Barnes et al. | |
| | | US- 2005/0180418 | 8-18-2005 | Andersen et al. | |
| | | US- 2006/0107036 | 5-18-2006 | Randle et al. | |
| | | US- 2006/0133428 | 6-22-2006 | Guthrie et al. | |
| | | US- 2007/0168409 | 7-19-2007 | Cheung | |
| | | US- ~~2007/0273133~~ | 10-11-2007 | Woods et al. | |
| | | US- 2007/0256073 | 11-1-2007 | Troung et al. | |

*(handwritten left margin): Change(s) applied to document, /S.X.R./ 10/21/2016*

*(handwritten left margin lower): 2007023733*

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document — Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

115883   7590   09/12/2016
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

Certificate of Mailing or Transmission   ~~EFS-WEB~~
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

CHRISTOPHER J. SCOTT   (Depositor's name)
Christopher J. Scott   (Signature)
08 DECEMBER 2016   (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 | 4880 |

TITLE OF INVENTION: SMART ROUTING SYSTEM, METHOD, AND MANAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/12/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| NGUYEN, TU T | 2453 | 709-217000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1   CHRISTOPHER J. SCOTT
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE   REMOTE MEDIA, LLC

(B) RESIDENCE: (CITY and STATE OR COUNTRY)   WHEATON, ILLINOIS

Please check the appropriate assignee category or categories (will not be printed on the patent):   ☐ Individual   ☒ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☒ Payment by credit card. ~~Form PTO-2038 is attached.~~ EFS-WEB
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature   Christopher J. Scott   Date   08 DECEMBER 2016

Typed or printed name   CHRISTOPHER J. SCOTT   Registration No.   48,647

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.   OMB 0651-0033   U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14099348 |
| **Filing Date:** | 06-Dec-2013 |
| **Title of Invention:** | ROUTING AND SYNCHRONIZATION SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Filer:** | Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 480 | 480 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| **Total in USD ($)** | | | | **480** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27731342 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | ROUTING AND SYNCHRONIZATION SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 08-DEC-2016 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 10:45:37 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $480 |
| RAM confirmation Number | 120816INTEFSW10472000 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | IssueFeeTrans.pdf | 3782270<br><br>e1f2d6213279ofee3b12e5b4e6eb5e842f676a8f | no | 1 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30629<br><br>4bf230273ada0b1b02d75a5678d1c51623f92f99 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 3812899 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 14099348 |
| | Filing Date | 2013-12-06 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| | Examiner Name | Tu T. Nguyen |
| | Attorney Docket Number | 12113 |

| U.S.PATENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

| NON-PATENT LITERATURE DOCUMENTS | | |
|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |

113

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 14099348 |
|---|---|---|
| | Filing Date | 2013-12-06 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| | Examiner Name | Tu T. Nguyen |
| | Attorney Docket  Number | 12113 |

| TN | 1 | An explanatory video demonstration of the subject invention is available at the following address.  This video demonstration is otherwise unlisted/unsearchable at www.youtube.com. Author: Gregory H. Leekley (co-Applicant) Title: Vertigo Patent Video Creation Date: 09 February 2016 https://www.youtube.com/watch?v=akfORuoqmcA&feature=youtu.be | ☐ |
|---|---|---|---|

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /Tu Nguyen/ | Date Considered | 10/14/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

¹ See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  ² Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  ³ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  ⁴ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  ⁵ Applicant is to place a check mark here if English language translation is attached.

2/3

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 14099348 |
| | Filing Date | 2013-12-06 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| | Examiner Name | Tu T. Nguyen |
| | Attorney Docket Number | 12113 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

OR

☒ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☒ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Christopher J Scott/ | Date (YYYY-MM-DD) | 2016-10-14 |
|---|---|---|---|
| Name/Print | Christopher J. Scott | Registration Number | 48647 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

3/3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | 2453 | 1670 | 12113 | 20 | 3 |

**CONFIRMATION NO. 4880**

115883
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

**CORRECTED FILING RECEIPT**

*OC000000086169703*

Date Mailed: 09/29/2016

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

**Applicant(s)**

Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

**Power of Attorney:** The patent practitioners associated with Customer Number 115883

**Domestic Priority data as claimed by applicant**
This appln claims benefit of 61/734,721 12/07/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 12/18/2013

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/099,348**

**Projected Publication Date:**  Not Applicable

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      ROUTING AND SYNCHRONIZATION SYSTEM, METHOD, AND MANAGER

**Preliminary Class**

      709

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 115883 | 7590 | 09/12/2016 |
| --- | --- | --- |

Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

| EXAMINER |
| --- |
| NGUYEN, TU T |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2453 | |

DATE MAILED: 09/12/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 | 4880 |

TITLE OF INVENTION: SMART ROUTING SYSTEM, METHOD, AND MANAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/12/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or** <u>Fax</u>   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 115883 | 7590 | 09/12/2016 |

Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 | 4880 |

TITLE OF INVENTION: SMART ROUTING SYSTEM, METHOD, AND MANAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/12/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| NGUYEN, TU T | 2453 | 709-217000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.         OMB 0651-0033         U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 | 4880 |

115883        7590        09/12/2016
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

| EXAMINER |
|---|
| NGUYEN, TU T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2453 | |

DATE MAILED: 09/12/2016

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>14/099,348 | Applicant(s)<br>LEEKLEY ET AL. | |
|---|---|---|---|
| | Examiner<br>Tu Nguyen | Art Unit<br>2453 | AIA (First Inventor to File)<br>Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *08/25/2016*.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-33*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some   *c) ☐ None of the:
   - 1. ☐ Certified copies of the priority documents have been received.
   - 2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   - 3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☒ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/Tu Nguyen/
Primary Examiner, Art Unit 2453

Notice of Allowability

Application/Control Number: 14/099,348                                     Page 2
Art Unit: 2453

The present application is being examined under the pre-AIA first to invent

provisions.

**EXAMINER'S AMENDMENT**

An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with

Christopher Scott on 09/01/2016.


_The application has been amended as follows:_


_Claim 33, line 1_, **change** "A computer-implementable media" **to** -- A non-

transitory computer-implementable media --.

Application/Control Number: 14/099,348                                    Page 3
Art Unit: 2453

## REASONS FOR ALLOWANCE

The following is an examiner's statement of reasons for allowance:

Claims 1-33 are allowed in light of the amendments and the Applicant

Arguments/Remarks made in the amendment filed on 08/25/2016.


Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Tu Nguyen whose telephone number is (571)272-2424.

The examiner can normally be reached on M-W,F  7:30-5:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Krista Zele can be reached on (571) 272-7288.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/099,348                                    Page 4
Art Unit: 2453

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Tu Nguyen/
Primary Examiner, Art Unit 2453
09/04/2016

| ***Examiner-Initiated Interview Summary*** | Application No.<br>14/099,348 | Applicant(s)<br>LEEKLEY ET AL. | |
| --- | --- | --- | --- |
| | Examiner<br>Tu Nguyen | Art Unit<br>2453 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Tu Nguyen*.           (3) _____.

(2) *Christopher Scott*.     (4) _____.

Date of Interview: <u>01 September 2016</u>.

Type:   ☒ Telephonic   ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant  ☐ applicant's representative]

Exhibit shown or demonstration conducted:  ☐ Yes  ☐ No.
   If Yes, brief description: _____.

Issues Discussed  ☒101  ☐112  ☐102  ☐103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: <u>33</u>.

Identification of prior art discussed: <u>N/A</u>.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

<u>*Discussed about 101 issue of claim 33. Applicant authorized the examiner to amend the claim, by adding "non-transitory" to the claim to overcome the 101 issue, via Examiner's Amendment to bring this application to allowable condition*</u>.

**Applicant recordation instructions**: It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /Tu Nguyen/<br>Primary Examiner, Art Unit 2453 | |
| --- | --- |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14099348 | LEEKLEY ET AL. |
| | **Examiner** | **Art Unit** |
| | TU NGUYEN | 2453 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| H04L 67/1074, 67/1063, 41/5009, 41/5025, 41/5035 | 09/03/2016 | TN |
| G06F 9/5061, 9/541, 8/51, 8/68 | 09/03/2016 | TN |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 709 | 217 | 09/03/2016 | TN |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| East | 06/13/2016 | TN |
| 709/217-229 | 06/13/2016 | TN |
| H04L 67/1074, 67/1063, 41/5009, 41/5025, 41/5035 | 06/13/2016 | TN |
| G06F 9/5061, 9/541, 8/51, 8/68 | 06/13/2016 | TN |
| Search updated | 09/03/2016 | TN |
| Inventor search | 09/03/2016 | TN |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | See search history (L37) | 09/03/2016 | TN |

| | |
|---|---|
| | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 4880**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | 709 | 2453 | 12113 |
| | RULE | | | |

**APPLICANTS**

**INVENTORS**
Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

**\*\* CONTINUING DATA** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This appln claims benefit of 61/734,721 12/07/2012

**\*\* FOREIGN APPLICATIONS** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
12/18/2013

| Foreign Priority claimed ☐ Yes ☑ No | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | | | | | |
| Verified and Acknowledged   /TU T NGUYEN/ Examiner's Signature | Initials | NC | 30 | 20 | 3 |

**ADDRESS**

Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118
UNITED STATES

**TITLE**

SMART ROUTING SYSTEM, METHOD, AND MANAGER

| FILING FEE RECEIVED | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | |
|---|---|---|
| 1670 | | ☐ All Fees |
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 243 | media with (broadcast$5 or route or routing) with (optimal or optimiz$6) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L2 | 6580 | ((source or library) near4 (data or media or file)) with (legal$3 or authoriz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L3 | 7 | L1 and L2 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L4 | 59280 | (media or music or video) with (broadcast$5 or route or routing) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L5 | 1408 | (source or library) with ((media or music or video) near5 (legal$3 or copyright or protected)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L6 | 7818 | (optimal or optimiz$6 or best) with (route or routing) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L7 | 0 | L4 and L5 and L6 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L8 | 73294 | (optimal or optimiz$6 or best) with | US-PGPUB; | ADJ | ON | 2016/09/03 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (route or routing) | USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | | | 06:46 |
| L9 | 2 | L4 and L5 and L8 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L10 | 65422 | plurality near7 ((source or library) near5 (data or media or file or video)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L11 | 1275 | L8 and L10 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L12 | 49 | L11 and L4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L13 | 227782 | (data or media or file or video) with (legal$3 or copyright or protected) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L14 | 12 | L12 and L13 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L15 | 2604 | (select$5 or pickiing or pick or choose or choosing or chosen) with (optimal or optimiz$6 or best) with ((source or library) near4 (data or media or file)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L16 | 98 | L15 and L13 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; DERWENT; | ADJ | ON | 2016/09/03 06:46 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | BM_TDB | | | |
| L17 | 90 | (select$5 or pickiing or pick or choose or choosing or chosen) with (optimal or optimiz$6 or best) with (plurality near7 ((source or library) near4 (data or media or file))) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L18 | 92457 | (local and (internet or network or ouside)) near4 (source or library or storage) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L19 | 1 | L17 and L18 and L13 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:46 |
| L21 | 456 | play$1back$5 with instruction with channel | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:55 |
| L22 | 20 | 10 and 21 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 06:59 |
| L23 | 50 | 13 and 21 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 07:04 |
| L24 | 145438 | (709/217-229).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2016/09/03 07:08 |
| L25 | 10676 | H04L67/1074.cpc. or H04L67/1063.cpc. or H04L41/5009.cpc. or H04L41/5025.cpc. or H04L41/5035.cpc. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 07:08 |
| L26 | 11611 | G06F9/5061.cpc. or G06F9/541.cpc. or G06F8/51.cpc. or G06F8/68.cpc. | US-PGPUB; USPAT; USOCR; FPRS; EPO; | ADJ | ON | 2016/09/03 07:08 |

| | | | JPO; DERWENT; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| L27 | 164441 | L24 or L25 or L26 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 07:08 |
| L28 | 9 | L27 and L16 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 07:08 |
| L30 | 1 | ((Gregory) near2 (Leekley)).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2016/09/03 07:25 |
| L31 | 7 | ((Alexander) near2 (Savenok)).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2016/09/03 07:26 |
| L32 | 23 | ((Pavel) near2 (Savenok)).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2016/09/03 07:26 |
| L33 | 23 | 30 or 31 or 32 | US-PGPUB; USPAT; USOCR | ADJ | ON | 2016/09/03 07:27 |
| L37 | 1 | (((media or music or video) with (broadcast$5 or route or routing) with (user or consumer or consumable)) and ((data or media or file or video) with (legal$3 or copyright or protected)) and (play$1back$5 with instruction with channel)).clm. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/09/03 07:35 |

**9/3/2016 7:36:55 AM**
**C:\ Users\ tnguyen24\ Documents\ EAST\ Workspaces\ 14099348.wsp**

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14099348 | LEEKLEY ET AL. |
| | **Examiner** | **Art Unit** |
| | TU NGUYEN | 2453 |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| H04L | 67 | | 1074 | F | 2013-01-01 |
| H04L | 67 | | 1063 | I | 2013-01-01 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| | | 33 | |
| (Assistant Examiner) | (Date) | | |
| /TU NGUYEN/ Primary Examiner.Art Unit 2453 | 09/04/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 3 |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 14099348 | LEEKLEY ET AL. |
| | **Examiner** | **Art Unit** |
| | TU NGUYEN | 2453 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | | | |
| 709 | 217 | H | 0 | 4 | L | 29 / 08 (2006.01.01) | | | | | | | |
| **CROSS REFERENCE(S)** | | | | | | | | | | | | | |
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 33 | |
| (Assistant Examiner) | (Date) | | |
| /TU NGUYEN/ Primary Examiner.Art Unit 2453 | 09/04/2016 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 3 |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 14099348 | LEEKLEY ET AL. |
| | **Examiner** | **Art Unit** |
| | TU NGUYEN | 2453 |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| 1 | 1 | 18 | 17 | 33 | 33 | | | | | | | | | | |
| 2 | 2 | 19 | 18 | | | | | | | | | | | | |
| 3 | 3 | 16 | 19 | | | | | | | | | | | | |
| 4 | 4 | 20 | 20 | | | | | | | | | | | | |
| 5 | 5 | 21 | 21 | | | | | | | | | | | | |
| 6 | 6 | 22 | 22 | | | | | | | | | | | | |
| 7 | 7 | 23 | 23 | | | | | | | | | | | | |
| 8 | 8 | 24 | 24 | | | | | | | | | | | | |
| 9 | 9 | 25 | 25 | | | | | | | | | | | | |
| 10 | 10 | 26 | 26 | | | | | | | | | | | | |
| 11 | 11 | 27 | 27 | | | | | | | | | | | | |
| 12 | 12 | 28 | 28 | | | | | | | | | | | | |
| 13 | 13 | 30 | 29 | | | | | | | | | | | | |
| 14 | 14 | 31 | 30 | | | | | | | | | | | | |
| 15 | 15 | 29 | 31 | | | | | | | | | | | | |
| 17 | 16 | 32 | 32 | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 33 | |
| (Assistant Examiner) | (Date) | | |
| /TU NGUYEN/ Primary Examiner.Art Unit 2453 | 09/04/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 3 |

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

---

### CERTIFICATE OF EFS WEB TRANSMISSION/SUBMISSION

I hereby certify that, on the date shown below, this correspondence is being transmitted-submitted to the United States Patent and Trademark Office (USPTO), via the EFS WEB online portal of the USPTO

Date: 25 August 2016    Signature: _____ /Christopher J. Scott/ _____ Signed By: Christopher J. Scott

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Leekley et al.                    )
                                                 )
Serial No.:    14/099,348                        ) Art Unit:   2453
                                                 )
Filed:         06 December 2013                  ) Examiner:  Tu T. Nguyen
                                                 )
For:           Smart Routing System,             )
               Method, and Manager               )
                                                 )

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## AMENDMENT A

Dear Honorable Commissioner:

In response to the Office Communication dated 15 June 2016, with a shortened statutory period for reply set to expire on 15 September 2016, Applicants submit the following Amendments and Remarks.

**AMENDMENTS TO THE CLAIMS** begin on Page No. 2 of 39 of this paper.

**REMARKS** begin on Page No. 14 of 39 of this paper.

1

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

I̲N̲ ̲T̲H̲E̲ ̲C̲L̲A̲I̲M̲S̲:

This listing of claims will replace all prior versions, and listings, of claims in the application:

Listing of Claims:

1. (currently amended)  A routing and synchronization system operable with one or more data sources for delivering selectively synchronized data files to a user in real time, the routing and synchronization system comprising:

a client cooperable with a first computer-implementable application ~~routing synchronization means~~, a gateway server, and a Resource Name Server (RNS) together in communication with a computer-populated network, the RNS for (1) caching data resource locations within the computer-populated network and (2) resolving resource requests with optimal data resource locations within the computer-populated network, the gateway server for (1) requesting and receiving optimal data resource locations via the RNS, (2) requesting and receiving data files from the computer-populated network via the optimal data resource locations, and (3) processing received data files for data file delivery to the client, the first computer-implementable application ~~routing synchronization means~~ being operable to respond to interactive and non-interactive requests by synchronizing and routing synchronized, consumable, legally-protected data from a select optimal data resource location to the client for consumption, the select optimal data resource location being selected from a routing instruction fulfillment source as prompted by a routing instruction received from a routing instruction generation source, the routing instruction fulfillment and

2

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

generation sources each being affiliated with a legal access point ~~associated with a data content library~~, the synchronized, consumable, legally-protected data being sourced to the consumer from a select data library.

2.   (previously presented)  The routing and synchronization system of claim 1 wherein the routing instruction fulfillment source is affiliated with at least two fulfillment-based, legal access points.

3.   (previously presented)  The routing and synchronization system of claim 1 wherein the synchronized, consumable, legally-protected data is sourced to the consumer from the select data library as governed by ID-to-hash mapping.

4.   (currently amended)  The routing and synchronization system of claim 1 comprising <u>a second computer-implementable application operable via the RNS for (a) fragmenting data, (b) delivering fragmented data, and thereby (c)</u> ~~data delivery fragmentation means, the data delivery fragmentation means for~~ enhancing delivery of non-corrupt data streams.

5.   (currently amended)  The routing and synchronization system of claim 1 comprising <u>a third computer-implementable application operable via the RNS</u> ~~resource indexing means, the resource indexing means~~ for indexing resource locations and thus for enhancing network efficiency of the routing and synchronization system.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

6.   (currently amended)  The routing and synchronization system of claim 5 wherein the
     third computer-implementable application further operates to match ~~resource indexing~~
     ~~means comprise file matching means, the file matching means for matching~~ data files
     independently from data file metadata [[~~, the file matching means thus~~]]for enhancing
     network efficiency of the routing and synchronization system.

7.   (currently amended)  The routing and synchronization system of claim 1 comprising a
     compliance appliance ~~(a) industry rights management means (b) compliance~~
     ~~monitoring means and/or (c) compliance reporting means, said means~~ for managing,
     monitoring and/or reporting data file transmission of [[-]] routed, synchronized,
     consumable, legally-protected data from the select optimal data resource location to
     owners or owner agents of the routed, synchronized, consumable, legally-protected
     data content.

8.   (currently amended)  The routing and synchronization system of claim 1 comprising a
     fourth computer-implementable application ~~event marker association means, the event~~
     ~~marker association means~~ for associating event markers in frame headers of the data
     files [[, ~~the event marker association means~~]] for enhancing data file transmission.

9.   (currently amended)  The routing and synchronization system of claim 8 wherein the
     fourth computer-implementable application is operable to integrate ~~comprising~~
     ~~advertisement integration means, the advertisement integration means for integrating~~
     advertisement content into data files ~~via said event marker association means~~.

4

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

10. (previously presented)  In a computer-populated environment, an origin-agnostic data delivery method for delivering a legally-protected select data file to an end user from an optimal resource location as selected from one or more data sources, the origin-agnostic data delivery method comprising the steps of:

communicating a client, a gateway server, and a Resource Name Server (RNS) within a computer-populated network;

caching data fulfillment sources within the computer-populated network via the RNS;

requesting a data fulfillment source listing by the gateway server from RNS-cached data fulfillment sources via a routing instruction generation source;

querying which of the data fulfillment sources optimally meets user-defined data transmission requirements, the query thereby defining an optimal fulfillment source;

requesting a legally-protected select data file from the optimal fulfillment source via the computer-populated network, the legally-protected select data file being sourced to the client from a select data file library;

transmitting the legally-protected select data file from the optimal fulfillment source; and

processing the transmitted legally-protected select data file for delivery to the client.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

11. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step of verifying client authenticity ~~via client authentication means~~.

12. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step of verifying server authenticity ~~via server authentication means~~.

13. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step of fragmenting data files during data file delivery ~~via data delivery fragmentation means, the data delivery fragmentation means~~ for enhancing delivery of non-corrupt data streams.

14. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step of indexing recourse locations ~~via resource indexing means, the resource indexing means~~ for enhancing method efficiency.

15. (currently amended)  The origin-agnostic data delivery method of claim 14 comprising the step of matching data files independently from data file metadata ~~via file matching means, the file matching means~~ for enhancing method efficiency.

16. (previously presented)  The origin-agnostic data delivery method of claim 10 comprising the step(s) of providing (a) industry rights management; (b) compliance monitoring; and/or (c) compliance reporting of data file transmission of routed, legally-protected data from the at least two data resource locations, the industry rights

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

management; (b) compliance monitoring; and/or (c) compliance reporting being due

owners or owner agents of the legally-protected select data file.

17. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising

the step of associating event markers in frame headers of the data files ~~via event~~

~~marker association means, the event marker association means~~ for enhancing data file

transmission.

18. (currently amended)  The origin-agnostic data delivery method of claim 17 comprising

the step of integrating advertisement content into data files ~~via the event marker~~

~~association means~~.

19. (currently amended)  The origin-agnostic data delivery method of claim 15 wherein

the step of matching data files comprises the steps of:

extracting waveform data from a first data file ~~via data extraction means~~

~~associated~~, the extracted waveform data comprising length segment values, the length

segment values being extracted relative to a data extraction baseline and comprising

trough-to-baseline and peak-to-baseline length segment values; deriving summary

statistics from the extracted waveform data, the summary statistics being derived from

the length segment values, the summary statistics comprising trough-to-baseline and

peak-to-baseline length segment statistics;

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

generating a custom marker based on the derived summary statistics;

associating the custom marker with the first data file thereby constructing a custom

marked data file; and

accessing the custom marker when comparing a second data file to the custom

marked data file for rendering a positive media file match.

20. (previously presented)  A data-routing governance system for governing and reporting

data routing within a content delivery network, the data-routing governance system

comprising a data-routing compliance appliance, the data-routing compliance

appliance being in communication with a routing and synchronization system operable

(a) within the content delivery network and (b) with one or more data sources, the

content delivery network comprising a plurality of routing instruction fulfillment

sources, the routing instruction fulfillment sources each comprising data files, the

content delivery network for delivering select data files to an end user from an optimal

data fulfillment source as prompted by a routing instruction generation source, the

optimal data fulfillment source being selected from the group comprising the routing

instruction fulfillment sources, the routing instruction fulfillment and routing

instruction generation sources each defining a legal access point, each legal access

point being associated with a data file library, the select data files being sourced to the

end user from a select data file library, the compliance appliance providing (a)

industry rights management (b) compliance monitoring and/or (c) compliance

reporting of data file transmissions of routed, legally-protected data from the optimal

data source location to owners or owner agents of the select data files.

8

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

21. (currently amended)  A routing and synchronization system operable with one or more

data sources within a <u>network-based</u> media content playback environment for

providing ~~an optimally~~ <u>a selectively</u> sourced media content broadcast to a consumer,

the routing and synchronization system comprising<u>:</u>

        <u>a primary computer-implementable application</u> ~~routing synchronization means~~

for synchronizing and routing consumable [[,]] legally-protected media content to the

consumer from ~~an optimal~~ <u>a select</u> routing instruction fulfillment source as prompted

by <u>routing and playback instructions generated via</u> ~~a routing instruction from~~ a routing

instruction generation source, the <u>select</u> routing instruction fulfillment source ~~and~~

~~generation sources each~~ being affiliated with at least <u>one</u> ~~two~~ legal access point

~~associated with a data content library~~, <u>the primary computer-implementable</u>

<u>application being operable to (a) generate the routing and playback instructions via the</u>

<u>routing instruction generation source for governing playback of the consumable</u>

<u>legally-protected media content via a content-delivery primary channel; (b) establish</u>

<u>an instruction-passing secondary channel to the consumer over an operable network</u>

<u>infrastructure; and (c) pass the routing and playback instructions to the consumer via</u>

<u>the instruction-passing secondary channel for sourcing</u> the consumable [[,]] legally-

protected media content ~~being sourced~~ to the consumer ~~from a select content library~~

<u>from the at least one legal access point</u>.

22. (previously presented)  The routing and synchronization system of claim 21 whereby

the ~~optimally~~ <u>selectively</u> sourced media content broadcast is characterized by direct

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

source delivery of the consumable [[,]] legally-protected media content to the consumer from a consumer-accessible content library as prompted by the routing instruction generation source.

23. (previously presented)  The routing and synchronization system of claim 22 wherein the routing instruction generation source is a select initiating source, the select initiating source being selected from the group consisting of an incoming indirect source and a consumer-affiliated direct source.

24. (currently amended)  The routing and synchronization system of claim 23 wherein the consumable [[,]] legally-protected media content is sourced to the consumer ~~from the select content library~~ as governed by pre-defined parameters, the pre-defined parameters selected from a parameter group comprising price efficiency parameters and data quality parameters, the price efficiency parameters for governing media playback from a cost effective content library, the data quality parameters for governing media playback from a high quality content library.

25. (currently amended)  The routing and synchronization system of claim 23 wherein the consumer-affiliated direct source is peer-connected, the consumable [[,]] legally-protected media content being directly sourced to the consumer based upon the consumer-affiliated direct source's legal right to source said consumable [[,]] legally-protected media content.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

26. (currently amended)  The routing and synchronization system of claim 21 comprising
a compliance appliance for providing (a) industry rights management ~~means~~, (b)
compliance monitoring ~~means~~ and/or (c) compliance reporting ~~means~~, said
compliance appliance thus ~~means~~ for managing, monitoring and/or reporting
transmission of the consumable [[,]] legally-protected content to owners or owner
agents of the consumable [[,]] legally-protected media content.

27. (currently amended)  The routing and synchronization system of claim 21 comprising
a secondary computer-implementable application operable ~~waveform metric-based~~
~~file-matching means, the waveform metric-based file-matching means~~ for identifying
content prompted by the routing instruction generation source and determining the
~~optimal~~ select routing instruction fulfillment source by querying the existence of
matching files from the at least one legal access point ~~within the select content library~~.

28. (new)  The routing and synchronization system of claim 21 wherein the computer-
implementable application is operable to associate an event reference with the routing
and playback instructions, the event reference and routing and playback instructions
together for sourcing the consumable legally-protected media content to the consumer
from the select content library.

29. (new)  The routing and synchronization system of claim 21 wherein the routing and
playback instructions are associated with a select file location, the select file location

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

being selected from a location group, the location group consisting of a file start

location or a file end location.

30. (new)  The routing and synchronization system of claim 21 wherein the routing and

playback instructions are timed metadata.

31. (new)  The routing and synchronization system of claim 28 wherein a custom media

format accommodates the event reference and routing and playback instructions

during an encoding process.

32. (new)  The routing and synchronization system of claim 21 wherein the routing and

playback instructions are subject to a number of select playback events, the number of

select playback events being selected from the group comprising (a) play, (b) pause,

(c) stop, (d) load, (e) seek, (f) comment, (i) comment start, (ii) comment end, (g) audio

mix, (h) playback speed, (j) playback direction, and (k) content identification.

33. (new)  A computer-implementable media content-sharing system, the computer-

implementable media content-sharing system being operable within a network-based

media content playback environment comprising at least two computers for providing

a selectively sourced media content broadcast to a consumer having access to a first of

the least two computers, the computer-implementable media content-sharing system

comprising and providing computer-implementable instructions for (a) establishing an

instruction-passing secondary channel to a consumer over an operable network; (b)

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

generating routing and playback instructions for governing playback of the

consumable legally-protected media content via a content-delivery primary channel;

and (c) passing the routing and playback instructions to the consumer via the

instruction-passing secondary channel for sourcing consumable legally-protected

media content to the consumer from at least one legal access point.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

REMARKS

In the Office Communication dated 15 June 2016, the U.S. Patent Examiner has rejected certain claims and has allowed certain claims.  In the Disposition of Claims section, Claim Nos. 1 – 27 are said to be pending in the application and that of these claims, Claim Nos. 10 and 16 have been allowed outright while Claim Nos. 1 – 9, 11 – 15, and 17 – 27 stand rejected for various reasons.  The Office Communication is ostensibly written in reply or response to the Supplemental Preliminary Amendment Applicants filed in the United States Patent and Trademark Office (USPTO) on 25 January 2016.  Applicants wish to thank the U.S. Patent Examiner for his helpful assistance and careful consideration of the subject application.

**35 U.S.C. § 112 REJECTIONS**

Claim Nos. 1 – 9, 11 – 15, and 17 – 27 are more particularly rejected under 35 U.S.C. § 112 as being indefinite for failing to particularly point out and distinctly claim the subject matter Applicants regard as the invention.  In this regard, the U.S. Patent Examiner appears to have taken issue with the term, "means" as variously employed within certain claims to denote certain computer-implementable or software driven mechanisms for achieving various functions.  The U.S. Patent Examiner states that the descriptions fail to disclose the corresponding structure, material, or acts for the claimed function.

14

In this last regard, the U.S. Patent Examiner has taken issue with the following (*emphasis added*) phrases found within the claims and has indicated that there are no structural descriptions for the claimed "means" in Claim Nos. 1 – 9, 11 – 15, and 17 – 27.

    a.  routing synchronization *means* (recited in Claim Nos. 1 and 21)

    b.  data delivery fragmentation *means* (recited in Claim Nos. 4 and 13)

    c.  resource [index] indexing *means* (recited in Claim Nos. 5, 6, and 14)

    d.  file matching *means* (recited in Claim Nos. 6 and 15)

    e.  [industrial] industry rights management *means* (recited in Claim Nos. 7 and 26)

    f.  compliance monitoring *means* (recited in Claim Nos. 7 and 26)

    g.  event marker association *means* (recited in Claim Nos. 8, 9, 17, and 18)

    h.  advertisement integration *means* (recited in Claim No. 9)

    i.  client authentication *means* (recited in Claim No. 11); and

    j.  server authentication *means* (recited in Claim No. 12).

Applicants have now reviewed Claim Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9 (i.e. 1 – 9); … Claim Nos. 11, 12, 13, 14, 15 (i.e. 11 – 15); and … 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27 (i.e. 17 – 27) with a view toward pinpointing and correcting the apparent means-plus-function related deficiencies within these claims.  Applicants have also reviewed Claim Nos. 10 and 16, the two claims omitted from the foregoing listing.  It is reiterated here for the record that Claim Nos. 10 and 16 are allowed and notably, in this regard, contain no means-plus-function language or terminology.  It is further noted for the record, however, that Claim Nos. 2 (dependent); 3 (dependent); 20 (independent); 22 (dependent); 23 (dependent); 24 (dependent); and 25 (dependent) also do NOT contain any means-plus-function language or terminology.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

The U.S. Patent Examiner notes in the last sentence appearing on Page No. 3 of the Office Communication that Claims Nos. 2, 3, 22, 23, 24 and 25 from the foregoing are rejected based on their dependency from a rejected claim.  Independent Claim No. 20, notably, does not contain any means-plus-function language or terminology, and thus it is unclear from the record why Claim No. 20 would only be allowable if rewritten or amended to overcome the rejections under 35 U.S.C. § 112 as otherwise set forth on Page No. 6 under the section heading: Allowable Subject Matter.  Applicants opine that independent Claim No. 20 is allowable "as is" without any further requirement to rewrite or amend the same in view of the lack of means-plus-function language appearing therein.  Reconsideration or clarification as to why Claim No. 20 has been rejected under 35 U.S.C. § 112 is thus respectfully requested.

With respect to the rejection of independent Claim No. 1 in view of 35 U.S.C. § 112, Applicants have elected to currently amend Claim No. 1 to remove reference to the means-plus-function term or phrase "routing synchronization means" and to replace the same with the term or phrase computer-implementable application.  Support for the replacement of the term or phrase "routing synchronization means" with the term or phrase "computer-implementable application" (i.e. a computer-implementable set of software type instructions) is believed supported throughout the entire specification, but is perhaps first referenced on Page No. 3 at Line Nos. 1 – 9 under the section heading: Summary of the Invention.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

It is further noted that the subject application incorporated by reference earlier filed U.S. Patent Application Serial Nos. 13/065,254; 13/134,044; and 13/199,474, now respectively issued as U.S. Patent Nos. 8,589,171; 8,478,719; and 8,688,631, which specifications further detail and describe support mechanisms for the variously recited means-plus-function terms of phrases.  Further, the subject application claims priority from U.S. Provisional Patent Application No. 61/734,721 filed in the USPTO on 07 December 2012. Accordingly, it is believed that both the original specifications and the antedated specifications incorporated by reference support the notion that the system claimed in Claim No. 1 is built around computer-implemented application(s) or software-based means for achieving the various functions.

In view of the amendments currently being made to independent Claim No. 1 to remove reference to the problematic term or phrase "routing synchronization means" with a more clearly supported new term or phrase "computer-implementable application" it is believed that independent Claim No. 1 is now in a better condition for allowance.  Similarly, dependent Claim Nos. 2 and 3, depending directly from independent Claim No. 1, are now believed to be in a better condition for allowance based on the amendments made to independent Claim No. 1 in view of their dependent status upon an otherwise base claim made more allowable by virtue of the current amendments thereto.

With respect to dependent Claim No. 4, the problematic means-plus-function language or terminology, "data fragmentation means" is believed first supported at Page Nos. 19 – 21 in certain descriptive paragraphs appearing from Line No. 18 (Page No. 19) through Line No.

17

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

6 (Page No. 21).  It there states that in order to keep a single peer from possibly corrupting or

purposefully replacing data in an inappropriate manner, it is preferable to fragment the

delivery of the data across multiple peers via certain data delivery fragmentation means.  The

data delivery fragmentation means according to the present invention may be exemplified by

a number of mechanisms and can be preferably achieved by simply limiting each peer's

delivery to a maximum of an exemplary third or a quarter of a certain media file.


This is preferably managed using the Resource Name Server or RNS 4.  The routing

and synchronization system may thus be said to further preferably comprise a second

computer-implementable application or set of computer-implementable software type

instructions operable via the RNS for (a) fragmenting data, (b) delivering fragmented data,

thereby (c) enhancing delivery of non-corrupt data streams substantially as described in the

original specifications submitted in support of the present invention.  In view of the

amendments currently being made to dependent Claim No. 4 to remove reference to the

problematic term or phrase "data fragmentation means" with a more clearly supported new

term or phrase "computer-implementable application" it is believed that dependent Claim No.

4 is now in a better condition for allowance.


With respect to dependent Claim Nos. 5 and 6, the problematic means-plus-function

language or terminology, "resource indexing means" and "file matching means" are believed

first supported at Page Nos. 21 – 23 in certain descriptive paragraphs appearing from Line No.

22 (Page No. 21) through Line No. 18 (Page No. 23).  As there described, the reader will

further note that certain means for resource indexing *without* file matching are further

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

depicted in Figure Nos. 14 and 15; and certain means for resource indexing *with* file matching are further depicted in Figure Nos. 16 and 17.

The resource indexing means are in essence a third computer-implementable application operable via the RNS for indexing resource locations and thus for enhancing network efficiency of the routing and synchronization system as currently claimed in dependent Claim No. 5.  Further, the third computer-implementable application may preferably operate to match data files independently from data file metadata for further enhancing network efficiency of the routing and synchronization system as currently claimed in dependent Claim No. 6.  In view of the amendments currently being made to dependent Claim Nos. 5 and 6 to respectively remove reference to the problematic terms or phrases "resource indexing means" and "file matching means" with more clearly supported new term or phrase "computer-implementable application" at least in connection with dependent Claim No. 5, it is believed that dependent Claim Nos. 5 and 6 are now in a better condition for allowance.

With respect to dependent Claim No. 7, the problematic means-plus-function language or terminology, "industry rights management means"; "compliance monitoring means"; and "compliance reporting means" are believed first supported at Page Nos. 23 – 24 in the descriptive paragraph appearing from Line No. 19 (Page No. 23) through Line No. 4 (Page No. 24).  Given that music can be transmitted from multiple sources, the local gateway servers according to the present invention deliver both interactive and non-interactive music requests made by a computer-implementable application and route the actual transmission

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

from the optimal (e.g. (a) most price efficient or (b) highest sound quality of source) location in terms of both bandwidth costs and royalty obligations.

Such a system results in a unique Compliance Engine or Compliance Appliance allowing usage reports and royalty obligations to be generated from and across multiple types of service platforms, meeting all rights holder requirements and standards.  The problematic terms or phrases, "industry rights management means"; "compliance monitoring means"; and "compliance reporting means" have thus been replaced by the term, compliance appliance as otherwise deemed allowable as claimed in independent Claim No. 20 and as clearly supported throughout the original specifications submitted in support of the claimed invention.

In view of the amendments currently being made to dependent Claim No. 7 to remove reference to the problematic terms or phrases "industry rights management means"; "compliance monitoring means"; and "compliance reporting means" with more clearly supported new term or phrase "compliance appliance" (i.e. a set of computer-implementable software type instructions), it is believed that dependent Claim No. 7 is now in a better condition for allowance.

With respect to dependent Claim No. 8, the problematic means-plus-function language or terminology, "event marker association means" is believed first supported at Page Nos. 34 – 37 in the descriptive paragraphs appearing from Line No. 19 (Page No. 34) through Line No. 20 (Page No. 24).  The computer 163 according to the present invention would have certain event marker association means as exemplified by proprietary software, which when

20

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

installed or applied allows a number of enumerated functions appearing from Line No. 4

(Page No. 35) through Line No. 20 (Page No. 37).  Exemplary portions of the descriptions are

reproduced hereunder for the Examiner's quick consideration.

The software imbeds event markers in the frame headers 177 of the audio stream 179.

Each MP3 audio stream/file 179 consists of audio frames 178, which audio frames 178 each

have a header 177.  As new audio is added, new frames 178 are appended to the file.  These

headers 177 are 32 bits long.  Within each header 177 there is a bit reserved for private

application use.  This bit would be set to "1" at the start of an event, and set to "0" during

regular streaming.  This data would be embedded into both streams 176 and/or 256 coming

from the soundboard 164.  (See Line Nos. 14 – 21 on Page No. 35).

Since each event will have a unique marker within a 10 second time frame, these

markers can be used to synchronize two separate streams (one which contains live audio only

and the other which would be the full mix) to hand off and transition to a fully remotely

mixed stream and a locally mixed stream (which would be a stream of live audio streamed

from the studio and pre-recorded audio mixed into the stream at event markers by the local

server).  The event markers would also link to mixing instructions to mimic the audio mix

from the studio.  (See Line Nos. 10 – 17 on Page No. 36).

In view of the amendments currently being made to dependent Claim No. 8 to remove

reference to the problematic term or phrase "event marker association means" with more

clearly supported new term or phrase "computer-implementable application" (i.e. a set of

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

computer-implementable software type instructions), it is believed that dependent Claim No.

8 is now in a better condition for allowance.

With respect to dependent Claim No. 9, the problematic means-plus-function language

or terminology, "advertisement integration means" is believed first supported at Page Nos. 40

– 41 in the descriptive paragraphs appearing from Line No. 4 (Page No. 40) through Line No.

12 (Page No. 41).  There it will be seen that in cases where a radio station or show will only

be integrating advertisements and will not be mixing a live stream with pre-recorded audio

(e.g. music), the system contemplates certain advertisement integration means as generally

depicted in FIGS. 31 and 32 and as described in certain select exemplary excerpts set forth

below.

A radio show can be recorded on a computer 190 through software 191 which

would encode the audio and mark (*e.g. via an event marker*) when an advertisement or

other pre-recorded file needs to be played.  Advertisement markers (*i.e. event markers*)

are placed after a predetermined time of audio silence.  In order to achieve this, the

encoding application 191 creates a lag 300 a few seconds longer then the

predetermined advertisement indicating audio silence 301.  Thus, if a radio personality

is recording and needs to insert an advertisement break, the radio personality simply

mutes or silences the microphone for 5 seconds as at 301 (for example).  After 5

seconds of silence (as at 301) (as an example) the encoding application marks the

audio stream not at the end 302 of the 5 seconds of silence, but at the beginning 303.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

This way the end listener does not hear the silence but an advertisement. (*exemplary language added*) (See Line Nos. 8 – 17 on Page No. 40).

The gateway server 195 then delivers 273 the audio stream to the client 194. The gateway server 195 creates a small buffer (2-5 seconds of data), so that when an advertisement marker is identified within the audio stream, the gateway server 195 can fetch 274 an appropriate advertisement from the advertisement server 196 and integrate it at the specified time. In a mobile application, the application would have to integrate the advertisements without a gateway server 194. The mobile application would have to have it integrated into the application's source code. So it would have code that would detect an advertisement marker, and then integrate an advertisement at the start of the advertisement marker. (See Line Nos. 6 – 12 on Page No. 41).

In view of the amendments currently being made to dependent Claim No. 9 to remove reference to the problematic term or phrase "advertisement integration means" with more clearly supported new term or phrase "computer-implementable application" (i.e. a set of computer-implementable software type instructions) at least in connection with or as dependent upon Claim No. 8, it is believed that dependent Claim No. 9 is now in a better condition for allowance.

Independent Claim No. 10, a base method type claim, has been allowed outright and after a further review of the claim, Applicants have elected to refrain from volunteering any further amendments to this claim. Dependent Claim Nos. 11 – 15 and 17 – 19 ultimately

23

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

depend from allowed independent Claim No. 10 but have been summarily rejected based on

35 U.S.C. §112 basically for failing to materially or properly support the means-plus-function

clauses appearing therein.  Notably, dependent Claim No. 16, also allowed outright, is

dependent upon independent Claim No. 10, but as prefaced above, lacks the problematic

means-plus-function language.

Thus, in response to the U.S. Patent Examiner's rejection of Claim Nos. 11 – 15 based

on the mean-plus-function language, Applicants elect to remove reference to the problematic

language on par with the claim structure otherwise appearing in dependent Claim No. 16 and

ostensibly allowable because of the lack of means type clauses appearing therein.  With

regard to dependent Claim Nos. 13, 14, and 15, the following respective means clauses were

found in the examined claim set: (a) data delivery fragmentation *means* (recited in Claim Nos.

4 and 13); (b) resource [index] indexing *means* (recited in Claim Nos. 5, 6, and 14); and (c)

file matching *means* (recited in Claim Nos. 6 and 15).  Applicants direct the reader to the

citations and discussions previously presented in connection with dependent Claim Nos. 4, 5,

and 6 for material or proper support within the application specifications for these clauses

despite their outright and respective removal from dependent Claim Nos. 13, 14, and 15.

Further, in response to the U.S. Patent Examiner's rejection of Claim Nos. 17 – 19

based on the mean-plus-function language, Applicants elect to remove reference to the

problematic language on par with the claim structure otherwise appearing in allowed

dependent Claim No. 16.  With regard to dependent Claim Nos. 17, 18, and 19, the following

respective means clauses were found in the examined claim set: (a) event marker association

24

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

*means* (recited in examined dependent Claim Nos. 17 and 18); and (b)  data extraction *means* (recited in examined dependent Claim No. 19).

With regard to the problematic term or phrase, "event marker association means" recited in examined dependent Claim Nos. 17 and 18, Applicants direct the reader to the citations and discussions previously presented in connection with dependent Claim Nos. 17 and 18 for material or proper support within the application specifications for these clauses despite their outright and respective removal from dependent Claim Nos. 17 and 18.

With respect to the problematic terms or phrases "client authentication means" and "server authentication means" found in the examined dependent Claim Nos. 11 and 12, Applicants have elected to similarly have removed references to the terms respectively. However, for purposes of rendering a more proper response for the record, support for these clauses is believed to first appear on Page Nos. 15 and 16 from Line No. 15 (Page No. 15) through Line No. 9 (Page No. 16).  It will there be seen that the client and/or server authentication means may be exemplified by a number of different mechanisms.  For example, said authentication means may be provided by way of media plug-in authentication (client authentication) and browser extensions that validate the local server to ensure that it is not a corrupt server (this would require some sort of unique ID, session tokens, or key pairing).

Client sided scripts along with plug-ins can also be used to authenticate both the client and the server by embedding some form of verification identification within

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

the plug-in, which is then passed to the client-sided scripts which validate the

verification identification using AJAX.  The use of client-sided scripts in tandem with

a browser plug-in is preferred as it provides both client and server verification in one

process.  This method is discussed below.  (See Line Nos. 21 (Page No. 15) through

Line No. 4 (Page No. 16)).


Referencing FIGS. 12 and 13, the reader will consider client verification via

browser plug-in and client sided scripts.  The process of creating a secure connection

begins with the installation of the local server.  When installed, the server creates a

self-signed certificate, and adds the self-signed certificate to the root certificate tree.

This enables the server to create a secure connection from a browser.  (See Line Nos.

5 – 9 on Page No. 16).


With regard to the term or phrase, "data extraction means", Applicants note that the

U.S. Patent Examiner has not taken particular issue with this term or phrase, the *means*

portion notwithstanding.  Nevertheless, Applicants have elected to remove the term or phrase

from dependent Claim No. 19 to enhance the clarity of the claim and to bring dependent

Claim No. 19 into a more consistent form with the other pending claims as currently

amended.  Support for the term or phrase is believed first found on Page Nos. 42 – 43 of the

original specifications in addition to specifications incorporated by reference as there

described.  Certain descriptive portions are reproduced hereinafter for the U.S. Patent

Examiner's quick consideration.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

The file matching means according to the present invention are more fully specified in allowed U.S. patent application Ser. No. 13/065,254, now issued U.S. Pat. No. 8,589,171 to which these specifications claim a benefit, and which specifications have been incorporated by reference thereto. (See Line No. 23 (Page No. 42) through Line No. 3 (Page No. 43)). … The file matching means according to the present invention may thus preferably comprise certain data extraction means, certain summary statistic derivation means, certain custom marker generation means, certain custom marker association means, and certain custom marker accessing means. (See Line Nos. 4 – 7 on Page No. 43).

The data extracting means extract waveform data from a first data file. The extracted waveform data comprise length segment values, which values are extracted relative to a data extraction baseline and comprise trough-to-baseline and peak-to-baseline length segment values. The summary statistic derivation means derive summary statistics from the extracted waveform data, which summary statistics are derived from the length segment values, and comprise trough-to-baseline and peak-to-baseline length segment statistics. (See Line Nos. 8 – 14 on Page No. 43).

In view of the amendments currently being made to method-type dependent Claim Nos. 11 – 15 and 17 – 19 to simply remove reference to the problematic terms or phrases: (a) client authentication *means* (as previously recited in method-type dependent Claim No. 11); (b) server authentication *means* (as previously recited in method-type dependent Claim No. 12); (c) data delivery fragmentation *means* (as previously recited in method-type dependent

27

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

Claim No. 13); (d) resource [index] indexing *means* (as previously recited in method-type dependent Claim No. 14); (e) file matching *means* (as previously recited in method-type dependent Claim No. 15); (f) event marker association *means* (as previously recited in method-type dependent Claim Nos. 17 and 18); and (g) data extraction *means* (as previously recited in method-type dependent Claim No. 19), it is believed that method-type dependent Claim Nos. 11 – 15 and 17 – 19 are now in a better condition for allowance.

As prefaced above, it is believed that examined independent Claim No. 20 is allowable "as is" despite the U.S. Patent Examiner's apparent contention that the claim contains a problematic means-plus-function clause.  Applicants have again reviewed the claim for the purposes of fully responding to the Office Communication and have elected to maintain its current construction despite the U.S. Patent Examiner's rejection of this claim under 35 U.S.C. § 112.

With respect to examined independent Claim No. 21 and examined dependent Claim Nos. 26 and 27, the U.S. Patent Examiner has further rejected these claims based on 35 U.S.C. § 112 again in view of the inclusion of problematic means-plus-function clauses, namely, (a) "routing synchronization means" as recited in examined independent Claim No. 21; industry rights management means, compliance monitoring means, and compliance reporting means[1]

---

[1] It is noted for the record that the U.S. Patent Examiner did not take particular issue with the term or phrase, "compliance reporting means" as recited in examined Claim Nos. 7 and 26.  Nevertheless, Applicants have elected to remove all reference to the term or phrase from the noted claims to enhance the clarity of the subject claims and bring the affected claims into a more consistent form with the remainder of pending claims in this application.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

recited in examined dependent Claim No. 26; and (waveform metric-based) file-matching

means recited in examined Claim No. 27.


With respect to the rejection of examined independent Claim No. 21 in view of 35

U.S.C. § 112, Applicants have elected to currently amend independent Claim No. 21 to

remove reference to the means-plus-function term or phrase "routing synchronization means"

and to replace the same with the term or phrase "computer-implementable application.  As

earlier discussed in connection with amendments to independent Claim No. 21, support for

the replacement of the term or phrase "routing synchronization means" with the term or

phrase "computer-implementable application" (i.e. a computer-implementable set of software

type instructions) is believed supported throughout the entire specification, and first

referenced on Page No. 3 at Line Nos. 1 – 9.


The system claimed in independent Claim Nos. 1 and 21 are both built around

computer-implemented application(s) or software-based means for achieving the various

functions.  Accordingly, in view of the amendments currently being made to independent

Claim No. 21 to remove reference to the problematic term or phrase "routing synchronization

means" with a more clearly supported new term or phrase "computer-implementable

application" it is believed that independent Claim No. 21 is now in a better condition for

allowance in view of the removal of means phraseology therefrom.


With respect to dependent Claim No. 26 (as previously discussed in connection with

dependent Claim No. 7), the problematic means-plus-function language or terminology,

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

"industry rights management means"; "compliance monitoring means"; and "compliance

reporting means" are believed first supported at Page Nos. 23 – 24 in the descriptive

paragraph appearing from Line No. 19 (Page No. 23) through Line No. 4 (Page No. 24). The

Compliance Engine or Compliance Appliance according to the present invention allows for

usage reports and royalty obligations to be generated from and across multiple types of

service platforms, meeting all rights holder requirements and standards. The problematic

terms or phrases, "industry rights management means"; "compliance monitoring means"; and

"compliance reporting means" have thus been replaced by the term, compliance appliance as

otherwise deemed allowable as claimed in independent Claim No. 20 and as clearly supported

throughout the original specifications submitted in support of the claimed invention.


In view of the amendments currently being made to dependent Claim No. 26 to

remove reference to the problematic terms or phrases "industry rights management means";

"compliance monitoring means"; and "compliance reporting means" with more clearly

supported new term or phrase "compliance appliance" (i.e. a set of computer-implementable

software type instructions), it is believed that dependent Claim No. 26 as currently amended is

now in a better condition for allowance.


With respect to dependent Claim No. 27 (as also discussed in connection with

dependent Claim No. 5 above), the problematic means-plus-function "(waveform metric-

based) file matching means" are believed first supported at Page Nos. 21 – 23 in certain

descriptive paragraphs appearing from Line No. 22 (Page No. 21) through Line No. 18 (Page

No. 23). As there described, the reader will further note that certain means for resource

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

indexing *without* file matching are further depicted in Figure Nos. 14 and 15; and certain

means for resource indexing *with* file matching are further depicted in Figure Nos. 16 and 17.


The secondary computer-implementable application may preferably operate to identify

content prompted by the routing instruction generation source and determine the optimal

routing instruction fulfillment source by querying the existence of matching files from at least

one legal access point as currently claimed in dependent Claim No. 27.  In view of the

amendments currently being made to dependent Claim Nos. 5 and 6 to respectively remove

reference to the problematic term or phrase, "file matching means" with more clearly

supported new term or phrase "computer-implementable application", it is believed that

dependent Claim No. 27 is now in a better condition for allowance.


## 35 U.S.C. § 103 REJECTIONS


The U.S. Patent Examiner has further rejected Claim Nos. 21, 22, 23, 25, 26, and 27

under 35 U.S.C. § 103 as being unpatentable over U.S. Patent Application Publication No.

2012/0304233 authored by Roberts et al.  Applicants have now reviewed the Roberts et al.

teachings and note various shortcomings taught thereby as well as a number of particular of

systemic differences that may operate to patentably distinguish the invention currently

claimed in independent Claim No. 21 from the Roberts et al. teachings.


In this last regard, it is noted that the Roberts et al. teachings do not teach how to map

media content across providers.  In other words, the Roberts et al. teachings only appear to

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

instruct on how two devices may be able to share a stream from a single provider, there being

no corresponding mechanism or means (a) for mapping media content across providers, or (b)

for streaming the same media content from a second provider when the media content is

identical to the media content provided by a first provider.  There is no reference to metadata

mapping algorithms, nor is there any reference to any fingerprinting mechanisms to identify

media content, and properly attribute media content to or associate media content with owners

thereof across content providers.

Roberts et al. make mention that two devices could conceivably share the same media

content session, but the method taught by Roberts et al. would present an extraordinary

security risk over a public network exemplified by the Internet, and thus Roberts et al.

specifically limit their methodology to local area networks.  Roberts et al. indicate that the

mechanism for synchronized viewing would be a shared media session.  This assumes the

retransmission of copyrighted data from one device to another across the Internet.  Such a

system would only be legal if both devices belonged to the same user (accessing a common

content library owned by the user).

The present invention, by contrast, is operable to transmit and re-create a broadcast

across multiple users each of whom have their own rights or legal access to media content

libraries, and in some cases their own respective rights and legal access to the very same

media content library (e.g. two users accessing the Spotify library via two separate legal

access points or accounts).  Extending the Roberts et al. to the present invention would

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

essentially result in mass copyright violations, and could be considered peer to peer file sharing.

Further, while Roberts et al. do appear to make mention of advertisement-tagging, they make no mention of relatively more important mechanisms for reconstruction of the music stream of a broadcast such as play or stop or seek or comment events. It is noted that while in-stream tagging is mentioned by Roberts et al. for the purpose of advertisement injection, such in-stream tagging is not explained, and not all media formats listed as supported by the invention support timed metadata, and the inventors do not specify how tagging would be accomplished without timed metadata. The nature of the data the Roberts et al. invention proposes to save is binary, (i.e. advertisement versus no advertisement), and the space needed to tag a file for such a small amount of data would be small enough to fit into the frame header of most formats (e.g. a single free bit).

The instructions needed for proper file attribution and mixing instructions to reproduce a live broadcast could potentially reach up to several bytes. Therefor the methods used for tagging that indicate binary advertisement existence (yes or no) cannot be used to inject routing and mixing instructions. Applicant thus content that it is neither clear nor obvious under 35 U.S.C. § 103 from the Roberts et al. teachings how one would accomplish the injection of events (as claimed by Applicants) versus a simple advertisement indicator which can be as small as a set bit.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

In view of the claim rejections under 35 U.S.C. § 103, and in view of the systemic differences between the subject invention and the Roberts et al. teachings, Applicants have elected to amend independent Claim No. 21 to more succinctly and precisely define the subject matter Applicants regard as their invention defined thereby.  In this regard, it is believed that Roberts et al. fail to teach a routing and synchronization system operable with one or more data sources within a network-based media content playback environment for providing an optimally sourced media content broadcast to a consumer, which routing and synchronization system is characterized by comprising a computer-implementable application for generally synchronizing and routing consumable, legally-protected media content to the consumer from an optimal routing instruction fulfillment source as prompted by routing and playback instructions generated via a routing instruction generation source.

The optimal routing instruction fulfillment source according to the present invention is preferably affiliated with at least one legal access point.  The computer-implementable application is more particularly operable to generate the routing and playback instructions via the routing instruction generation source for governing playback of the consumable, legally-protected media content via a content-delivery primary channel; establish an instruction-passing secondary channel (in parallel to the content-delivery primary channel) to the consumer over an operable network infrastructure; and pass the routing and playback instructions to the consumer via the instruction-passing secondary channel for sourcing the consumable, legally-protected media content to the consumer from the at least one legal access point.

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

Support for the claim amendments currently appearing in independent Claim No. 21 are believed found in the original descriptions/specifications beginning on Page No. 34 with the paragraph beginning at Line No. 4 and continuing at least through Page No. 40, Line No. 3. Support for the amendments are believed further supported by at least Figure Nos. 26 through 28 which figures respectively and comparatively depict a diagrammatic depiction of a gateway server enhanced system overview according to the present invention; a diagrammatic depiction of a pre-recorded media queue arrangement according to the present invention; and a diagrammatic depiction of a preferred stream-splitting arrangement according to the present invention. Certain exemplary excerpts are provided below for the U.S. Patent Examiner's quick consideration.

The server 184 registers that sub-domain name to itself and then handles all request to the sub-domain name from the local client application 183. In this case when a request for the stream is made by a client application 183, the request is served as at 260 by the gateway server 184 as seen in Figure No. 26. The gateway server 184 begins this service by serving the stream 182 from the remote content delivery network 185 (via a first channel). Once the stream 182 begins the gateway server 184 requests the pre-recorded audio queue 171 and begins caching 253 the pre-recorded audio from peer-to-peer 174, remote content delivery network(s) 173, or local sources 175 as depicted in Figure No. 27. The gateway server 184 also preferably loads 261 the events queue from a remote database 186, which is constantly updated by the studio computer 163. The gateway 184 would consistently receive updates of events

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

as at 261 while the stream 181 is live (via a second channel).  (See Line Nos. 6 – 16 on Page No. 38).

In order to transition from the full studio mix 182 to the live audio only stream 181, the gateway server 184 loads both streams 181 and 182 and only serves the full mix 182. In order to ensure that the gateway server 184 and the mixing application 187 have enough time to complete all tasks, the server 184 starts the stream 10-20 seconds from live data reception, creating a custom lag which would be used to create time for the system to execute the mixing and transition. The gateway server 184 waits for an event bit in the full studio mix 182 frame headers 177 to transition to the live audio stream 181.  (See Line Nos. 17 – 23 on Page No. 38).

The gateway server 184 aligns the two streams 182/181 at the event bit.  This is done by matching the bit code following the event bit. If the bit code matches for both events, the events are considered matched, since only the last 10-15 seconds of a stream are searched.  The 32 unique bit codes provide enough uniqueness to guarantee that the matched events are in fact identical.   Once event bits are matched, the gateway server 184 transitions from the full studio mix 182 to the live audio mix 181 at the frame 178 in which the event bit occurs.  Using this method provides a seamless transition from stream to stream with frame-to-frame accuracy.  (See Line Nos. 1 – 8 on Page No. 39).

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

In view of the amendments currently being made to independent Claim No. 21,
Applicants believe they have more succinctly and precisely defined the subject invention in a
manner that defines around the Roberts et al. teachings and thus the allowability thereof has
been improved.  The allowability of dependent Claim Nos. 22 – 27, being ultimately
dependent upon independent Claim No. 21 as currently amended, is thus also believed to be
similarly enhanced.  New dependent Claim Nos. 28 – 32 are now being as dependent upon
independent Claim No. 21 as currently amended to newly claim certain aspects of the
invention in view of the newly cited Roberts et al. teachings.

In this regard, it is believed that the Roberts et al. teachings fail to disclose, teach, or
otherwise suggest a computer-implementable application as otherwise defined by independent
Claim No. 21 as currently amended and made operable to associate a reference event with the
routing and playback instructions, the reference event and routing and playback instructions
together for sourcing the consumable, legally-protected media content to the consumer from
the select content library.  Further, the Roberts et al. teachings fail to disclose, teach, or
otherwise suggest a system as otherwise defined by independent Claim No. 21 as currently
amended that further operates to associate (timed metadata type) routing and playback
instructions with a select file location, as selected from a location group consisting of a file
start location or a file end location.

Roberts et al. further fail to disclose, teach, or otherwise suggest a system as otherwise
defined by independent Claim No. 21 as currently amended that further operates to create a
custom media format for accommodating reference events and routing and playback

37

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

instructions during an encoding process and which routing and playback instructions are

subject to a number of select playback events, the number of select playback events being

selected from the group including the following events: (a) play, (b) pause, (c) stop, (d) load,

(e) seek, (f) comment, (i) comment start, (ii) comment end, (g) audio mix, (h) playback speed,

(j) playback direction, and (k) content identification.

Newly submitted independent Claim No. 33 is reflective of currently amended Claim

No. 21, but attempts to most succinctly and precisely define the subject matter Applicants

regard as their invention in patentable distinction relative to Roberts et al. An attempt has

been made to amend the claim language throughout this application in order to more properly

direct attention to and define the centerpiece of the present invention.

The present invention both builds upon and departs from patented subject matter in

US. Patent Nos. 8,478,719; 8,589,171; and 8,688,631 which patents detail and define certain

media file synchronization systems. Whereas previously patented subject matter is basically

based upon core metric matching technology, the present invention (as well as the invention

described in related International Patent Application No. PCT/US2015/027311) basically

provide certain routing and routing-compliance mechanisms, which routing and compliance

mechanisms may be said to embrace certain aspects of the media file synchronization systems

and methods of the earlier filed patent documents co-owned by Applicants. Basically, the

present invention provides certain media file synchronization systems and methods for

synchronizing media file playback.

The departure of the routing and routing-compliance mechanisms according to the

present invention is described as such because the core inventive concepts do not necessarily

rely upon the metric-matching technology for implementation, although they may. Further,

Application No.: 14/099,348
Amendment dated 25 August 2016
Reply to Office Communication dated 15 June 2016

the present invention may also be said to provide the basis for providing a local, virtual

representation of a remote media file on a local file system as discussed in more detail in

International Patent Application No. PCT/US2015/019099 co-owned by Applicants.


In an attempt to more precisely, succinctly, and definitely define the subject invention,

the claims at issue have been currently amended to more forcefully, succinctly, and precisely

define the content Applicants regard as their invention.  In other words, these claim

amendments are being submitted in an effort to more narrowly highlight the claimed features

of the present invention.  The claim amendments have attempted to shift the focus of or more

narrowly limit the claimed invention toward certain key aspects of the invention as discussed

hereinabove and embraced by these and other co-owned original descriptions as inventive and

patentably distinct from the prior art reference(s) made of record.


The claim amendments accompanying this letter will replace all prior versions, and

listings of claim in this application.  In view of the amendments being presented, it is believed

that this patent application is now in better condition for allowance.  If, after a review of this

Amendment, issues remain which may be resolved by a telephone interview, the U.S. Patent

Examiner is cordially invited to call the Applicants' undersigned attorney.

Respectfully submitted,
Attorney for Applicants


/Christopher J. Scott/
Christopher J. Scott
Registration 48,647

724 South Street / P.O. Box 1046
West Dundee, IL  60118
630.818.0946 telephone
847.836.7096 facsimile

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14099348 |
| **Filing Date:** | 06-Dec-2013 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Filer:** | Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 6 | 40 | 240 |
| Independent Claims in Excess of 3 | 2201 | 1 | 210 | 210 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **450** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 26747155 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 25-AUG-2016 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 14:02:36 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $450 |
| RAM confirmation Number | 082616INTEFSW14040101 |
| Deposit Account | 8005 |
| Authorized User | Christopher Scott |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | AmendmentA.pdf | 169901<br>a7883ac78b8671c651298f249fc7dafc62caf b5b | no | 39 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31899<br>0f64d0e11085042eb908819a462950cd7e2 95438 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 201800 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 | 4880 |

115883        7590        06/15/2016
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

| EXAMINER |
|---|
| NGUYEN, TU T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2453 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/15/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | | |
|---|---|---|
| | **Application No.** 14/099,348 | **Applicant(s)** LEEKLEY ET AL. |
| *Office Action Summary* | **Examiner** Tu Nguyen | **Art Unit** 2453 | **AIA (First Inventor to File) Status** No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.
 ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL**. 2b) ☒ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) <u>1-27</u> is/are pending in the application.
 5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☒ Claim(s) <u>10 and 16</u> is/are allowed.
7) ☒ Claim(s) <u>1-9,11-15 and 17-27</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>12/06/2013</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
 Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
 Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
 **Certified copies:**
 a) ☐ All b) ☐ Some** c) ☐ None of the:
 1. ☐ Certified copies of the priority documents have been received.
 2. ☐ Certified copies of the priority documents have been received in Application No. _____.
 3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/099,348                                    Page 2
Art Unit: 2453

The present application is being examined under the pre-AIA first to invent

provisions.

## DETAILED ACTION

### Claim Rejections - 35 USC § 112

The following is a quotation of 35 U.S.C. 112(b):
(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 1-9, 11-15, 17-27  are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112

(pre-AIA), second paragraph, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA

the applicant regards as the invention.

With respect to claims 1, 4-9, 11-15,17-21,26, 27, claim elements "routing

synchronization means", "data delivery fragmentation means", "the resource indexing

means", "the file matching means", "industrial rights management means", "compliance

monitoring means", "the event marker association means", "the advertisement

integration means", "client authentication means", "server authentication means",

"resource index means" are limitation that invokes 35 U.S.C. 112, sixth paragraph.

However, the written description fails to disclose the corresponding structure, material,

or acts for the claimed function.

There is no structural description for the claimed "means". Applicant may:

Application/Control Number: 14/099,348                                Page 3
Art Unit: 2453

(a)     Amend the claim so that the claim limitation will no longer be interpreted

as a limitation under 35 U.S.C. 112, sixth paragraph; or

(b)     Amend the written description of the specification such that it expressly

recites what structure, material, or acts perform the claimed function without introducing

any new matter (35 U.S.C. 132(a)).

If applicant is of the opinion that the written description of the specification

already implicitly or inherently discloses the corresponding structure, material, or acts so

that one of ordinary skill in the art would recognize what structure, material, or acts

perform the claimed function, applicant should clarify the record by either:

(a)     Amending the written description of the specification such that it

expressly recites the corresponding structure, material, or acts for performing the

claimed function and clearly links or associates the structure, material, or acts to the

claimed function, without introducing any new matter (35 U.S.C. 132(a)); or

(b)     Stating on the record what the corresponding structure, material, or

acts, which are implicitly or inherently set forth in the written description of the

specification, perform the claimed function. For more information, see 37 CFR 1.75(d)

and MPEP §§ 608.01(o) and 2181.


With respect to claims 2-3, 22-25, the claims are also rejected as being

depended on a rejected claim.

Application/Control Number: 14/099,348                                    Page 4
Art Unit: 2453

### *Claim Rejections - 35 USC § 103*

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

Claims 21, 22-23, 25-27 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Roberts et al (2012/0304233).

With respect to claim 21, Roberts discloses a routing and synchronization system

114 (fig 1) operable with one or more data sources 106, 112 (fig 1) within a media

content playback environment 116 (fig 1) for providing an optimally sourced media

content (para [0051], "*best fit*") broadcast to a consumer, the routing and

synchronization system comprising routing synchronization means for synchronizing

and routing consumable, legally-protected media content (paragraphs [0015], [0035]

"*access rights*") to the consumer from an optimal routing instruction fulfillment source

302,304 (fig 3) (paragraphs [0035], [0038]) as prompted by a routing instruction from a

routing instruction generation source 306 (fig 3) (para [0051]), the routing instruction

fulfillment and generation sources each being affiliated with a legal access point (para

[0036], [0051], "*access rights*") associated with a data content library 106, 112 (fig 1),

the consumable, legally-protected media content being sourced to the consumer from a

select content library.

Application/Control Number: 14/099,348                                        Page 5
Art Unit: 2453

Roberts does not explicitly disclose a legal access point. However, Roberts

discloses enforcing access rights associated with media content and managing access

rights of media content (para [0051]). It would have been obvious that Roberts would

have the claimed legal access point in order to enforce and manage the access rights.


With respect to claim 22, Roberts discloses the optimally sourced media content

broadcast 102, 108 (fig 1) is characterized by direct source delivery of the consumable

legally-protected media content 106, 112 (fig 1) to the consumer from a consumer-

accessible content library as prompted by the routing instruction generation source 114

(fig 1).


With respect to claim 23, Roberts discloses the routing instruction generation

source is a select initiating source, the select initiating source being selected from the

group consisting of an incoming indirect source 106 (fig 1) and a consumer-affiliated

direct source 112 (fig 1).


With respect to claims 25-27, Roberts does not disclose the claimed limitations.

However, the claimed limitations would have been known.  It would have been obvious

a design choices to modify Roberts with the claimed limitations for different intended

uses.

Application/Control Number: 14/099,348                                     Page 6
Art Unit: 2453

### *Allowable Subject Matter*

Claims 1-9, 20 would be allowable if rewritten or amended to overcome the

rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth

in this Office action.

With respect to claim 1, the prior art of record, taking alone or in combination fail

to disclose or render obvious a routing and synchronization system operable with one or

more data sources for delivering selectively synchronized data files to a user in real

time, the routing and synchronization system comprising: the RNS for (1) caching data

resource locations within the computer-populated network and (2) resolving resource

requests with optimal data resource locations within the computer- populated network,

the gateway server for (1) requesting and receiving optimal data resource locations via

the RNS, (2) requesting and receiving data files from the computer-populated network

via the optimal data resource locations, and (3) processing received data files for data

file delivery to the client, the routing synchronization means being operable to respond

to interactive and non-interactive requests by synchronizing and routing synchronized,

consumable, legally-protected data from a select optimal data resource location to the

client for consumption, the select optimal data resource location being selected from a

routing instruction fulfillment source as prompted by a routing instruction received from

a routing instruction generation source, the routing instruction fulfillment and generation

sources each being affiliated with a legal access point associated with a data content

library, the synchronized, consumable, legally-protected data being sourced to the

Application/Control Number: 14/099,348                                       Page 7
Art Unit: 2453

consumer from a select data library, which structurally arranged and functionally

operated as claimed in claim 1.


With respect to claim 20, the prior art of record, taking alone or in combination fail

to disclose or render obvious a data-routing governance system for governing and

reporting data routing within a content delivery network, the data-routing governance

system comprising a data-routing compliance appliance, the data-routing compliance

appliance being in communication with a routing and synchronization system operable

(a) within the content delivery network  and (b) with one or more data sources, the

content delivery network comprising a plurality of routing instruction fulfillment sources ,

the routing instruction fulfillment sources each comprising data files, the content delivery

network for delivering select data files to an end user from an optimal data fulfillment

source as prompted by a routing instruction generation source, the optimal data

fulfillment source location being selected from the group comprising the routing

instruction fulfillment sources, the routing instruction fulfillment and routing instruction

generation sources each defining a legal access point, each legal access point being

associated with a data file library, the select data files being sourced to the end user

from a select data file library, the compliance appliance providing (a) industry rights

management (b) compliance monitoring and/or (c) compliance reporting of data file

transmissions of routed, legally-protected data from the optimal data source location to

owners or owner agents of the select data files, which structurally arranged and

functionally operated as claimed in claim 20.

Application/Control Number: 14/099,348                                    Page 8
Art Unit: 2453

Claims 10, 16 are allowed.

With respect to claim 10, the prior art of record, taking alone or in combination fail to disclose or render obvious an origin-agnostic data delivery method for delivering a legally-protected select data file to an end user from an optimal resource location as selected from one or more data sources, the origin-agnostic data delivery method comprising the steps of: caching data fulfillment sources within the computer- populated network via the RNS; requesting a data fulfillment source listing by the gateway server from RNS-cached data fulfillment sources via a routing instruction generation source; querying which of the data fulfillment sources optimally meets user-defined data transmission requirements, the query thereby defining an optimal fulfillment source; requesting a legally-protected select data file from the optimal fulfillment source via the computer-populated network, the legally-protected select data file being sourced to the client from a select data file library; transmitting the legally-protected select data file from the optimal fulfillment source; and processing the transmitted legally-protected select data file for delivery to the client, which structurally arranged and functionally operated as claimed in claim 10.

Claim 24 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth in this Office action and to include all of the limitations of the base claim and any intervening claims.

With respect to claim 24, the prior art of record, taking alone or in combination fail to disclose or render obvious The routing and synchronization system wherein the

Application/Control Number: 14/099,348                                    Page 9
Art Unit: 2453

consumable, legally-protected media content is sourced to the consumer from the select

content library as governed by pre-defined parameters, the pre-defined parameters

selected from a parameter group comprising price efficiency parameters and data

quality parameters, the price efficiency parameters for governing media playback from a

cost effective content library, the data quality parameters for governing media playback

from a high quality content library, in combination with all of the limitations of the base

claim and any intervening claims.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Tu Nguyen whose telephone number is (571)272-2424.

The examiner can normally be reached on M-W,F  7:30-5:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Krista Zele can be reached on (571) 272-7288.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/099,348                                    Page 10
Art Unit: 2453

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Tu Nguyen/
Primary Examiner, Art Unit 2453
06/13/2016

| *Notice of References Cited* | Application/Control No. 14/099,348 | Applicant(s)/Patent Under Reexamination LEEKLEY ET AL. | |
|---|---|---|---|
| | Examiner Tu Nguyen | Art Unit 2453 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2012/0304233 A1 | 11-2012 | Roberts; Brian F. | H04N21/23113 | 725/82 |
| | B | US- | | | | |
| | C | US- | | | | |
| | D | US- | | | | |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14099348 | LEEKLEY ET AL. |
| | **Examiner** | **Art Unit** |
| | TU NGUYEN | 2453 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| East | 06/13/2016 | TN |
| 709/217-229 | 06/13/2016 | TN |
| H04L 67/1074, 67/1063, 41/5009, 41/5025, 41/5035 | 06/13/2016 | TN |
| G06F 9/5061, 9/541, 8/51, 8/68 | 06/13/2016 | TN |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

Receipt date: 12/06/2013                                                   14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Gregory H. Leekley |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 12113 |

Sheet | 1 | of | 3

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,444,779 | 8-22-1996 | Daniele | |
| | | US- 6,925,469 | 8-2-2005 | Headings et al. | |
| | | US- 7,643,459 | 1-5-2010 | Miller et al. | |
| | | US- 7,664,861 | 2-16-2010 | Guntupalli et al. | |
| | | US- 7,774,010 | 8-10-10 | Kokkonen et al. | |
| | | US- 7,779,123 | 8-17-2010 | Duggan | |
| | | US- 8,090,861 | 1-3-2012 | Miller et al. | |
| | | US- 8,176,325 | 5-8-2012 | Lai et al. | |
| | | US- 8,180,853 | 5-15-2012 | Lee et al. | |
| | | US- 2002/0032019 | 3-14-2002 | Marks et al. | |
| | | US- 2003/0131245 | 7-10-2003 | Linderman | |
| | | US- 2003/0135639 | 7-17-2003 | Marejka et al. | |
| | | US- 2005/0114562 | 5-26-2005 | Barnes et al. | |
| | | US- 2005/0180418 | 8-18-2005 | Andersen et al. | |
| | | US- 2006/0107036 | 5-18-2006 | Randle et al. | |
| | | US- 2006/0133428 | 6-22-2006 | Guthrie et al. | |
| | | US- 2007/0168409 | 7-19-2007 | Cheung | |
| | | US- 2007/0273133 | 10-11-2007 | Woods et al. | |
| | | US- 2007/0256073 | 11-1-2007 | Troung et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 2561, /Bmhybxesjb-IV88/33424 2561. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

Receipt date: 12/06/2013                                                                              14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | |
| | Filing Date | |
| | First Named Inventor | Gregory H. Leekley |
| | Art Unit | |
| | Examiner Name | |
| Sheet | 2 | of | 5 | Attorney Docket Number | 02113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials[1] | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2007/0016688 | 1-18-2007 | Hester et al. | |
| | | US- 2007/0038574 | 2-15-2007 | Fanning et al. | |
| | | US- 2008/0016205 | 1-17-2008 | Svendsen | |
| | | US- 2008/0071561 | 3-20-2008 | Holcombe | |
| | | US- 2008/0178094 | 7-24-2008 | Ross | |
| | | US- 2008/0089299 | 4-17-2008 | Lindsley et al. | |
| | | US- 2008/0189255 | 8-7-2008 | Zatloukal et al. | |
| | | US- 2008/0256255 | 10-16-2008 | Mordovskoi et al. | |
| | | US- 2008/0294788 | 11-27-2008 | Wu et al. | |
| | | US- 2009/0037960 | 2-5-2009 | Melby | |
| | | US- 2009/0055471 | 2-26-2009 | Kozat et al. | |
| | | US- 2009/0172157 | 7-2-2009 | Zhang | |
| | | US- 2009/0210549 | 8-20-2009 | Hudson et al. | |
| | | US- 2009/0265022 | 10-22-2009 | Kirovski et al. | |
| | | US- 2009/0305694 | 12-10-2009 | Zheng et al. | |
| | | US- 2009/0320075 | 12-24-2009 | Marko | |
| | | US- 2009/0327481 | 12-31-2009 | Rickard et al. | |
| | | US- 2010/0106799 | 4-29-2010 | Calabrese | |
| | | US- 2010/0138552 | 6-3-2010 | OH. et. al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials[1] | Cite No.[1] | Foreign Patent Document — Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

Receipt date: 12/06/2013                                                    14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | |
| | Filing Date | |
| | First Named Inventor | Gregory H. Leekley |
| | Art Unit | |
| | Examiner Name | |
| Sheet 3 of 5 | Attorney Docket Number | 12113 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2010/0142557 | 6-10-2010 | Priddle et al. | |
| | | US- 2010/0162126 | 6-24-2010 | Donaldson et al. | |
| | | US- 2010/0169493 | 7-1-2010 | Yamakawa et. al. | |
| | | US- 2010/0169506 | 7-1-2010 | Krzanowski et al. | |
| | | US- 2010/0202450 | 8-12-2010 | Ansari et al. | |
| | | US- 2010/0250704 | 9-30-2010 | Kittel | |
| | | US- 2010/0205319 | 8-12-2010 | Beers et al. | |
| | | US- 2010/0268361 | 10-21-2010 | Mantel et al. | |
| | | US- 2010/0250737 | 9-30-2010 | Bremler-Barr et al. | |
| | | US- 2010/0306257 | 12-2-2010 | Levy | |
| | | US- 2010/0223648 | 9-2-2010 | Tian | |
| | | US- 2010/0274848 | 10-28-2010 | Altamaier et al. | |
| | | US- 2010/0332568 | 12-30-2010 | Morrison et al. | |
| | | US- 2011/0015968 | 1-20-2011 | Carlson | |
| | | US- 2011/0029649 | 2-3-2011 | Tian et al. | |
| | | US- 2011/0022652 | 1-27-2011 | Lai et al | |
| | | US- 2011/0035031 | 2-10-2011 | Faenger et al. | |
| | | US- 2011/0040878 | 2-17-2011 | Luzzatti et al. | |
| | | US- 2011/0072475 | 3-24-2011 | McKiel, Jr. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEPE 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

Receipt date: 12/06/2013                                                                14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
(Use as many sheets as necessary)

Sheet | 4 | of | 5

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Gregory H. Leekley |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 12113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2011/0099096 | 4-28-2011 | Shanley et al. | |
| | | US- 2011/0093607 | 4-21-2011 | Wang et al. | |
| | | US- 2011/0106673 | 5-5-2011 | Shanley et al. | |
| | | US- 2011/0167115 | 7-7-2011 | Gilbert et al. | |
| | | US- 2011/0179328 | 7-21-2011 | Souza et al. | |
| | | US- 2011/0179184 | 7-21-2011 | Breau et al. | |
| | | US- 2011/0119165 | 5-19-2011 | Zee | |
| | | US- 2011/0225417 | 9-15-2011 | Maharajh et al. | |
| | | US- 2011/0279635 | 11-17-2011 | Periyannan et al. | |
| | | US- 2011/0288970 | 11-24-2011 | Kidron et al. | |
| | | US- 2011/0302303 | 12-8-2011 | Dunkeld et al. | |
| | | US- 2012/0030367 | 2-2-2012 | Lei et al. | |
| | | US- 2012/0054146 | 3-1-2012 | Gupta et al. | |
| | | US- 2012/0072610 | 3-22-2012 | Svendsen | |
| | | US- 2012/0072852 | 3-22-2012 | Svendsen et al. | |
| | | US- 2012/0072932 | 3-22-2012 | Atwater et al. | |
| | | US- 2012/0072948 | 3-22-2012 | Yang et al. | |
| | | US- 2012/0102116 | 4-26-2012 | Shi et al. | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³ Number⁴ Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

Receipt date: 12/06/2013 14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | | **Complete if Known** |
|---|---|---|
| Substitute for form 1449/PTO | Application Number | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Filing Date | |
| | First Named Inventor | Gregory H. Leekley |
| | Art Unit | |
| | Examiner Name | |
| Sheet | 5 | of | 5 | Attorney Docket Number | 12113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2012/0116937 | 5-10-2012 | Van Biljon et al. | |
| | | US- 2012/0117605 | 5-10-2012 | Miao et al. | |
| | | US- 2012/0124178 | 5-17-2012 | Sparks | |
| | | US- 2012/0124211 | 5-17-2012 | Kampas et al. | |
| | | US- 2012/0124678 | 5-17-2012 | Shintani et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³ Number⁴ Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

Receipt date: 02/09/2016

14099348 - GAU: 2453

Doc code: IDS

PTO/SB/08a (05-18)

Doc description: Information Disclosure Statement (IDS) Filed

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

|  |  |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | **Application Number** 14099348 |
|  | **Filing Date** 2013-12-06 |
|  | **First Named Inventor** Leekley et al. |
|  | **Art Unit** 2453 |
|  | **Examiner Name** Tu T. Nguyen |
|  | **Attorney Docket Number** 12113 |

| U.S.PATENTS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|  | 1 |  |  |  |  |  |

If you wish to add additional U.S. Patent citation information please click the Add button. | Add

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|  | 1 |  |  |  |  |  |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add

| FOREIGN PATENT DOCUMENTS | | | | | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|  | 1 |  |  |  |  |  |  |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add

| NON-PATENT LITERATURE DOCUMENTS | | | Remove |
|---|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

EFS Web 2.1.17

Receipt date: 02/09/2016

| | | | |
|---|---|---|---|
| | | Application Number | 14099348 |
| | | | 14099348 - GAU: 2453 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Filing Date | 2013-12-06 |
| First Named Inventor | Leekley et al. |
| Art Unit | 2453 |
| Examiner Name | Tu T. Nguyen |
| Attorney Docket Number | 12113 |

| | | |
|---|---|---|
| | 1 | An explanatory video demonstration of the subject invention is available at the following address. This video demonstration is otherwise unlisted/unsearchable at www.youtube.com.<br><br>Author: Gregory H. Leekley (co-Applicant)      NO DATE<br>Title: Vertigo Patent Video |
| | 2 | |

If you wish to add additional non-patent literature document citation information please click the Add button   **Add**

**EXAMINER SIGNATURE**

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

Receipt date: 02/09/2016

| | | |
|---|---|---|
| Application Number | 14099348 | 14099348 - GAU: 2453 |
| Filing Date | 2013-12-06 | |
| First Named Inventor | Leekley et al. | |
| Art Unit | 2453 | |
| Examiner Name | Tu T. Nguyen | |
| Attorney Docket Number | 12113 | |

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☒ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☒ See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Christopher J. Scott/ | Date (YYYY-MM-DD) | 2016-02-09 |
|---|---|---|---|
| Name/Print | Christopher J. Scott | Registration Number | 48647 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

Receipt date: 02/09/2016                                                                    14099348 - GAU: 2453

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

EFS Web 2.1.17

Receipt date: 07/23/2015                                                    14099348 - GAU: 2453

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 14099348 |
| | Filing Date | 12-06-2013 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| | Examiner Name | Margishi V. Desai |
| Sheet: 1 of 1 | Attorney Docket Number | 12113 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2004/0031038 | 02-12-2004 | Hugly et al. | |
| | | US- 2006/0075225 | 04-06-2006 | Flynn et al. | |
| | | US- 2012/0239647 | 09-20-2012 | Savenok et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /Tu Nguyen/ | Date Considered | 06/13/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /T.N./

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 238 | media with (broadcast$5 or route or routing) with (optimal or optimiz$6) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L2 | 6392 | ((source or library) near4 (data or media or file)) with (legal$3 or authoriz$5) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L3 | 7 | L1 and L2 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L4 | 57707 | (media or music or video) with (broadcast$5 or route or routing) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L5 | 1379 | (source or library) with ((media or music or video) near5 (legal$3 or copyright or protected)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L6 | 7587 | (optimal or optimiz$6 or best) with (route or routing) with (user or consumer or consumable) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L7 | 0 | L4 and L5 and L6 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L8 | 71436 | (optimal or optimiz$6 or best) with (route or routing) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L9 | 2 | L4 and L5 and L8 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; | ADJ | ON | 2016/06/13 10:51 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |
| L10 | 63714 | plurality near7 ((source or library) near5 (data or media or file or video)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L11 | 1274 | L8 and L10 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L12 | 49 | L11 and L4 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L13 | 223001 | (data or media or file or video) with (legal$3 or copyright or protected) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L14 | 12 | L12 and L13 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L15 | 2542 | (select$5 or pickling or pick or choose or choosing or chosen) with (optimal or optimiz$6 or best) with ((source or library) near4 (data or media or file)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L16 | 98 | L15 and L13 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L17 | 89 | (select$5 or pickling or pick or choose or choosing or chosen) with (optimal or optimiz$6 or best) with (plurality near7 ((source or library) near4 (data or media or file))) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L18 | 88969 | (local and (internet or network or ouside)) near4 (source or library or storage) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 10:51 |
| L19 | 1 | L17 and L18 and L13 and @ad<="20120712" | US-PGPUB; USPAT; USOCR; | ADJ | ON | 2016/06/13 10:51 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |
| L24 | 144024 | (709/217-229).CCLS. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2016/06/13 11:01 |
| L25 | 10282 | H04L67/1074.cpc. or H04L67/1063.cpc. or H04L41/5009.cpc. or H04L41/5025.cpc. or H04L41/5035.cpc. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 11:02 |
| L26 | 11095 | G06F9/5061.cpc. or G06F9/541.cpc. or G06F8/51.cpc. or G06F8/68.cpc. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 11:03 |
| L27 | 162206 | 24 or 25 or 26 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 11:03 |
| L28 | 9 | 27 and 16 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | ADJ | ON | 2016/06/13 11:04 |

**6/13/2016 11:06:03 AM**
**C:\Users\tnguyen24\Documents\EAST\Workspaces\14099348.wsp**

Application No.: 14/099,348
Status Inquiry Paper dated 15 April 2016
Reply to Office Communication dated 24 December 2013

**CERTIFICATE OF EFS WEB SUBMISSION**

I hereby certify that, on the date shown below, this correspondence is being transmitted to the United States Patent and Trademark Office (USPTO), via the EFS-WEB online portal of the USPTO

Date: 15 April 2016   Signature: _Christopher J Scott_   Signed By: Christopher J. Scott

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Leekley et al. | ) |
| | | ) |
| Serial No.: | 14/099,348 | ) Art Unit:   2453 |
| | | ) |
| Filed: | 06 December 2013 | ) Examiner:  Tu T. Nguyen |
| | | ) |
| For: | SMART ROUTING SYSTEM, | ) |
| | METHOD, AND MANAGER | ) |
| | | ) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### STATUS INQUIRY

Dear Honorable Commissioner:

        More than twenty-eight (28) months have now passed since the subject application

was filed in the United States Patent and Trademark Office.  Off the record inquiries have

been made in an attempt to ascertain the status of this application, including voicemail and

email inquiries directed to the US Patent Examiner Tu T. Nguyen.  At this writing,

Applicant(s) are unadvised as to the status of this application and/or when an action on the

merits might be expected.

Application No.: 14/099,348
Status Inquiry Paper dated 15 April 2016
Reply to Office Communication dated 24 December 2013

Applicant(s) are facing a National Stage Entry deadline in corresponding International

Patent Application No. PCT/US2014/069067 and are hopeful that an action on the merits in

the subject application can be obtained before this deadline.  It would be helpful to

Applicant(s) if the Honorable Commissioner could please provide the undersigned with a

status update of the subject application and/or when Applicant(s) may expect to receive an

initial action on the merits.

Respectfully submitted,
Attorney for Applicants

Christopher J. Scott
Registration 48,647

724 South Street / PO Box 1046
West Dundee, Illinois  60118
630.818.0946 telephone
847.836.7096 facsimile

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 25510265 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 15-APR-2016 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 17:32:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for status of Application | StatusInquiry.pdf | 649345 617198d1c8612d1880f93e5b920488be7aa0ade3 | no | 2 |

| **Warnings:** |
|---|
| **Information:** |

Total Files Size (in bytes):                                                                    649345

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Apr 12 16 09:41a      Christopher J. Scott      8478367096      p.2

RECEIVED
CENTRAL FAX CENTER

**APR 1 2 2016**

Application No.: 14/099,348
Status Inquiry Paper dated 12 April 2016
Reply to Office Communication dated 24 December 2013

---

**CERTIFICATE OF FACSIMILE TRANSMISSION**

I hereby certify that, on the date shown below, this correspondence is being transmitted to the United States Patent and Trademark Office (USPTO), via facsimile number: 1.571.273.8300

Date: 12 April 2016   Signature: _Christopher J. Scott_   Signed By: Christopher J. Scott

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Leekley et al.                                )
                                                              )
Serial No.:   14/099,348                              ) Art Unit:  2453
                                                              )
Filed:        06 December 2013                     ) Examiner:  Tu T. Nguyen
                                                              )
For:          SMART ROUTING SYSTEM,        )
              METHOD, AND MANAGER            )
                                                              )

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### STATUS INQUIRY

Dear Honorable Commissioner:

More than twenty-eight (28) months have now passed since the subject application was filed in the United States Patent and Trademark Office.  Off the record inquiries have been made in an attempt to ascertain the status of this application, including voicemail and email inquiries directed to the US Patent Examiner Tu T. Nguyen.  At this writing, Applicant(s) are unadvised as to the status of this application and/or when an action on the merits might be expected.

1

Application No.: 14/099,348
Status Inquiry Paper dated 12 April 2016
Reply to Office Communication dated 24 December 2013


Applicant(s) are facing a National Stage Entry deadline in corresponding International

Patent Application No. PCT/US2014/069067 and are hopeful that an action on the merits in

the subject application can be obtained before this deadline. It would be helpful to

Applicant(s) if the Honorable Commissioner could please provide the undersigned with a

status update of the subject application and/or when Applicant(s) may expect to receive an

initial action on the merits.


                                        Respectfully submitted,
                                        Attorney for Applicants


724 South Street / PO Box 1046          _____
West Dundee, Illinois 60118             Christopher J. Scott
630.818.0946 telephone                  Registration 48,647
847.836.7096 facsimile


                                    2

RECEIVED
CENTRAL FAX CENTER

Apr 12 16 09:41a        Christopher J. Scott                  8478367096                    p.1

APR 12 2016

Doc Code: TRAN.LET
Document Description: Transmittal Letter

PTO/SB/21 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL FORM | Application Number | 14/099,348 |
|---|---|---|
| | Filing Date | 12/06/2013 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| (to be used for all correspondence after initial filing) | Examiner Name | Tu T. Nguyen |
| Total Number of Pages in This Submission    3 | Attorney Docket Number | 12113 |

## ENCLOSURES  (Check all that apply)

| | | |
|---|---|---|
| ☐ Fee Transmittal Form | ☐ Drawing(s) | ☐ After Allowance Communication to TC |
| ☐ Fee Attached | ☐ Licensing-related Papers | ☐ Appeal Communication to Board of Appeals and Interferences |
| ☐ Amendment/Reply | ☐ Petition | ☐ Appeal Communication to TC (Appeal Notice, Brief, Reply Brief) |
| ☐ After Final | ☐ Petition to Convert to a Provisional Application | ☐ Proprietary Information |
| ☐ Affidavits/declaration(s) | ☐ Power of Attorney, Revocation Change of Correspondence Address | ☑ Status Letter  (2p) |
| ☐ Extension of Time Request | ☐ Terminal Disclaimer | ☐ Other Enclosure(s) (please identify below): |
| ☐ Express Abandonment Request | ☐ Request for Refund | |
| ☐ Information Disclosure Statement | ☐ CD, Number of CD(s) _____ | |
| ☐ Certified Copy of Priority Document(s) | ☐ Landscape Table on CD | |
| ☐ Reply to Missing Parts/ Incomplete Application | Remarks | |
| ☐ Reply to Missing Parts under 37 CFR 1.52 or 1.53 | Facsimile No. 1.571.273.8300 | |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT

| Firm Name | Law Offices of Christopher J. Scott, P.C. | |
|---|---|---|
| Signature | Christopher J Scott | |
| Printed name | Christopher J. Scott | |
| Date | 12 April 2016 | Reg. No.   48,647 |

## CERTIFICATE OF TRANSMISSION/MAILING

I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date shown below:

| Signature | Christopher J Scott | | |
|---|---|---|---|
| Typed or printed name | Christopher J. Scott | Date | 12 April 2016 |

This collection of information is required by 37 CFR 1.5. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| Application Number | 14099348 |
|---|---|
| Filing Date | 2013-12-06 |
| First Named Inventor | Leekley et al. |
| Art Unit | 2453 |
| Examiner Name | Tu T. Nguyen |
| Attorney Docket Number | 12113 |

| | | | | U.S.PATENTS | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button. | Add

| | | | | U.S.PATENT APPLICATION PUBLICATIONS | | Remove |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add

| | | | | FOREIGN PATENT DOCUMENTS | | | Remove |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| | 1 | | | | | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add

| | | NON-PATENT LITERATURE DOCUMENTS | | Remove |
|---|---|---|---|---|
| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | | T[5] |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 14099348 |
|---|---|---|
| | Filing Date | 2013-12-06 |
| | First Named Inventor | Leekley et al. |
| | Art Unit | 2453 |
| | Examiner Name | Tu T. Nguyen |
| | Attorney Docket Number | 12113 |

| | 1 | An explanatory video demonstration of the subject invention is available at the following address. This video demonstration is otherwise unlisted/unsearchable at www.youtube.com.<br><br>Author: Gregory H. Leekley (co-Applicant)<br>Title: Vertigo Patent Video | ⊞ |
|---|---|---|---|
| | 2 | | |

If you wish to add additional non-patent literature document citation information please click the Add button  **Add**

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

---

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| | |
|---|---|
| Application Number | 14099348 |
| Filing Date | 2013-12-06 |
| First Named Inventor | Leekley et al. |
| Art Unit | 2453 |
| Examiner Name | Tu T. Nguyen |
| Attorney Docket Number | 12113 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☒ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☒ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Christopher J. Scott/ | Date (YYYY-MM-DD) | 2016-02-09 |
|---|---|---|---|
| Name/Print | Christopher J. Scott | Registration Number | 48647 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24866966 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 09-FEB-2016 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 15:36:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | SuppIDS.pdf | 1050323<br>2b893e9d81c0ae01b91546d5f2246eb0940 0fade | no | 4 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

A U.S. Patent Number Citation or a U.S. Publication Number Citation is required in the Information Disclosure Statement (IDS) form for autoloading of data into USPTO systems. You may remove the form to add the required data in order to correct the Informational Message if you are citing U.S. References. If you chose not to include U.S. References, the image of the form will be processed and be made available within the Image File Wrapper (IFW) system. However, no data will be extracted from this form. Any additional data such as Foreign Patent Documents or Non Patent Literature will be manually reviewed and keyed into USPTO systems.

| Total Files Size (in bytes): | 1050323 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

**CERTIFICATE OF EFS WEB TRANSMISSION**

I hereby certify that, on the date shown below, this correspondence is being transmitted to the United States Patent and Trademark Office
(USPTO), via the EFS WEB online portal of the USPTO

Date: 25 January 2016    Signature: _____ /Christopher J. Scott/ _____    Signed By: Christopher J. Scott

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Leekley et al. | ) |
| | | ) |
| Serial No.: | 14/099,348 | ) Art Unit:  2453 |
| | | ) |
| Filed: | 06 December 2013 | ) Examiner:  Tu T. Nguyen |
| | | ) |
| For: | Smart Routing System, | ) |
| | Method, and Manager* | ) |
| | *(as amended hereinafter) | ) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## SUPPLEMENTAL PRELIMINARY AMENDMENT

Dear Honorable Commissioner:

This amendment is being submitted at a point in time before action on the merits has started in the subject application.  The claim amendments being presented attempt to more succinctly and precisely define the subject matter Applicants regard as their invention in view of the International Preliminary Report on Patentability dated 11 December 2015 issued in corresponding and related International Patent Application No. PCT/US2014/069067.  This Supplemental Preliminary Amendment is intended to replace and/or supplement the Preliminary Amendment filed in the USPTO on 23 July 2015.

**AMENDMENTS TO THE TITLE** begin on Page No. 2 of 34 of this paper.

**AMENDMENTS TO THE SPECIFICATION** begin on Page N. 3 of 34 of this paper.

**AMENDMENTS TO THE CLAIMS** begin on Page No. 3 of 34 of this paper.

**REMARKS** begin on Page No. 14 of 34 of this paper.

**EXHIBIT A IN SUPPORT OF THE REMARKS** is found on Page No. 34 of 34 of this paper.

1

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

I̲N THE T̲ITLE:

Please amend the title to read, as follows:

"~~Smart~~ Routing <u>and Synchronization</u> System, Method, and Manager"

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

I̲N T̲HE S̲PECIFICATION:

On Page Nos. 1 – 2, from Line No. 17 (Page No. 1) through Line No. 2 (Page No. 2), please amend the paragraph there appearing to read, as follows:

"This U.S. ~~Provisional~~ Patent Application claims the benefit of U̲.S̲. P̲rovisional P̲atent A̲pplication S̲er. N̲o. 6̲1̲/̲7̲3̲4̲,̲7̲2̲1̲ f̲iled i̲n t̲he U̲nited S̲tates P̲atent a̲nd T̲rademark O̲ffice o̲n 0̲7 D̲ecember 2̲0̲1̲2̲,̲ w̲hich p̲rovisional p̲atent a̲pplication c̲laimed t̲he b̲enefit o̲f ~~(1) pending~~ U.S. Patent Application S̲er. No. 13/065,254, filed in the United States Patent and Trademark office on 17 M̲ar. ~~March~~ 2011,̲ i̲ssued a̲s U̲.S̲. P̲atent N̲o. 8̲,̲5̲8̲9̲,̲1̲7̲1̲ o̲n 1̲9 N̲ov. 2̲0̲1̲3̲; ~~(2) pending~~ U.S. Patent Application S̲er. No. 13/134,044, filed in the United States Patent and Trademark Office on 26 May 2011,̲ i̲ssued a̲s U̲.S̲. P̲atent N̲o. 8̲,̲4̲7̲8̲,̲7̲1̲9̲ o̲n 2̲ J̲uly 2̲0̲1̲3̲; ~~(3) pending~~ U.S. Patent Application S̲er. No. 13/199,474, filed in the United States Patent and Trademark Office on ~~30 August 2011~~ 3̲0 A̲ug. 2̲0̲1̲1̲, i̲ssued a̲s U̲.S̲. P̲atent N̲o. 8̲,̲6̲8̲8̲,̲6̲3̲1̲ o̲n 1̲ A̲pril 2̲0̲1̲4̲; and ~~(4) pending~~ International Patent Application No. PCT/US2012/000060, filed in the United States Patent and Trademark Office as International Receiving Office on ~~06 February 2012~~ 6̲ F̲eb. 2̲0̲1̲2̲, the specifications of which are hereby collectively incorporated herein by ~~this~~ reference thereto s̲o f̲ar a̲s a̲llowed."

3

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

I<small>N THE</small> C<small>LAIMS</small>:

This listing of claims will replace all prior versions, and listings, of claims in the application:

Listing of Claims:

1.  (currently amended)  A ~~smart~~ routing <u>and synchronization</u> system operable <u>with one or more data sources</u> ~~within a peer-to-peer content delivery network, the peer-to-peer content delivery network~~ for delivering ~~select~~ <u>selectively synchronized</u> data files to a user <u>in real time</u>, the ~~smart~~ routing <u>and synchronization</u> system comprising:

    a client cooperable with ~~smart~~ routing <u>synchronization</u> means, a gateway server, and a Resource Name Server (RNS) together in communication with a computer-populated network, the RNS for (1) caching data resource locations within the computer-populated network and (2) resolving resource requests with optimal data resource locations within the computer- populated network, the gateway server for (1) requesting and receiving optimal data resource locations via the RNS, (2) requesting and receiving data files from the computer-populated network via the optimal data resource locations, and (3) processing received data files for data file delivery to the client, the ~~smart~~ routing <u>synchronization</u> means being operable to respond to interactive and non-interactive requests ~~made by the client~~ by <u>synchronizing and</u> routing <u>synchronized,</u> consumable, legally-protected data from a select optimal data resource location <u>to the client for consumption</u>, the select optimal data resource location being selected from a <u>routing instruction fulfillment source as prompted by a routing instruction received from a routing instruction generation source, the routing</u>

4

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

instruction fulfillment and generation sources each being affiliated with a legal access

point associated with a data content library, ~~group comprising at least two different~~

~~legal access points, said selection being based upon user-defined parameters,~~ the

synchronized, consumable, legally-protected data being sourced to the consumer from

a select data library.

2.  (currently amended)  The ~~smart~~ routing and synchronization system of claim 1

wherein the routing instruction fulfillment source is affiliated with at least two

fulfillment-based, legal access points ~~comprising client authentication means, the~~

~~client authentication means for verifying client authenticity~~.

3.  (currently amended)  The ~~smart~~ routing and synchronization system of claim 1

wherein the synchronized, consumable, legally-protected data is sourced to the

consumer from the select data library as governed by ID-to-hash mapping ~~comprising~~

~~server authentication means, the server authentication means for verifying server~~

~~authenticity~~.

4.  (currently amended)  The ~~smart~~ routing and synchronization system of claim 1

comprising data delivery fragmentation means, the data delivery fragmentation means

for enhancing delivery of non-corrupt data streams.

5.  (currently amended)  The ~~smart~~ routing and synchronization system of claim 1

comprising resource indexing means, the resource indexing means for indexing

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

resource locations and thus for enhancing network efficiency of the ~~smart~~ routing <u>and synchronization</u> system.

6. (currently amended)  The ~~smart~~ routing <u>and synchronization</u> system of claim 5 wherein the resource indexing means comprise file matching means, the file matching means for matching data files independently from data file metadata, the file matching means thus for enhancing network efficiency of the ~~smart~~ routing <u>and synchronization</u> system.

7. (currently amended)  The ~~smart~~ routing <u>and synchronization</u> system of claim 1 comprising (a) industry rights management means (b) compliance monitoring means and/or (c) compliance reporting means, said means for managing, monitoring and/or reporting data file transmission of ~~smart~~ routed, <u>synchronized, consumable,</u> legally-protected data from the select optimal data resource location <u>to owners or owner agents of the ~~smart~~ routed, synchronized, consumable, legally-protected data content</u>.

8. (currently amended)  The ~~smart~~ routing <u>and synchronization</u> system of claim 1 comprising event marker association means, the event marker association means for associating event markers in frame headers of the data files, the event marker association means for enhancing data file transmission.

9. (currently amended)  The ~~smart~~ routing <u>and synchronization</u> system of claim 8 comprising advertisement integration means, the advertisement integration means for

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

integrating advertisement content into data files via said event marker association means.

10. (currently amended)  In a computer-populated environment, an origin-agnostic data delivery method for delivering a legally-protected select data file to an end user from an optimal resource location <u>as selected from one or more data sources</u> <s>based on user-defined parameters</s>, the origin-agnostic data delivery method comprising the steps of:

communicating a client, a <s>peer-to-peer</s> gateway server, and a Resource Name Server (RNS) <s>with</s> <u>within</u> a computer-populated network;

caching data <u>fulfillment sources</u> <s>resource locations</s> within the computer-populated network via the RNS;

requesting <s>at least two</s> <u>a</u> data <u>fulfillment source listing</u> <s>resource locations</s> by the <s>peer-to-peer</s> gateway server from RNS-cached data <u>fulfillment sources via a routing instruction generation source</u> <s>resource locations</s>;

<s>resolving resource requests from the peer-to-peer gateway server with at least two resource locations via the RNS, the at least two resource locations each defining a legal access point;</s>

<s>receiving the at least two resource locations at the peer-to-peer gateway server via the RNS;</s>

querying which of the <s>at least two</s> <u>data fulfillment sources</u> <s>resource locations</s> optimally meets user-defined <s>parameters for</s> data transmission <u>requirements</u>, the query thereby defining an optimal <u>fulfillment source</u> <s>resource location</s>;

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

requesting a legally-protected select data file from the optimal <u>fulfillment</u>

<u>source</u> ~~resource location~~ via the computer-populated network, <u>the legally-protected</u>

<u>select data file being sourced to the client from a select data file library</u>;

transmitting the legally-protected select data file from the optimal <u>fulfillment</u>

<u>source</u> ~~resource location~~; and

processing the transmitted legally-protected select data file for delivery to the

client.

11. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of

verifying client authenticity via client authentication means.

12. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of

verifying server authenticity via server authentication means.

13. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of

fragmenting data files during data file delivery via data delivery fragmentation means,

the data delivery fragmentation means for enhancing delivery of non- corrupt data

streams.

14. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of

indexing recourse locations via resource indexing means, the resource indexing means

for enhancing method efficiency.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

15. (original)  The origin-agnostic data delivery method of claim 14 comprising the step of matching data files independently from data file metadata via file matching means, the file matching means for enhancing method efficiency.

16. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step(s) of providing (a) industry rights management; (b) compliance monitoring; and/or (c) compliance reporting [[for]] of data file transmission of smart routed, legally-protected data from the at least two data resource locations, the industry rights management; (b) compliance monitoring; and/or (c) compliance reporting being due owners or owner agents of the legally-protected select data file.

17. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of associating event markers in frame headers of the data files via event marker association means, the event marker association means for enhancing data file transmission.

18. (original)  The origin-agnostic data delivery method of claim 17 comprising the step of integrating advertisement content into data files via the event marker association means.

19. (original)  The origin-agnostic data delivery method of claim 15 wherein the step of matching data files comprises the steps of:

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

extracting waveform data from a first data file via data extraction means

associated, the extracted waveform data comprising length segment values, the length

segment values being extracted relative to a data extraction baseline and comprising

trough-to-baseline and peak-to-baseline length segment values; deriving summary

statistics from the extracted waveform data, the summary statistics being derived from

the length segment values, the summary statistics comprising trough-to-baseline and

peak-to-baseline length segment statistics;

generating a custom marker based on the derived summary statistics;

associating the custom marker with the first data file thereby constructing a custom

marked data file; and

accessing the custom marker when comparing a second data file to the custom

marked data file for rendering a positive media file match.


20. (currently amended)  A data-routing governance system for governing and reporting

data routing within a content delivery network, the data-routing governance system

comprising a data-routing compliance appliance, the data-routing compliance

appliance being in communication with a ~~smart~~ routing and synchronization system

operable (a) within the content delivery network and (b) with one or more data

sources, the content delivery network comprising a plurality of ~~data~~ routing instruction

fulfillment sources, the ~~data~~ routing instruction fulfillment sources each comprising

data files, the content delivery network for delivering select data files to an end user

from an optimal data fulfillment source ~~location~~ as prompted by a routing instruction

generation source, the optimal data fulfillment source ~~location~~ being selected from the

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

group comprising ~~consisting of~~ the ~~data~~ <u>routing instruction fulfillment</u> sources<u>, the</u>

<u>routing instruction fulfillment and routing instruction generation sources each defining</u>

<u>a legal access point, each legal access point being associated with a data file library,</u>

<u>the select data files being sourced to the end user from a select data file library</u>, the

compliance appliance providing (a) industry rights management (b) compliance

monitoring and/or (c) compliance reporting of data file transmissions of ~~smart~~ routed,

legally-protected data from the optimal data source location <u>to owners or owner agents</u>

<u>of the select data files</u>.


21.  (currently amended)  A ~~smart~~ routing <u>and</u> synchronization system <u>operable with one</u>

<u>or more data sources within a media content playback environment</u> for providing an

optimally sourced <u>media content</u> broadcast to a consumer, the ~~smart~~ routing <u>and</u>

synchronization system comprising ~~smart~~ routing <u>synchronization</u> means for

<u>synchronizing and</u> routing ~~select,~~ consumable, legally-protected <u>media</u> content to the

consumer from an optimal ~~legal access point~~ <u>routing instruction fulfillment source as</u>

<u>prompted by a routing instruction from a routing instruction generation source, the</u>

<u>routing instruction fulfillment and generation sources each being affiliated with a legal</u>

<u>access point associated with a data content library,</u> ~~as determined from at least two~~

~~legal access points based upon pre-defined parameters defined by the consumer,~~ <u>the</u>

<u>consumable, legally-protected media content being sourced to the consumer from a</u>

<u>select content library</u>.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

22. (currently amended)  The ~~smart~~ routing <u>and</u> synchronization system of claim 21 whereby the optimally sourced <u>media content</u> broadcast is characterized by direct source delivery of the ~~select~~ <u>consumable,</u> legally-protected <u>media</u> content to the consumer <u>from a consumer-accessible content library</u> as prompted by <u>the routing instruction generation source</u> ~~a select initiating source~~.

23. (currently amended)  The ~~smart~~ routing <u>and</u> synchronization system of claim 22 wherein the <u>routing instruction generation source is a</u> select initiating source<u>, the select initiating source being</u> [[is]] selected from the group consisting of an <u>incoming</u> indirect source and a <u>consumer-affiliated</u> direct source.

24. (currently amended)  The ~~smart~~ routing <u>and</u> synchronization system of claim 23 wherein <u>the consumable, legally-protected media content is sourced to the consumer from the select content library as governed by pre-defined parameters,</u> the pre-defined parameters [[are]] selected from a parameter group comprising price efficiency parameters and data quality parameters<u>, the price efficiency parameters for governing media playback from a cost effective content library, the data quality parameters for governing media playback from a high quality content library</u>.

25. (currently amended)  The ~~smart~~ routing <u>and</u> synchronization system of claim 23 wherein the <u>consumer-affiliated</u> direct source is peer-connected, the ~~select~~ <u>consumable,</u> legally-protected <u>media</u> content being directly sourced to the consumer

12

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

based upon the <u>consumer-affiliated</u> direct source's legal right to source said ~~select~~

<u>consumable,</u> legally-protected <u>media</u> content.

26. (currently amended)  The ~~smart~~ routing <u>and</u> synchronization system of claim 21 comprising (a) industry rights management means, (b) compliance monitoring means and/or (c) compliance reporting means, said means for managing, monitoring and/or reporting transmission of the ~~select~~ <u>consumable,</u> legally-protected content <u>to owners or owner agents of the consumable, legally-protected media content</u>.

27. (new)  The routing and synchronization system of claim 21 comprising waveform metric-based file-matching means, the waveform metric-based file-matching means for identifying content prompted by the routing instruction generation source and determining the optimal routing instruction fulfillment source by querying the existence of matching files from within the select content library.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

REMARKS

INTERVIEW SUMMARY


On 13 January 2016, Applicants sent to U.S. Patent Examiner Tu T. Nguyen a Draft Supplemental Preliminary Amendment via email: tu.nguyen@uspto.gov. This submission followed on the heels of an earlier telephonic inquiry to Examiner Nguyen as to whether he would entertain/review such a submission for the purpose of conducting a Telephone Hearing or Interview. In view of the Examiner's invitation to submit the proposal, Applicants emailed the submission to the Examiner and a follow-up telephone call was placed to the Examiner to schedule said Telephone Hearing or Interview to discuss the submission. On 20 January 2016, the undersigned telephoned the U.S. Patent Examiner at the scheduled time of 1:00 pm EST and the Telephone Interview was then held.


During this Telephone Interview, the undersigned explained the invention to the Examiner in both technical and layman's terms so that the U.S. Patent Examiner would be provided with a better understanding of the claimed invention from the descriptions of real world scenarios contemplated and conceived by Applicants. The claimed invention was then compared to certain references of prior art and distinguished therefrom, most particularly U.S. Patent Application Publication No. 2013/0198001 authored by Teare et al. The U.S. Patent Examiner agreed that the claimed invention as preliminarily drafted in the submission dated 13 January 2016 did operate to define around the prior art reference(s) of record. In this regard, Claim Nos. 20 and 21 were particularly discussed since those claims are arguably the

broadest and most succinct claims in the application as preliminarily amended.  In other words, the Examiner agreed that the exemplary Claim Nos. 20 and 21 did appear to define around the prior art references known to Applicants.

The Examiner requested that Applicants submit this opening Interview Summary at the top of this REMARKS section so that the Interview Summary would be readily viewable and thereby enhance the quality of the File Wrapper or prosecution history of this Application.  It is believed that the foregoing Interview Summary properly summarizes the series of events leading up to the submission on 13 January 2016 and the Telephone Interview held on 20 January 2016.  Applicants are particularly grateful to the Examiner for his taking the time to review the submission dated 13 January 2016 and entertain these matters during the Telephone Interview on 20 January 2016.  For the most part, the following REMARKS appeared in the original submission dated 13 January 2016, and have been amended slightly to read more properly in view of these opening remarks as requested by the Examiner and in view of certain other refinements made to the Supplemental Preliminary Amendment.

International Patent Application No. PCT/US2014/069067 ('067 Application) claims priority to the subject application and on 11 December 2015, the International Preliminary Examining Authority (IPEA) issued an International Preliminary Report on Patentability (IPRP) in the '067 Application reporting its opinion on patentability.  The IPRP was prepared in response to claim structures then appearing in the '067 Application that mirror the claim structures appearing in the Preliminary Amendment submitted in the subject application on 23 July 2015.  In other words, the claims in the subject application were preliminarily amended

15

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

in the Preliminary Amendment filed in the USPTO on 23 July 2015 to place the then pending

claims in the subject application into a condition that mirrored word-for-word the then

pending claims in the '067 Application.

The IPEA in the IPRP in the '067 Application indicates that all pending 26 claims

have Novelty and Industrial Applicability, but none of the pending 26 claims are said to have

an Inventive Step.  This Supplemental Preliminary Amendment is being submitted in the

subject application in an effort to (a) address the reasoning behind the lack of Inventive Step

opinion(s) set forth in the IPRP in view of the prior art citations and to (b) further refine the

claim structure in the subject application with a view toward placing the same into a more

patentable condition.

Since the claimed content in both the subject application via the Preliminary

Amendment dated 23 July 2015 and the '067 Application were intended to be reflective word-

for-word of one another, and since the 26 claims in the '067 Application are all said to be

lacking in Inventive Step, Applicants are of the opinion that addressing the reasoning set forth

in the '067 Application with the claims in the subject application in view is altogether proper,

if not mandatory.  In the IPRP issued in the '067 Application, Claim Nos. 1 – 3, 5 – 12, 14 –

18, and 20 are said to be lacking in an Inventive Step under PCT Article 33(3) as being

obvious over U.S. Patent Application Publication No. 2004/0031038 authored by Hugly et al.

(hereinafter HUGLY) in view of or as modified by U.S. Patent Application Publication No.

2013/0198001 authored by Teare et al. (hereinafter TEARE).

16

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

Further, Claim Nos. 4 and 13 are said to lack an inventive step under PCT Article 33(3) as being obvious over HUGLY in view of (a) TEARE and (b) U.S. Patent Application Publication No. 2006/0075225 authored by Flynn et al. (hereinafter FLYNN). Claim No. 19 is said to lack an Inventive Step under PCT Article 33(3) as being obvious over HUGLY in view of (a) TEARE and (b) U.S. Patent Application Publication No. 2012/0239647 authored by Savenok et al. (hereinafter SAVENOK). Claim Nos. 21 – 26 are said to be lacking in Inventive Step under PCT Article 33(3) as being obvious over TEARE alone.

It is understood that the TEARE reference is made central to the IPEA's opinion that the 26 claims in both the '067 Application and the Preliminary Amendment dated 23 July 2015 in the subject application are lacking in Inventive Step under PCT Article 33(3) or are obvious under 35 U.S.C. 103 as the case may be. In other words, Applicants anticipate that the 26 claims pending in the subject application as submitted in the Preliminary Amendment dated 23 July 2015 would be found similarly obvious and unpatentable under 35 U.S.C. 103. Applicants note that the U.S. Patent Examiner Tu T. Nguyen is charged with the examination of the subject application and also co-authored the IPRP as the IPEA.

The IPEA states that TEARE discloses a routing synchronization system as depicted in Figure No. 3 and described at Paragraph Nos. 0036 – 0045 of the TEARE disclosure. The so-called routing synchronization system of TEARE is said to provide an optimally sourced broadcast to a consumer comprising routing means for routing select, consumable, legally-protected content to the consumer from an optimal legal access point. The IPEA further indicates that TEARE does <u>not</u> explicitly disclose that the legal access point may be determined

17

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

from at least two legal access points based upon pre-defined parameters defined by the consumer.  The IPEA maintains, however, that consumer ID's and consumer demographic data as described in Paragraph No. 0027 of the TEARE reference could be considered as the claimed two [legal] access points.

As discussed in both (a) the Letter Accompanying the Claims as Amended under Article 34 filed on 03 July 2015 in the '067 Application and (b) the Remarks section of the Preliminary Amendment filed in the USPTO on 23 July 2015 in the subject application, the subject invention basically provides a system for providing either Indirect or Direct source initiation of copyrighted media to be routed and consumed via a second Direct source of the same copyrighted media.  One effect of such routing is to create a synthetic broadcast where the originating source of the media (e.g. an "Indirect Initiating Source") is not actually sent through to the media consumer but rather the consumer's own separate legally compliant "direct" access point and source of the very same copyrighted material is delivered or activated instead.

In the context of TEARE, the analogous select, consumable, legally-protected content would ostensibly be represented by or be the equivalent of the (branded) promotional message content.  The TEARE promotional messages appear to be owned or controlled by the brand or copyright owner or holder or an agent thereof.  When a promotional message is sent to the consumer for consumption (e.g. by viewing and/or listening to the promotional message) via his or her device 280A (when the consumer has "opted in" for such promotional messages by the user-defined parameter), the promotional messages of TEARE are not sourced to the

18

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

consumer from an optimal resource location as selected from at least two legal access points,

but rather are sourced to the consumer from a single source, namely, the cloud facility

provider as at 210.

The cloud facility provider 210 is a singular legal access point and as such has legal

access to the promotional messages housed or stored by or within the system database 250.

The promotional messages presumably have certain authorship and thus are owned by certain

copyright holder(s).  The promotional message content is thus controlled by the copyright

holders under license to cloud facility provider 210.  The consumer will, under normal

circumstances, not own or control the copyrights to the promotional messages (e.g. by having

purchased copies thereof and housed the same within the consumer's own library or content

storage).  Moreover, the consumer identification or consumer ID information for any given

consumer is a part of a larger gathering of consumer demographic information.  It is unclear

how consumer ID information and consumer demographic information can be thought of as

two different legal access points to content (i.e. promotional messages) controlled by the

singular cloud facility provider 210.

The consumer ID information might be thought of as a receiver or destination address

and the consumer demographic information might be thought of as a collection of statistical

data relating to the consumer population and particular groups or addresses within it.  The

promotional messages are not, in any event, sourced from either the consumer ID's or the

consumer demographic information, but rather from the cloud facility provider 210 via the

system database 250 and sent on to the respective consumer devices 280A with consumer

19

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

ID's governing or dictating the delivery stream destination. In other words, the promotional messages are sourced from a content library (i.e. the cloud facility provider 210), the legal access to which is singular and vested in the copyright holder or manager.

In this case, it is unclear from the record how sourced content may be said to originate from consumer identifying or demographic data or information. Stored content for later delivery, whether by digital stream or hand-delivery, must originate from a content source which content source may be thought of as a library. A traditional library, for example, may be defined as a building or room containing collections of books, periodicals, films, and recorded music for people to read, borrow, or reference.

If some suggestion or recommendation or request were put to a reader or consumer to pursue the consumption of a particular book or work, the consumer could conceivably travel to the local public library and pull the book or work from the collection there housed or stored (e.g. upon shelves or stacks). Alternatively, if the very same consumer retained a pre-purchased or prepaid, and thus legally owned, personal copy of the book or work in question in his or her own personal library, the consumer could pull the pre-purchased book or work from the consumer's own library as a means to obviate the time and expense of traveling to the public library. This scenario might be illustratively akin to the price efficiency parameter(s) according to the present invention, which price efficiency parameter(s) govern media playback from a most cost effective content library.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

The data quality parameters according to the present invention may be said to govern media playback from a highest media quality content library.  To illustrate this scenario with a traditional library analogy, if the consumer had on hand in his or her library a soft cover version of the book (or a dated/deteriorated copy of the work) in question, and the public library alternatively offered a hard cover version of the book (or a remastered, higher quality copy of the work) in question, and the consumer's pre-defined (data quality) parameters controlled the consumer's consumption of the preferable hard cover version of the book (perhaps having an introductory commentary the soft cover version did not have), the consumer's pre-defined parameter would govern that the consumer then go to the public library as a source for that particular content.

Notably, the consumer may consume the content only by receiving a copy thereof from the physical site of storage or legal access point, and not from the library address information itself or the library demographic information generally.  Moreover, the physical library address in this scenario is a source address not a destination address.  The consumer ID information of TEARE said to represent a possible legal access point is nothing of the sort. The consumer ID information is a destination address for the promotional message content and not a source address for the promotional message content.  Further, the consumer demographic information of TEARE is statistical in nature and could not be said to source the promotional message content.  There does appear to be some IPEA misunderstanding of the defined invention.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

If one were to suppose a content stream provider such as a digital radio provider, on the one hand, and a library-owning consumer, on the other hand, it should be readily apparent that the content stream provider and the consumer each have different legal access points to the very same content that is to be streamed or shared. The content stream provider, as a commercially-competitive entity, has licensing or royalty responsibilities to the copyright holder while the consumer, having prepaid or pre-purchased personal library access, has no further licensing or royalty responsibility to the copyright holder in view of having pre-purchased the content under well-established Fair Use doctrine(s). The consumer may thus have a legal right to a direct request for this content from the consumer's own source or library (i.e. a first legal access point) while the commercially-competitive provider may stream content from a different source or library (i.e. a second legal access point).

Direct access to the content from the consumer's own library is thus believed more efficient and cost conscious than obtaining access to the very same content from the commercially-competitive stream provider. If the content is thus sourced from a consumer's own library, this content delivery will or should have an impact on the compliance reporting by the content stream provider since the content stream provider did not actually provide the playback of the content following content suggestions or requests. The compliance appliance according to the present invention accurately tracks and reports the resulting revenue generation for copyright holders and for this reason is believed integral to successful implementation of the subject invention.

22

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

In other words, the industry rights management means, compliance monitoring means and/or compliance reporting means of the compliance appliance (See, for example, Claim No. 7) operates to manage, monitor and/or report data file transmission of routed, legally-protected data from the select optimal data resource location.  This is important given that content playback may be sourced from either (a) previously purchased content (i.e. from a consumer's own personal library (i.e. a first legal access point)) in which case there would be no royalty reporting necessary or (b) a commercial content stream provider, for example, (i.e. a second legal access point) which case would necessitate royalty reporting.  The compliance appliance is thus primarily a royalty reporting means, not a security enhancement feature as the IPEA seems to otherwise indicate in its rejection of Claim No. 7.

The U.S. Patent Examiner will please note that the claim language identifies one or more sources.  A single source does not by itself mean that all users or clients within that source or eco-system operate with the same legal access.  For example, suppose a premium Spotify user is sharing live with a Spotify free account user.  In this case the Spotify Premium user's device would act as the routing instruction generating source, and the device of the free account user would operate as the routing instruction fulfillment source, even though both devices are operating within the same music ecosystem, both users do not have the same legal access.  In this scenario, the fulfilling source would have to verify that the device of free account user would be able to legally fulfill any playback request sent by the routing instruction generating source.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

As another example of a plural legal access point-single source scenario, the reader may envision a scenario in which two users are engaged in a music sharing episode, including a premium user of Spotify and another user of Spotify listening under US statutory licensing guidelines.  In this case, the routing fulfillment source would require verification that the instructions from the instruction generating source do not force the fulfillment client to violate US statutory licensing.  If the routing instruction generating source were to send in a request to play 3 songs from the same album, and the fulfilling client may be able to fulfill only 2 of the 3 requests, and the third of three requests would require routing from an additional legal access point.  Each user in this scenario is thus operable within the system via a unique legal access point.

Neither HUGLY as modified by TEARE nor TEARE alone teach, fairly suggest, or provide this type of routing synchronization system for providing optimally sourced content to a consumer having certain routing means for routing select legally-protected content to the consumer who has alternative and preferable source(s) therefor.  The routing means according to the present invention thereby provides delivery of optimally sourced content ideally and patentably characterized by optimal source delivery of the select legally-protected content to the individual consumers as prompted by either indirect requests, or direct requests.

The source routing according to the present invention may thus be preferably characterized by certain scenario types including local server-based delivery of either indirectly or directly requested streams; peer-connected server-based delivery of either indirectly or directly requested streams; or legal access point-based delivery of either

24

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

indirectly or directly requested streams, which delivery bases are optimally selected based on

pre-defined parameters set or defined by the user, such as price efficiency or audio/video

quality.

If the client device 280A of TEARE were to store or house its own promotional

message content library, and if a client-dictated parameter were to govern whether the

sharable or deliverable promotional message content was to be consumed directly from either

the content library of the client device 280A (a singular, first legal access point) or consumed

at the client device 280A (located with consumer ID destination information) via the cloud

facility provider 210 (a singular, second legal access point) as indirectly initiated thereby, then

the TEARE disclosure might be said to render the subject invention as lacking in Inventive

Step.  Such is NOT the case, however.  TEARE does not show, teach or describe a

synchronization system that delivers content from a user-dictated or user-governed or user-

preferred legal access point as selected from at least the two alternative legal access points

here noted or described.

Other secondary considerations with regard to systemic differences between the prior

art cited in the IPRP versus Applicants system warrant mention as set forth briefly hereunder.

SUPPLIED ROUTING PARAMETERS (TEARE)

VS

DERIVED ROUTING PARAMETERS (APPLICANTS)

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

TEARE shows, teaches or describes what might be referred to as the Provision or

Supply of Routing Parameters whereas Applicants' invention centers on Routing Parameter

Derivation(s).  Supplied routing parameters are parameters that are assigned to the content by

the content provider (the user/system that added content to the system) as described by TEARE

et al. with reference to Figure 3 and at Paragraph No. 0042 (page 4), as follows:

> "The campaign management module 230 provides 350 a user interface for a brand
> device 280B that enables the brand to create a promotional campaign.  The brand
> provides one or more promotional messages and campaign parameters.  In one
> embodiment, the campaign parameters include a time frame during which the
> promotional messages should be sent, a geographic region in which the promotional
> messages should be sent, a spending cap, and (optionally) consumer targeting criteria,
> such as demographic requirements.  In another embodiment, the brand provides just a
> spending [[bap]] cap and the promotional messages are displayed publicly on
> webpages until the fees due reach the spending cap.  In other embodiments, different
> combinations of campaign parameters are used.  One of skill in the art will recognize
> that many such parameters can be applied without deviating from the spirit and scope
> of this disclosure."

Applicants, in distinction to TEARE, derive routing parameters.  Routing parameters

are derived based on the content and the known content owner (if any).  There is no way for

the content provider to specify routing parameters as these are derived by Applicants'

"Vertigo" branded system and assigned to content after content ownership has been

established.  This is an important distinction to note.  The TEARE system was not designed as

a system for handling routing of licensed works.  Rather, the TEARE system was primarily

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

created for brand advertisement, in which case there is no incentive to pay for the distribution of licensed content.

According to Applicants' system, a routing and compliance engine is created or provided that could possibly create great incentive for those who do not own content to distribute the licensed content freely, examples of which behavior is prevalent (e.g. Pirates Bay, Groove Shark, Napster, etc...).  Applicants' system is based on the premise (as shown in the below diagram) that content owners will only very rarely be content providers.  It is anticipated that more than 95% of the content ingested by the system will be owned by someone other than the content provider.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

**Teare Routing System**



**Vertigo Routing System**



Often content owners have their data spread across multiple content providers (e.g. many people uploading the same song: U2's Beautiful Day).  The Vertigo branded system according to the present invention must map the content from multiple content providers to a single content owner.  Such a market cannot rely on "Supplied Routing Parameters", since millions of content providers may be providing the same content, and the content can only have a single set of routing parameters.  In light of this, Applicants' system does not and cannot rely on supplied routing parameters as in TEARE, and must derive the parameters based on a mapping to the content owner.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

SINGLE SOURCE ROUTING (TEARE) VERSUS 2+ SOURCE ROUTING (APPLICANTS)

When considering the routing system of TEARE versus the system of the present invention, Applicants wish to highlight several key differences therebetween with particular regard to the actual form of routing proposed by the two systems. Firstly, the TEARE system speaks of routing parameters that a single source uses to determine which resource to stream. As shown in the diagram above, the concept of an instruction generating source or client is not mentioned.

The concept of an instruction-generating client is referenced in the original specifications at Page No. 24, beginning at Line No. 14. Building off the originally submitted diagrams in support of these original specifications (See, for example, Figure No. 19) the streaming client (140) may be properly regarded as a routing instruction-generating source or client. In this case, the gateway server (141) may be properly regarded as a routing instruction-fulfillment source or client. The fulfillment client would use the derived parameters provided by the routing synchronization system, along with the routing instructions of the instruction-generating source to synchronize and route and thereby fulfill requests.

In this context, the routing instructions are playback requests from an internet radio provider which are fulfilled according to the derived routing parameters of the system. The system thus contemplates at least one routing instruction-generating source, and at least one routing instruction-fulfilling source, each of which have or are affiliated with different legal

29

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

access points or libraries.  In the example above, the Internet Radio provider has a legal

library, which it uses to generate routing instructions (playback requests), and the gateway

server has its own legal access (users files) which it uses to fulfill routing requests based on

the derived parameter (indexed data) provided by the system.

Moreover, with regard to the content identification of HUGLY, it is noted that the

HUGLY system is not built for accurate audio/media identification.  The HUGLY system is built

on several assumptions that would render the HUGLY system inoperable or useless if applied

to Applicants' system.  Firstly, HUGLY assumes the use of an MD5 message digest algorithm

// SHA-1 secure hash algorithm or implementation.  These hash functions are built upon an

arrangement of bytes resulting in a low degree of mapping.  This type of resource mapping

would make a routing and compliance engine for legal purposes useless since only exact

audio/media files (files bearing the same encoding, at the same compression rate, and

generated off the same Pulse Code Modulation (PCM) data) are delivered.  The PCM output

of an audio/media file must match the master record of a label, or must otherwise be audibly

recognizable as the same recording according to Applicants' system.  The legally protective

compliance engine according to the present invention must therefore utilize a hashing

algorithm that recognizes similar audio output to protect legally owned audio/video

recordings not the low degree mapping functions taught by HUGLY.

Secondly, all such hashing algorithms that provide a legally acceptable level of

matching produce a hash that is significantly larger in size than an MD5 or SHA-1.  These

hashes can often be 25% of the hashed content (for an audio file of 7MB, the hash can be 1.75

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

MB).  Using this as the resource ID for identifying resources becomes excessively difficult since the amount of network traffic generated off request for retrieving the actual resource increases dramatically.  Using the example above, a request for a 7MB resource would be at least 1.75 MB in size, whereas a request for a resource via a song_id mapped to a hash is at most 1KB in size.  The request without hash-to-ID mapping is more than 1,792 times larger. Given that much of such systems must work on mobile networks, requests of such size are extremely prohibitive.  Therefore in order for such a system to work, there must be an ID-to-hash mapping, as described in the subject application, which neither HUGLY nor TEARE mention.


An attempt has been made to preliminarily amend the claim language throughout this application in order to more properly direct attention to and define the centerpiece of the present invention, that being a media/audio file synchronization system operable among a number of (socially) interlinked processing units including a centralized/remote server whereby sharable or deliverable media content (e.g. an audio track) is suggested/recommended to a consumer by a certain source provider having or defining a first legal access point associated with a first unique media content library, but which media content may be more preferably consumed (preferences being pre-controlled or pre-governed by the consumer) via an alternative source having or defining a second legal access point associated with a second unique media content library.


An exemplary implementation scenario is as follows: a music recommendation and streaming service suggests or recommends a particular musical track to a consumer based on

31

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

the consumer's input.  The particular musical track is already in the consumer's pre-purchased

music library or fee-based accessible library, and based on the consumer's preference for

defaulting to playback of musical files from the consumer's own libraries (i.e. first legal

access point(s)) in cases where there is overlap, the system enables playback of the particular

musical track from the user's own libraries (i.e. first legal access point(s)) instead of accepting

the streamed content from the streaming service (i.e. a second legal access point).


The present invention both builds upon and departs from patented subject matter in

US. Patent Nos. 8,478,719; 8,589,171; and 8,688,631 which patents detail and define certain

media file synchronization means.  Whereas previously patented subject matter is basically

based upon core metric matching technology, the present invention (as well as the invention

described in related International Patent Application No. PCT/US2015/027311) basically

provide certain routing and routing-compliance means, which routing and compliance means

may be said to embrace certain aspects of the media file synchronization systems and methods

of the earlier filed patent documents co-owned by Applicants.  Basically, the present

invention provides certain media file synchronization systems and methods for synchronizing

media file playback.


The departure of the routing and routing-compliance means is described as such

because the core inventive concepts do not necessarily rely upon the metric-matching

technology for implementation, although they preferably may.  Further, the present invention

may also be said to provide the basis for providing a local, virtual representation of a remote

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

media file on a local file system as discussed in more detail in International Patent

Application No. PCT/US2015/019099 co-owned by Applicants.


Applicants suppose that the claim language at issue was perhaps originally worded in

a manner that was confusing to the reader or was overly broad-based in view of the apparent

misunderstanding by the IPEA.  As noted, there does appear to be some IPEA

misunderstanding of the defined invention as defined in the '067 Application, perhaps most

notably in connection with use of the term, "advertisement" in HUGLY versus TEARE[1].  In this

last regard, Applicants append to this Supplemental Preliminary Amendment a schematic type

diagram of HUGLY modified by TEARE marked as Exhibit A.


Notably, in a peer-to-peer system characterized by a series of advertising clients (i.e.

clients bearing language-neutral metadata documents for describing the network resources)

responding to a requesting client, response times would be drastically higher as compared to

Applicants' system.  Further, the response times, however delayed, would be unpredictable.

Both the time delays and unpredictability of responses of the HUGLY modified by TEARE

---

[1]

Hugly's use of the term, "advertisement" is detailed in Paragraph No. 0073, as follows: In a peer-to-peer environment implemented with the exemplary peer-to-peer platform as described below, network resources such as peers, peer groups, pipes, and modules such as services may be represented by advertisements.  Advertisements are language-neutral metadata documents for describing the network resources.  Advertisements are used to describe peers, peer groups, pipes, content, modules such as services and other types of network resources.  Advertisement types provided by the peer-to-peer platform may include one or more of, but are not limited to, peer advertisements, peer group advertisements, module class advertisements, module specification advertisements, module implementation advertisements, pipe advertisements, and rendezvous advertisements.  Advertisements may be exchanged as documents in peer-to-peer protocol messages. One or more of the peer-to-peer platform protocols may use advertisements to provide information to entities interested in the peer-to-peer resources represented by the advertisements. Peer-to-peer platform protocols may be used to pass advertisements between peers and/or to access published advertisements.

Teare's use of the term, "advertisement" is akin to the more traditional definition: a form of marketing communication used to promote or sell something, usually a business's product or service.

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

system would render such a system useless for commercial purposes where expected response times are below 1 second and must be consistent.

In an attempt to more precisely, succinctly, and definitely define the subject invention, the claims at issue have been currently amended to more forcefully, succinctly, and precisely define the content Applicants regard as their invention.  In other words, these supplemental preliminary claim amendments are being submitted in an effort to more narrowly highlight the claimed features of the present invention.  The claim amendments have attempted to shift the focus of or more narrowly limit the claimed invention toward certain key aspects of the invention as discussed hereinabove and embraced by these and other co-owned original descriptions as inventive and patentably distinct from the prior art references made of record.

In particular, the reader is directed to Claim Nos. 21 – 27 (one added claim fee being submitted herewith for new Claim No. 27), which claims attempt to most succinctly and precisely define the core aspects of the invention made the subject of the present application. The claim amendments accompanying this letter will replace all prior versions, and listings of claim in this application.  In view of the amendments being presented, it is believed that this patent application is now in better condition for examination.  If, after a review of this Amendment, issues remain which may be resolved by a telephone interview, the U.S. Patent Examiner is cordially invited to call the Applicants' undersigned attorney.

Respectfully submitted,
Attorney for Applicants


        /Christopher J. Scott/
        Christopher J. Scott
        Registration 48,647

724 South Street / P.O. Box 1046
West Dundee, IL  60118
630.818.0946 telephone
847.836.7096 facsimile

34

Application No.: 14/099,348
Supplemental Preliminary Amendment dated 25 January 2016
Reply to Office Communication dated 12 June 2014

EXHIBIT A



## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14099348 |
| **Filing Date:** | 06-Dec-2013 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Filer:** | Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

**Filing Fees for**   **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 1 | 40 | 40 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **40** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24718547 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | SMART ROUTING SYSTEM, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Customer Number:** | 115883 |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 25-JAN-2016 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 19:10:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $40 |
| RAM confirmation Number | 9111 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Preliminary Amendment | SupplementalPreliminaryAmendment.pdf | 451916 <br> b29779162c205233e568d03e90eb7d94f8aae0cde | no | 35 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30414 <br> f20567fb82d5712410fc5b8378df3766cb373f5d | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 482330 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/099,348 | Filing Date<br>12/06/2013 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE   ☒ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | **01/25/2016** | | | | | |
| | Total (37 CFR 1.16(i)) | * 27 | Minus | ** 28 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 4 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LDRC
/ADRIANE WINSTON/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

115883
Law Offices of Christopher J. Scott, P.C.
P.O. Box 1046
West Dundee, IL 60118

**POA ACCEPTANCE LETTER**


*OC000000076492443*

Date Mailed: 07/24/2015

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/15/2015.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/dtdinh/

_____

page 1 of 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

**POWER OF ATTORNEY NOTICE**

*OC000000076492430*

Date Mailed: 07/24/2015

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 07/15/2015.

• The Power of Attorney to you in this application has been revoked by the applicant. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/dtdinh/

---

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

---

**CERTIFICATE OF EFS WEB TRANSMISSION**

I hereby certify that, on the date shown below, this correspondence is being transmitted to the United States Patent and Trademark Office (USPTO), via the EFS WEB online portal of the USPTO

Date: 23 July 2015      Signature: _____ **/Christopher J. Scott/**_____ Signed By: Christopher J. Scott

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant: | Leekley et al. | ) |
| | | ) |
| Serial No.: | 14/099,348 | ) Art Unit:   2453 |
| | | ) |
| Filed: | 06 December 2013 | ) Examiner:  Margishi V. DeSai |
| | | ) |
| For: | Peer-to-Peer Content Delivery Network, Method, and Manager | ) ) |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## PRELIMINARY AMENDMENT

Dear Honorable Commissioner:

This amendment is being submitted at a point in time before action on the merits has started in the subject application.  These preliminary claim amendments are being presented in an attempt to more succinctly and precisely define the subject matter Applicants regards as their invention in view of the International Search Report issued in corresponding and related International Patent Application No. PCT/US2014/069067.

AMENDMENTS TO THE TITLE begin on Page No. 2 of 16 of this paper.

AMENDMENTS TO THE CLAIMS begin on Page No. 3 of 16 of this paper.

REMARKS begin on Page No. 11 of 16 of this paper.

1

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015


I̲N̲ ̲T̲H̲E̲ ̲T̲I̲T̲L̲E̲:̲

Please amend the title to read, as follows:

"~~Peer to Peer Content Delivery Network,~~ S̲m̲a̲r̲t̲ ̲R̲o̲u̲t̲i̲n̲g̲ ̲S̲y̲s̲t̲e̲m̲,̲ Method, and Manager"

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015


I̲N̲ ̲T̲H̲E̲ ̲C̲L̲A̲I̲M̲S̲:

This listing of claims will replace all prior versions, and listings, of claims in the

application:

Listing of Claims:

1.   (currently amended)  A smart routing system operable within a [[A]] peer-to-peer

(P2P) content delivery network, the peer-to-peer content delivery network for

delivering select data files to a user, the smart routing system content delivery network

comprising:

a client cooperable with smart routing means, a [[P2P]] gateway server, and a

Resource Name Server (RNS) together in communication with a computer-populated

network, the RNS for (1) caching data resource locations within the computer-

populated network and (2) resolving resource requests with optimal data resource

locations within the computer- populated network, the gateway server for (1)

requesting and receiving optimal data resource locations via the RNS, (2) requesting

and receiving data files from the computer-populated network via the optimal data

resource locations, and (3) processing received data files for data file delivery to the

client, the smart routing means being operable to respond to interactive and non-

interactive requests made by the client by routing consumable, legally-protected data

from a select optimal data resource location, the select optimal data resource location

being selected from a group comprising at least two different legal access points, said

selection being based upon user-defined parameters.

3

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

2. (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising client authentication means, the client authentication means for verifying client authenticity.

3. (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising server authentication means, the server authentication means for verifying server authenticity.

4. (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising data delivery fragmentation means, the data delivery fragmentation means for enhancing delivery of non-corrupt data streams.

5. (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising resource indexing means, the resource indexing means for indexing resource locations and thus for enhancing network efficiency of the smart routing system ~~P2P content delivery network~~.

6. (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 5 wherein the resource indexing means comprise file matching means, the file matching means for matching data files independently from data file metadata, the file matching means thus for enhancing network efficiency of the smart routing system ~~P2P content delivery network~~.

4

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

7.  (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising (a) industry rights management means (b) compliance monitoring means and/or (c) compliance reporting means, said means for managing, monitoring and/or reporting data file transmission of smart-routed, legally-protected data from the select optimal data resource location.

8.  (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 1 comprising event marker association means, the event marker association means for associating event markers in frame headers of the data files, the event marker association means for enhancing data file transmission.

9.  (currently amended)  The smart routing system ~~P2P content delivery network~~ of claim 8 comprising advertisement integration means, the advertisement integration means for integrating advertisement content into data files via said event marker association means.

10. (currently amended)  In a computer-populated environment, an origin-agnostic data delivery method for ~~optimally~~ delivering a legally-protected select data file ~~files~~ to an end user from an optimal resource location based on user-defined parameters, the origin-agnostic data delivery method comprising the steps of:

    communicating a client, a peer-to-peer [[(P2P)]] gateway server, and a Resource Name Server (RNS) with a computer-populated network;

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

caching data resource locations within the computer-populated network via the

RNS;

requesting <u>at least two</u> ~~optimal~~ data resource locations by the <u>peer-to-peer</u>

[[P2P]] gateway server from RNS-cached data resource locations;

resolving resource requests <u>from the peer-to-peer gateway server</u> with <u>at least</u>

<u>two</u> ~~optimal~~ resource locations via the RNS<u>, the at least two resource locations each</u>

<u>defining a legal access point</u>;

receiving the <u>at least two</u> ~~optimal~~ resource locations at the <u>peer-to-peer</u> [[P2P]]

gateway server via the RNS;

<u>querying which of the at least two resource locations optimally meets user-</u>

<u>defined parameters for data transmission, the query thereby defining an optimal</u>

<u>resource location</u>;

requesting <u>a legally-protected</u> select data <u>file</u> ~~files~~ from the <u>optimal resource</u>

<u>location via</u> the computer-populated network ~~via the received optimal resource~~

~~locations~~;

transmitting the <u>legally-protected select data file from the optimal resource</u>

<u>location</u> ~~requested select data files~~; and

processing <u>the</u> transmitted <u>legally-protected</u> select data <u>file</u> ~~files~~ for ~~select data~~

~~file~~ delivery to the client.

11. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of

verifying client authenticity via client authentication means.

12. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of verifying server authenticity via server authentication means.

13. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of fragmenting data files during data file delivery via data delivery fragmentation means, the data delivery fragmentation means for enhancing delivery of non- corrupt data streams.

14. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of indexing recourse locations via resource indexing means, the resource indexing means for enhancing method efficiency.

15. (original)  The origin-agnostic data delivery method of claim 14 comprising the step of matching data files independently from data file metadata via file matching means, the file matching means for enhancing method efficiency.

16. (currently amended)  The origin-agnostic data delivery method of claim 10 comprising the step(s) of providing (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting for data file transmission of smart-routed, legally-protected data from the at least two data resource locations.

17. (original)  The origin-agnostic data delivery method of claim 10 comprising the step of associating event markers in frame headers of the data files via event marker

7

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

association means, the event marker association means for enhancing data file

transmission.

18. (original)  The origin-agnostic data delivery method of claim 17 comprising the step of

integrating advertisement content into data files via the event marker association

means.

19. (original)  The origin-agnostic data delivery method of claim 15 wherein the step of

matching data files comprises the steps of:

extracting waveform data from a first data file via data extraction means

associated, the extracted waveform data comprising length segment values, the length

segment values being extracted relative to a data extraction baseline and comprising

trough-to-baseline and peak-to-baseline length segment values; deriving summary

statistics from the extracted waveform data, the summary statistics being derived from

the length segment values, the summary statistics comprising trough-to-baseline and

peak-to-baseline length segment statistics;

generating a custom marker based on the derived summary statistics;

associating the custom marker with the first data file thereby constructing a custom

marked data file; and

accessing the custom marker when comparing a second data file to the custom

marked data file for rendering a positive media file match.

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

20. (currently amended)  A data-routing governance system <u>for governing data routing within a content delivery network</u>, the data-routing governance system [[,]] comprising ~~, in combination,~~ a data-routing compliance appliance ~~and a content delivery network~~, the data-routing compliance appliance being in communication with <u>a smart routing system operable within</u> the content delivery network, the content delivery network comprising a plurality of data sources, the data sources comprising data files, the content delivery network for delivering select data files to an end user from an optimal data source location, the optimal data source location being selected from the group consisting of the data sources <u>and being optimally selected based on pre-defined parameters, the data sources defining at least two different legal access points</u>, the compliance appliance providing (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting of data file transmissions <u>of smart-routed, legally-protected data from the optimal data source location</u>.

21. (new)  A smart routing synchronization system for providing an optimally sourced broadcast to a consumer, the smart routing synchronization system comprising smart routing means for routing select, consumable, legally-protected content to the consumer from an optimal legal access point as determined from at least two legal access points based upon pre-defined parameters defined by the consumer.

22. (new)  The smart routing synchronization system of claim 21 whereby the optimally sourced broadcast is characterized by direct source delivery of the select legally-protected content to the consumer as prompted by a select initiating source.

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

23. (new)  The smart routing synchronization system of claim 22 wherein the select initiating source is selected from the group consisting of an indirect source and a direct source.

24. (new)  The smart routing synchronization system of claim 23 wherein the pre-defined parameters are selected from a parameter group comprising price efficiency parameters and data quality parameters.

25. (new)  The smart routing synchronization system of claim 23 wherein the direct source is peer-connected, the select legally-protected content being directly sourced based upon the direct source's legal right to source said select legally-protected content.

26. (new)  The smart routing synchronization system of claim 21 comprising (a) industry rights management means, (b) compliance monitoring means and/or (c) compliance reporting means, said means for managing, monitoring and/or reporting transmission of the select legally-protected content.

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

REMARKS

International Patent Application No. PCT/US2014/069067 ('067 Application) claims

priority to the subject application and on 03 March 2015, the International Searching

Authority (ISA) issued an International Search Report (ISR) in the '067 Application reporting

its opinion that while all twenty of the pending claims had Industrial Applicability, all twenty

claims were lacking in Inventive Step.  Further, Claim Nos. 4, 13, and 19 appeared to be

Novel, but Claim Nos. 1 – 3, 5 – 12, 14 – 18, and 20 appeared to be lacking in Novelty.  The

primary reference relied upon by the ISA in rendering the ISR was U.S. Patent Application

Publication No. 2004/0031038 authored by Hugly et al (hereinafter Hugly) with particular

attention being given to Paragraph Nos. 0128; 0242; 0250; 0263; 0266; 0471; 0553; and 0574

of the Hugly reference.

The ISA was of the opinion that Hugly anticipated Claim Nos. 1 – 3, 5 – 12, 14 – 18,

and 20 for the reasons stated in Box No. V(2) of the ISR.  Claim Nos. 4 and 13 were further

said to lack an Inventive Step as being obvious in view of Hugly as modified by U.S. Patent

Application Publication No. 2006/0075225 authored by Flynn et al.  Claim No. 19 was said to

lack an Inventive Step as being obvious in view of Hugly as modified by U.S. Patent

Application Publication No. 2012/0239647 authored by Savenok et al.

The Applicants have now considered the ISR and the references cited against the

originally pending claims in the '067 Application, which originally pending claims are

identical to the originally pending claims in the subject application.  Applicants are desirous

11

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

of submitting this Preliminary Amendment to effect a formal search and examination based on claims as amended before action. As indicated above, the claim amendments are being submitted in an effort to more succinctly and precisely define the subject matter Applicants regard as their invention as patentably distinct from the prior art references made of record.

The description and drawings as originally filed in the subject application are believed to support a systemic invention providing for either Indirect or Direct source initiation of copyrighted media to be (smartly) routed and consumed via a second Direct source of the same copyrighted media. One effect of such routing is to create a synthetic broadcast where the originating source of the media (e.g. an "Indirect initiating Source") is not actually sent through to the media consumer but rather the consumer's own separate legally compliant "direct" access point and source of the very same copyrighted material is delivered instead.

An "Indirect Initiating Source" may thus be defined as any source whereby the consumer is not "directly" selecting the specific media to be consumed but that media selection is coming from a second "Indirect Initiating Source" whether that source is a computer curated stream such as a digital "radio" provider or an individual live curator. Such (smart) routing or (smart) syncing of an Indirect source to a separate Direct compliant source uniquely enables a legal and compliant collaborative listening or viewing experience of media between two plus people when and where the access to the copyrighted material is derived from two plus separate compliant media sources of that material.

12

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

Alternatively, a "Direct Initiating Source" may be defined as a source whereby the consumer is "directly" selecting the specific media to be consumed and that specific media may be obtained from an optimal data resource location from at least two locations to which the consumer has legal access, which optimization protocol is based upon pre-defined user parameters such as price efficiency and/or data quality. Such (smart) routing or (smart) syncing of a such a request to a direct compliant source uniquely enables legal and compliant listening or viewing experience of media when and where the access to the copyrighted material is optimally derived from at least two separate compliant media sources of that material to which the consumer has legal access.

Referencing Page Nos. 43 and 44 of the original descriptions, the reader will there consider that the present invention may be said to essentially provide functionality for delivering an indirect request stream from a local server (e.g. digital radio as exemplified by PANDORA® radio); delivering an indirect request stream from a peer-connected server; delivering an indirect request stream from a second direct request source (e.g. iTunes Match or Spotify or cloud locker like DropBox or any media in the cloud); delivering an indirect request stream from a peer-connected server based on a second direct request source's right to play or stream; delivering a direct request stream from a second direct request source based upon (a) price efficiency or (b) sound quality of source; and delivering a direct request stream from a peer-connected source based upon a second direct request source's right to play or stream.

13

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

Given the data origin-agnostic or cloud-agnostic aspects of the present system, the system further provides (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting where delivery of content is sourced from a secondary source other than the original requested source service including the examples listed above.

Neither the Hugly reference nor the Hugly reference as variously modified provides a smart routing synchronization system for providing an optimally sourced broadcast to a consumer comprising certain smart routing means for routing select legally-protected content to a consumer having alternative and preferable source(s) therefor.  The smart routing means according to the present invention thereby provides an optimally sourced broadcast ideally and patentably characterized by optimal source delivery of the select legally-protected content to the consumer as prompted by either indirect requests, or direct requests.

The smart source routing according to the present invention may thus be preferably characterized by certain scenario types including local server-based delivery of either indirectly or directly requested streams; peer-connected server-based delivery of either indirectly or directly requested streams; or legal access point-based delivery of either indirectly or directly requested streams, which delivery bases are optimally selected based on pre-defined parameters set or defined by the user, such as price efficiency or audio/video quality.

Whereas previous disclosures developed by the Applicant(s) have focused on the synchronization of media files within direct request cloud sources, the present invention is

14

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

directed to real-time synchronization of streaming media content from either indirect or direct

initiation sources to a direct source. The ability to source an indirect content stream with an

alternative direct source (i.e. a personal and privately owned legal source NOT delivered from

a peer-to-peer or computer-populated network) with a governing compliance appliance is

believed foundational to the present invention.

In other words, a content stream provider such as a digital radio provider is requested

by a consumer to consume content from the content stream provider. The content stream

provider and the consumer each have different legally owned access points to the content that

is be streamed. The consumer may have a legal right to a direct request for this content form

the consumer's own source or library, while the provider may stream content from a different

source or library.

A direct access point to the content from the user's own library is thus believed

relatively more efficient or cost effective than obtaining access to the content from the

provider. If the content is thus sourced from a consumer's own library, the content delivery

will or should have an impact on compliance reporting by the content provider. The

compliance appliance according to the present invention accurately tracks and reports the

resulting revenue generation for copyright holders.

With the foregoing aspects of the present invention being foundational to the

synchronization system, the claim amendments are being submitted in an effort to highlight

those claimed features of the invention. In other words, the claim amendments have

Application No.: 14/099,348
Preliminary Amendment dated 23 July 2015

attempted to shift the focus of or more narrowly limit the claimed invention toward certain

key aspects of the invention as discussed hereinabove and embraced by these original

descriptions as inventive and patentably distinct from the prior art references made of record.

In particular, the reader is directed to new Claim Nos. 21 – 26, which claims attempt to most

succinctly and precisely define the core aspects of the invention made the subject of the

present application.  Any added claim fees coming due are being separately submitted in

tandem with the submission of this Preliminary Amendment.


The claim amendments accompanying this letter will replace all prior versions, and

listings of claim in this application.  In view of the amendments being presented, it is believed

that this patent application is now in better condition for examination.  If, after a review of

this Amendment, issues remain which may be resolved by a telephone interview, the U.S.

Patent Examiner is cordially invited to call the Applicants' undersigned attorney.


Respectfully submitted,
Attorney for Applicants

**/Christopher J. Scott/**
Christopher J. Scott
Registration 48,647

724 South Street / PO Box 1046
West Dundee, IL  60118
630.818.0946 telephone
847.836.7096 facsimile

16

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |

**Complete if Known**

| Application Number | 14099348 |
| Filing Date | 12-06-2013 |
| First Named Inventor | Leekley et al. |
| Art Unit | 2453 |
| Examiner Name | Margishi V. Desai |
| Attorney Docket Number | 12113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2004/0031038 | 02-12-2004 | Hugly et al. | |
| | | US- 2006/0075225 | 04-06-2006 | Flynn et al. | |
| | | US- 2012/0239647 | 09-20-2012 | Savenok et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14099348 |
| **Filing Date:** | 06-Dec-2013 |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Filer:** | Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 6 | 40 | 240 |
| Independent Claims in Excess of 3 | 2201 | 1 | 210 | 210 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **450** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22998138 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Correspondence Address:** | Charles F. Meroni, Jr. <br> Meroni & Meroni, P.C. <br> P.O. Box 309 <br> - <br> Barrington                IL                60011 <br> US           847.304.1500 <br> meronilaw@ameritech.net |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 23-JUL-2015 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 09:10:52 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $450 |

| RAM confirmation Number | 10142 |
|---|---|
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Preliminary Amendment | PreliminaryAmendment.pdf | 73587 fc361f6e8c1569a5c7ce80c6284daeb2877d5963 | no | 16 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Information Disclosure Statement (IDS) Form (SB08) | IDS.pdf | 125186 f0fcc77f697133de19c3afc02f7f371e9c1d61e7 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 32138 1fe8e530f6dfc8c7ad67f4abec188f5e3f0fcd8b | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 230911 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/099,348 | Filing Date<br>12/06/2013 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE ☒ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **07/23/2015** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 26 | Minus | ** 20 | = 6 | x $40 = | 240 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 3 | = 1 | x $210 = | 210 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **450** |

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/TINA M. BELL/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 12-06-2013 |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

115883

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[ ] The address associated with the above-mentioned Customer Number

OR

[✔] The address associated with Customer Number: 115883

OR

| Firm or Individual Name | Christopher J. Scott | | | | |
|---|---|---|---|---|---|
| Address | 724 South Street / P.O. Box 1046 | | | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

[✔] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | x | Date (Optional) | x |
|---|---|---|---|
| Name | Gregory H. Leckley | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in <u>either</u> the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 12-06-2013 |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:  | 115883 |

**OR**

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[ ] The address associated with the above-mentioned Customer Number

**OR**

[✔] The address associated with Customer Number:  | 115883 |

**OR**

| Firm or Individual Name | Christopher J. Scott | | | | |
|---|---|---|---|---|---|
| Address | 724 South Street / P.O. Box 1046 | | | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

|  |
|---|

[✔] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | x _____ | Date (Optional) | x |
|---|---|---|---|
| Name | Alexander Savenok | | |
| Title | | | |

<u>NOTE:</u> Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 12-06-2013 |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above: 

| 115883 |
|---|

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[ ] The address associated with the above-mentioned Customer Number

OR

[✓] The address associated with Customer Number: | 115883 |

OR

| Firm or Individual Name | Christopher J. Scott | | | | |
|---|---|---|---|---|---|
| Address | 724 South Street / P.O. Box 1046 | | | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

| |
|---|

[✓] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | x _[signature]_ | Date (Optional) | x |
|---|---|---|---|
| Name | Pavel Savenok | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22930954 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Correspondence Address:** | Charles F. Meroni, Jr. <br> Meroni & Meroni, P.C. <br> P.O. Box 309 <br> - <br> Barrington                    IL                    60011 <br> US            847.304.1500 <br> meronilaw@ameritech.net |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 15-JUL-2015 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 19:18:27 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | POAIITransmittal.pdf | 315079 <br><br> 3d4e4dcc90a2d8b41fb13898613339e13f9 54146 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Power of Attorney | POALeekleyII.pdf | 531118 <br><br> bbb3db46ff2353f312e729506f16247c3139 8724 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Power of Attorney | POAASavenokII.pdf | 276294 <br><br> bac3109a0e89d19194b313d8c58422ec553 74033 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | Power of Attorney | POAPSavenokII.pdf | 951167 <br><br> 4b199fd3a0913f8183753b75398a3fd4f7fc b1ea | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| **Total Files Size (in bytes):** | | | 2073658 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 14/099,348 |
| Filing Date | 12-06-2013 |
| First Named Inventor | Gregory H. Leekley |
| Title | Peer-to-Peer Content Delivery Network, Method, and Manager |
| Art Unit | 2453 |
| Examiner Name | Margishi V. Desai |
| Attorney Docket Number | |

## SIGNATURE of Applicant or Patent Practitioner

| | | | |
|---|---|---|---|
| Signature | /Christopher J. Scott/ | Date (Optional) | 07-15-2015 |
| Name | Christopher J. Scott | Registration Number | 48,647 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:**  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of ___4___ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

**MISCELLANEOUS NOTICE**

*OC000000076221309*

Date Mailed: 07/10/2015

A communication which cannot be delivered in electronic form has been mailed to the applicant.

Doc Code: N572



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

*OC000000076221309*

Cc:     Christopher J. Scott
P.O. Box 1046
West Dundee, IL  60118

Date Mailed: **07/10/2015**

# DENIAL OF REQUEST FOR POWER OF ATTORNEY

The request for Power of Attorney filed **07/04/2015** is acknowledged.  However, the request cannot be granted at this time for the reason stated below.

☑ The Power of Attorney you provided did not comply with the new Power of Attorney rules that became effective on June 25, 2004.  See 37 CFR 1.32.

☐ The revocation is not signed by the applicant, the assignee of the entire interest, or one particular principal attorney having the authority to revoke.

☐ The Power of Attorney is from an assignee and the Certificate required by 37 CFR 3.73(c) has not been received.

☐ The person signing for the assignee has omitted their empowerment to sign on behalf of the assignee.

☐ The inventor(s) is without authority to appoint attorneys since the assignee has intervened as provided by 37 CFR 3.71.

☐ The signature(s) of _____, co-inventor(s) in this application, has been omitted. The Power of Attorney will be entered upon receipt of confirmation signed by said co-inventor(s).

☐ The person(s) appointed in the Power of Attorney is not registered to practice before the U.S. Patent and Trademark Office.

☐ Only one Customer Number can be designated for the Power of Attorney in an application.  The Customer Number that was captured is the first Customer Number provided on the Power of Attorney document.

Doc Code: N572



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

☐ A request under 37 CFR 1.48 to add an inventor was granted in this application, however, no power of attorney consistent with the power of attorney granted by the originally named inventive entity has been received. Thus, the addition of the inventor has resulted in the loss of power of attorney in the application. See 37 CFR 1.32(e).

☐ The power of attorney has not been accepted because the party who is giving power of attorney has not been identified. Power of attorney may only be signed by the applicant for patent (37 CFR 1.42) or the patent owner. A patent owner who was not the applicant must appoint any power of attorney in compliance with 37 CFR 3.71 and 3.73. See 37 CFR 1.32(b)(4).

☐ The power of attorney from the inventors has not been accepted because it is a copy from a prior national application for which benefit is claimed and the continuing application names an inventor who was not named as an inventor in the prior application.

☐ The power of attorney from the inventors has not been accepted because the power of attorney must be signed by the applicant for patent. See 37 CFR 1.32(b)(4).

☐ Any request to correct or update the name of the applicant must include an application data sheet (ADS) in compliance with 37 CFR 1.76 specifying the correct or updated name of the applicant in the applicant information section. Any request to change the applicant after an original applicant has been specified under 37 CFR 1.46(b) must include a new ADS in compliance with 37 CFR 1.76 specifying the applicant in the applicant information section and comply with 37 CFR 3.71 and 3.73. See 37 CFR 1.46(c).

Any inquiries regarding this notice should be directed to the Application Assistance Unit at 571-272-4200.

*MB*

Application Assistance Unit
571-272-4200

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 14/099,348 |
| Filing Date | 06 December 2013 |
| First Named Inventor | Gregory H. Leekley |
| Title | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| Art Unit | 2453 |
| Examiner Name | Margishi V. Desai |
| Attorney Docket Number | |

## SIGNATURE of Applicant or Patent Practitioner

| Signature | *Christopher J Scott* | Date (Optional) | 04 July 2015 |
|---|---|---|---|
| Name | Christopher J. Scott | Registration Number | 48,647 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of __5__ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

1/5

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 06 December 2013 |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[ ] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

OR

[✓] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[ ] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| Firm or Individual Name | Christopher J. Scott | | | | |
|---|---|---|---|---|---|
| Address | P.O. Box 1046 | | | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

[✓] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | | Date (Optional) | |
|---|---|---|---|
| Name | Gregory H. Leekley | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

2/5

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 06 December 2013 |

(Note:  The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[ ] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

OR

[✓] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above.  (Note:  Complete form PTO/AIA/82C.)

Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:

[ ] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| Firm or individual Name | Christopher J. Scott | | | |
|---|---|---|---|---|
| Address | P.O. Box 1046 | | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

[✓] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | | Date (Optional) | 07/03/15 |
|---|---|---|---|
| Name | Alexander Savenok | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

3/5

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| 14/099,348 | 06 December 2013 |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[ ] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

OR

[✓] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:

[ ] The address associated with the above-mentioned Customer Number
OR
[ ] The address associated with Customer Number:
OR

| Firm or Individual Name | Christopher J. Scott | | |
|---|---|---|---|
| Address | P.O. Box 1046 | | |
| City | West Dundee | State | IL | Zip | 60118 |
| Country | USA | | |
| Telephone | 630.818.0946 | Email | chrisscottlaw@comcast.net |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

[✓] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity)

| Signature | | Date (Optional) | 7/3/15 |
|---|---|---|---|
| Name | Pavel Savenok | | |
| Title | | | |

NOTE: Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

4/5

PTO/AIA/82C (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

No more than ten (10) patent practitioners total may be appointed as set forth below by name and registration number. This page need not be submitted if appointing the Patent Practitioner(s) associated with a Customer Number (see form PTO/AIA/82B):

| Name | Registration Number |
|---|---|
| Christopher J. Scott | 48,647 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

5/5

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22823150 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H. Leekley |
| **Correspondence Address:** | Charles F. Meroni, Jr. <br> Meroni & Meroni, P.C. <br> P.O. Box 309 <br> - <br> Barrington                    IL                    60011 <br> US           847.304.1500 <br> meronilaw@ameritech.net |
| **Filer:** | Christopher J. Scott |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 04-JUL-2015 |
| **Filing Date:** | 06-DEC-2013 |
| **Time Stamp:** | 14:12:11 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|:---:|:---:|:---:|:---:|:---:|:---:|
| 1 | Power of Attorney | POATransmittal.pdf | 3914805<br><br>32dce391b5862f574d0e74f3d7a1db33f9e711e5 | no | 5 |

| Warnings: |
|---|

| Information: |
|---|

| | Total Files Size (in bytes): | 3914805 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

**PUBLICATION NOTICE**

*OC000000068983571*

**Title:** PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER

**Publication No.** US-2014-0164563-A1
**Publication Date:** 06/12/2014

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/099,348 | 12/06/2013 | 2447 | 730 | 12113 | 20 | 3 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

**FILING RECEIPT**

*OC000000065634182*

Date Mailed: 12/24/2013

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

**Applicant(s)**

Gregory H. Leekley, Charlotte, NC;
Alexander Savenok, Grandview, MO;
Pavel Savenok, Wheaton, IL;

**Power of Attorney:**
Charles Meroni Jr--20109

**Domestic Priority data as claimed by applicant**

This appln claims benefit of 61/734,721 12/07/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 12/18/2013
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/099,348**
**Projected Publication Date:** 06/12/2014
**Non-Publication Request:** No
**Early Publication Request:** No

page 1 of 3

**\*\* SMALL ENTITY \*\***
**Title**

PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER

**Preliminary Class**

709

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number
14/099,348

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 | minus 20 = * | x 40 | = 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = * | x 210 | = 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 730 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
  The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/099,348 | 12/06/2013 | Gregory H. Leekley | 12113 |

**CONFIRMATION NO. 4880**

Charles F. Meroni, Jr.
Meroni & Meroni, P.C.
P.O. Box 309
Barrington, IL 60011

**POA ACCEPTANCE LETTER**

*OC000000065634087*

Date Mailed: 12/24/2013

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 12/06/2013.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/dnguyen/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/AIA/15 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 12113 |
| First Named Inventor | Leekley et al. |
| Title | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| Express Mail Label No. | n/a |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

ADDRESS TO:  **Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450**

## ACCOMPANYING APPLICATION PAPERS

1. [✓] **Fee Transmittal Form**
   (PTO/SB/17 or equivalent)
2. [ ] **Applicant asserts small entity status.**
   See 37 CFR 1.27
3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29.
   Applicant must attach form PTO/SB/15A or B or equivalent.
4. [✓] **Specification**          [Total Pages 53 ]
   Both the claims and abstract must start on a new page.
   (See MPEP § 608.01(a) for information on the preferred arrangement)
5. [✓] **Drawing(s)** (35 U.S.C. 113)   [Total Sheets 30 ]
6. **Inventor's Oath or Declaration**   [Total Pages 3 ]
   *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. [✓] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d))
7. [✓] **Application Data Sheet**   *See note below.*
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. [ ] **CD-ROM or CD-R**
   in duplicate, large table, or Computer Program (*Appendix*)
   [ ] Landscape Table on CD
9. **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or
      ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

10. [ ] **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee _____
    _____
11. [ ] **37 CFR 3.73(c) Statement**        [✓] **Power of Attorney**
    *(when there is an assignee)*
12. [ ] **English Translation Document**
    *(if applicable)*
13. [✓] **Information Disclosure Statement**
    (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
14. [ ] **Preliminary Amendment**
15. [ ] **Return Receipt Postcard**
    *(MPEP § 503) (Should be specifically itemized)*
16. [ ] **Certified Copy of Priority Document(s)**
    *(if foreign priority is claimed)*
17. [ ] **Nonpublication Request**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
18. [ ] **Other:** _____
    _____
    _____
    _____
    _____

**\*Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

[ ] The address associated with Customer Number: _____   **OR**   [✓] Correspondence address below

| | |
|---|---|
| Name | Charles F. Meroni, Jr. / Meroni & Meroni, P.C. |
| Address | P.O. Box 309 |
| City | Barrington | State | IL | Zip Code | 60011 |
| Country | US | Telephone | 847.304.1500 | Email | meronilaw@ameritech.net |

| Signature | /Charles F. Meroni, Jr./ | Date | 06 December 2013 |
|---|---|---|---|
| Name (Print/Type) | Charles F. Meroni, Jr. | Registration No. (Attorney/Agent) | 20,109 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/SB/17 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# FEE TRANSMITTAL

| | Complete if known |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Leekley et al. |
| Examiner Name | |
| Art Unit | |
| Practitioner Docket No. | 12113 |

☑ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

**TOTAL AMOUNT OF PAYMENT**   ($) 730.0

## METHOD OF PAYMENT (check all that apply)

☐ Check   ☐ Credit Card   ☐ Money Order   ☐ None   ☐ Other (please identify): _____

☑ Deposit Account   Deposit Account Number: 502063      Deposit Account Name: Meroni

For the above-identified deposit account, the Director is hereby authorized to (check all that apply):

☑ Charge fee(s) indicated below      ☐ Charge fee(s) indicated below, **except for the filing fee**

☐ Charge any additional fee(s) or underpayment of fee(s) under 37 CFR 1.16 and 1.17      ☐ Credit any overpayment of fee(s)

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

## FEE CALCULATION

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES (U = undiscounted fee; S = small entity fee; M = micro entity fee)**

| | FILING FEES | | | SEARCH FEES | | | EXAMINATION FEES | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Application Type** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **Fees Paid ($)** |
| Utility | 280 | 140* | 70 | 600 | 300 | 150 | 720 | 360 | 180 | $730.00 |
| Design | 180 | 90 | 45 | 120 | 60 | 30 | 460 | 230 | 115 | |
| Plant | 180 | 90 | 45 | 380 | 190 | 95 | 580 | 290 | 145 | |
| Reissue | 280 | 140 | 70 | 600 | 300 | 150 | 2,160 | 1,080 | 540 | |
| Provisional | 260 | 130 | 65 | 0 | 0 | 0 | 0 | 0 | 0 | |

* The $140 small entity status filing fee for a utility application is further reduced to $70 for a small entity status applicant who files the application via EFS-Web.

**2. EXCESS CLAIM FEES**

| Fee Description | Undiscounted Fee ($) | Small Entity Fee ($) | Micro Entity Fee ($) |
|---|---|---|---|
| Each claim over 20 (including Reissues) | 80 | 40 | 20 |
| Each independent claim over 3 (including Reissues) | 420 | 210 | 105 |
| Multiple dependent claims | 780 | 390 | 195 |

| **Total Claims** | | **Extra Claims** | | **Fee ($)** | | **Fee Paid ($)** | |
|---|---|---|---|---|---|---|---|
| _____ -20 or HP = | | _____ | x | _____ | = | _____ | |

HP = highest number of total claims paid for, if greater than 20.

| **Multiple Dependent Claims** | |
|---|---|
| **Fee ($)** | **Fee Paid ($)** |
| _____ | _____ |

| **Indep. Claims** | | **Extra Claims** | | **Fee ($)** | | **Fee Paid ($)** |
|---|---|---|---|---|---|---|
| _____ -3 or HP = | | _____ | x | _____ | = | _____ |

HP = highest number of independent claims paid for, if greater than 3.

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| **Total Sheets** | | **Extra Sheets** | | **Number of each additional 50 or fraction thereof** | | **Fee ($)** | | **Fee Paid ($)** |
|---|---|---|---|---|---|---|---|---|
| _____ - 100 = | | _____ / 50 = | | _____ (round **up** to a whole number) | x | _____ | = | _____ |

**4. OTHER FEE(S)**

| | Fees Paid ($) |
|---|---|
| Non-English specification, $130 fee (no small or micro entity discount) | _____ |
| **Non-electronic filing fee under 37 CFR 1.16(t) for a utility application, $400 fee ($200 small or micro entity)** | _____ |
| Other (e.g., late filing surcharge): _____ | _____ |

## SUBMITTED BY

| Signature | /Charles F. Meroni, Jr./ | Registration No. (Attorney/Agent) | 20,109 | Telephone | 847.304.1500 |
|---|---|---|---|---|---|
| Name (Print/Type) | Charles F. Meroni, Jr. | | | Date | 06 December 2013 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/14 (11-13)
Approved for use through 04/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 12113 |
|---|---|---|
| | Application Number | |

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor   1**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| Mr. | Gregory | H. | Leekley | |

**Residence Information (Select One)**   ◉ US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Charlotte | State/Province | NC | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 9660 Chaumont Lane |
|---|---|
| Address 2 | |

| City | Charlotte | | State/Province | NC |
|---|---|---|---|---|

| Postal Code | 28277 | Country i | US |
|---|---|---|---|

**Inventor   2**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| Mr. | Alexander | | Savenok | |

**Residence Information (Select One)**   ◉ US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Grandview | State/Province | MO | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 12212 Bennington Avenue |
|---|---|
| Address 2 | |

| City | Grandview | | State/Province | MO |
|---|---|---|---|---|

| Postal Code | 64030 | Country i | US |
|---|---|---|---|

**Inventor   3**   [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| Mr. | Pavel | | Savenok | |

**Residence Information (Select One)**   ◉ US Residency   ○ Non US Residency   ○ Active US Military Service

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 12113 |
|---|---|---|
| | Application Number | |

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

| City | Wheaton | State/Province | IL | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 102 E. Farnham Lane |
|---|---|
| Address 2 | |
| City | Wheaton | | State/Province | IL |
| Postal Code | 60189 | Country i | US |

| All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. | Add |
|---|---|

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). |
|---|

| ☒ An Address is being provided for the correspondence Information of this application. |
|---|

| Name 1 | Charles F. Meroni, Jr. | Name 2 | Meroni & Meroni, P.C. |
|---|---|---|---|
| Address 1 | P.O. Box 309 | | |
| Address 2 | | | |
| City | Barrington | State/Province | IL |
| Country i | US | Postal Code | 60011 |
| Phone Number | 847.304.1500 | Fax Number | 847.382.5478 |
| Email Address | meronilaw@ameritech.net | Add Email | Remove Email |

## Application Information:

| Title of the Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER | |
|---|---|---|
| Attorney Docket Number | 12113 | Small Entity Status Claimed ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 30 | Suggested Figure for Publication (if any) | 2 |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|

| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |
|---|---|

## Representative Information:

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 12113 |
|---|---|---|
| | Application Number | |

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ○ Customer Number | ● US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix | |
|---|---|---|---|---|---|
| Mr. | Charles | F. | Meroni | Jr. | Remove |

| Registration Number | 20109 |
|---|---|

Additional Representative Information blocks may be generated within this form by selecting the **Add** button. | Add |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Claims benefit of provisional | 61734721 | 2012-12-07 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) [the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country [i] | Filing Date (YYYY-MM-DD) | Access Code [i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button. | Add |

PTO/AIA/14 (11-13)
Approved for use through 03/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 12113 |
| | Application Number | |
| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER | |

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☐ Authorization to Permit Access to the Instant Application by the Participating Offices

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-13)
Approved for use through 11/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 12113 |
|---|---|---|
| | Application Number | |

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

---

**Applicant  1**    [Remove]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[Clear]

| ○ Assignee | ○ Legal Representative under  35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|

| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest |
|---|---|

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here. ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information:**

| Address 1 | |
|---|---|
| Address 2 | |
| City | | State/Province | |
| Country i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Applicant Data may be generated within this form by selecting the Add button.    [Add]

---

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Assignee   1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

[Remove]

PTO/AIA/14 (11-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 12113 |
|---|---|---|
| | Application Number | |

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| **City** | | **State/Province** | |
|---|---|---|---|
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

| Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. | Add |
|---|---|

## Signature:

Remove

| NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications |
|---|

| **Signature** | /Charles F. Meroni, Jr./ | | Date  (YYYY-MM-DD) | 2013-12-06 |
|---|---|---|---|---|
| First Name | Charles F. | Last Name | Meroni, Jr. | Registration Number | 20109 |

| Additional Signature may be generated within this form by selecting the Add button. | Add |
|---|---|

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# **Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Gregory H. Leekley                Date (Optional): X 12-6-13

Signature: X

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Alexander Savenok                     Date (Optional): X 12/06/13

Signature: X

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:   ☒  The attached application, or

☐  United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Pavel Savenok _____   Date (Optional): X 12/06/13

Signature: X _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Leekley et al. |
| Title | Peer-to-Peer Content Delivery Network, Method, and Manager |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 12113 |

### SIGNATURE of Applicant or Patent Practitioner

| Signature | *Charles F. Meroni, Jr.* | Date (Optional) | 06 December 2013 |
|---|---|---|---|
| Name | Charles F. Meroni, Jr. | Registration Number | 20109 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] *Total of __5__ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

☐ I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

OR

☑ I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

☐ The address associated with the above-mentioned Customer Number

OR

☐ The address associated with Customer Number:

OR

| Firm or Individual Name | Charles F. Meroni, Jr. / Meroni & Meroni, P.C. | | | | |
|---|---|---|---|---|---|
| Address | P.O. Box 309 | | | | |
| City | Barrington | State | IL | Zip | 60011 |
| Country | USA | | | | |
| Telephone | 847.304.1500 | Email | meronilaw@ameritech.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

☑ Inventor or Joint Inventor (title not required below)

☐ Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

☐ Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

☐ Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | x | Date (Optional) | x |
|---|---|---|---|
| Name | Gregory H. Leekley | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

☐ Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82E (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| | |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

☐ I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

[ ]

OR

☑ I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

☐ The address associated with the above-mentioned Customer Number
OR
☐ The address associated with Customer Number: [ ]
OR

| Firm or Individual Name | Charles F. Meroni, Jr. / Meroni & Meroni, P.C. | | | | |
|---|---|---|---|---|---|
| Address | P.O. Box 309 | | | | |
| City | Barrington | State | IL | Zip | 60011 |
| Country | USA | | | | |
| Telephone | 847.304.1600 | Email | meronilaw@ameritech.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

[ ]

☑ Inventor or Joint Inventor (title not required below)

☐ Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

☐ Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

☐ Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | x | Date (Optional) | x 12.06.12 |
|---|---|---|---|
| Name | Alexander Savenok | | |
| Title | | | |

NOTE: Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

☐ Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

☐ I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

OR

☑ I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

☐ The address associated with the above-mentioned Customer Number

OR

☐ The address associated with Customer Number:

OR

| Firm or Individual Name | Charles F. Meroni, Jr. / Meroni & Meroni, P.C. | | | | |
|---|---|---|---|---|---|
| Address | P.O. Box 309 | | | | |
| City | Barrington | State | IL | Zip | 60011 |
| Country | USA | | | | |
| Telephone | 847.304.1500 | Email | meronilaw@ameritech.net | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

☑ Inventor or Joint Inventor (title not required below)

☐ Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

☐ Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

☐ Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | X _[signature]_ | Date (Optional) | X 12/06/12 |
|---|---|---|---|
| Name | Pavel Savenok | | |
| Title |  | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

☐ Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/82C (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

No more than ten (10) patent practitioners total may be appointed as set forth below by name and registration number. This page need not be submitted if appointing the Patent Practitioner(s) associated with a Customer Number (see form PTO/AIA/82B):

| Name | Registration Number |
|---|---|
| Charles F. Meroni, Jr. | 20109 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Gregory H. Leekley |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 12113 |

Sheet | 1 | of | 5

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,444,779 | 8-22-1996 | Daniele | |
| | | US- 6,925,469 | 8-2-2005 | Headings et al. | |
| | | US- 7,643,459 | 1-5-2010 | Miller et al. | |
| | | US- 7,664,861 | 2-16-2010 | Guntupalli et al. | |
| | | US- 7,774,010 | 8-10-10 | Kokkonen et al. | |
| | | US- 7,779,123 | 8-17-2010 | Duggan | |
| | | US- 8,090,861 | 1-3-2012 | Miller et al. | |
| | | US- 8,176,325 | 5-8-2012 | Lai et al. | |
| | | US- 8,180,853 | 5-15-2012 | Lee et al. | |
| | | US- 2002/0032019 | 3-14-2002 | Marks et al. | |
| | | US- 2003/0131245 | 7-10-2003 | Linderman | |
| | | US- 2003/0135639 | 7-17-2003 | Marejka et al. | |
| | | US- 2005/0114562 | 5-26-2005 | Barnes et al. | |
| | | US- 2005/0180418 | 8-18-2005 | Andersen et al. | |
| | | US- 2006/0107036 | 5-18-2006 | Randle et al. | |
| | | US- 2006/0133428 | 6-22-2006 | Guthrie et al. | |
| | | US- 2007/0168409 | 7-19-2007 | Cheung | |
| | | US- 2007/0273133 | 10-11-2007 | Woods et al. | |
| | | US- 2007/0256073 | 11-1-2007 | Troung et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
*(Use as many sheets as necessary)*

Sheet | 2 | of | 5

**Complete if Known**

| Application Number | |
| Filing Date | |
| First Named Inventor | Gregory H. Leekley |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 02113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials[1] | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US-2007/0016688 | 1-18-2007 | Hester et al. | |
| | | US-2007/0038574 | 2-15-2007 | Fanning et al. | |
| | | US-2008/0016205 | 1-17-2008 | Svendsen | |
| | | US-2008/0071561 | 3-20-2008 | Holcombe | |
| | | US-2008/0178094 | 7-24-2008 | Ross | |
| | | US-2008/0089299 | 4-17-2008 | Lindsley et al. | |
| | | US-2008/0189255 | 8-7-2008 | Zatloukal et al. | |
| | | US-2008/0256255 | 10-16-2008 | Mordovskoi et al. | |
| | | US-2008/0294788 | 11-27-2008 | Wu et al. | |
| | | US-2009/0037960 | 2-5-2009 | Melby | |
| | | US-2009/0055471 | 2-26-2009 | Kozat et al. | |
| | | US-2009/0172157 | 7-2-2009 | Zhang | |
| | | US-2009/0210549 | 8-20-2009 | Hudson et al. | |
| | | US-2009/0265022 | 10-22-2009 | Kirovski et al. | |
| | | US-2009/0305694 | 12-10-2009 | Zheng et al. | |
| | | US-2009/0320075 | 12-24-2009 | Marko | |
| | | US-2009/0327481 | 12-31-2009 | Rickard et al. | |
| | | US-2010/0106799 | 4-29-2010 | Calabrese | |
| | | US-2010/0138552 | 6-3-2010 | OH. et. al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials[1] | Cite No.[1] | Foreign Patent Document — Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

[1]EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1]Applicant's unique citation designation number (optional). [2]See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3]Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4]For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6]Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Complete if Known | |
|---|---|---|---|
| Substitute for form 1449/PTO | | Application Number | |
| | | Filing Date | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | First Named Inventor | Gregory H. Leekley |
| | | Art Unit | |
| | | Examiner Name | |
| Sheet | 3 | of | 5 | Attorney Docket Number | 12113 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | Number-Kind Code[2] (if known) | | | |
| | | US- 2010/0142557 | 6-10-2010 | Priddle et al. | |
| | | US- 2010/0162126 | 6-24-2010 | Donaldson et al. | |
| | | US- 2010/0169493 | 7-1-2010 | Yamakawa et. al. | |
| | | US- 2010/0169506 | 7-1-2010 | Krzanowski et al. | |
| | | US- 2010/0202450 | 8-12-2010 | Ansari et al. | |
| | | US- 2010/0250704 | 9-30-2010 | Kittel | |
| | | US- 2010/0205319 | 8-12-2010 | Beers et al. | |
| | | US- 2010/0268361 | 10-21-2010 | Mantel et al. | |
| | | US- 2010/0250737 | 9-30-2010 | Bremler-Barr et al. | |
| | | US- 2010/0306257 | 12-2-2010 | Levy | |
| | | US- 2010/0223648 | 9-2-2010 | Tian | |
| | | US- 2010/0274848 | 10-28-2010 | Altamaier et al. | |
| | | US- 2010/0332568 | 12-30-2010 | Morrison et al. | |
| | | US- 2011/0015968 | 1-20-2011 | Carlson | |
| | | US- 2011/0029649 | 2-3-2011 | Tian et al. | |
| | | US- 2011/0022652 | 1-27-2011 | Lai et al | |
| | | US- 2011/0035031 | 2-10-2011 | Faenger et al. | |
| | | US- 2011/0040878 | 2-17-2011 | Luzzatti et al. | |
| | | US- 2011/0072475 | 3-24-2011 | McKiel, Jr. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | Country Code[3] Number[4] Kind Code[5] (if known) | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>*(Use as many sheets as necessary)* | **Complete if Known** | |
|---|---|---|
| | Application Number | |
| | Filing Date | |
| | First Named Inventor | Gregory H. Leekley |
| | Art Unit | |
| | Examiner Name | |
| Sheet 4 of 5 | Attorney Docket Number | 12113 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Document Number<br><br>Number-Kind Code²(if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2011/0099096 | 4-28-2011 | Shanley et al. | |
| | | US- 2011/0093607 | 4-21-2011 | Wang et al. | |
| | | US- 2011/0106673 | 5-5-2011 | Shanley et al. | |
| | | US- 2011/0167115 | 7-7-2011 | Gilbert et al. | |
| | | US- 2011/0179328 | 7-21-2011 | Souza et al. | |
| | | US- 2011/0179184 | 7-21-2011 | Breau et al. | |
| | | US- 2011/0119165 | 5-19-2011 | Zee | |
| | | US- 2011/0225417 | 9-15-2011 | Maharajh et al. | |
| | | US- 2011/0279635 | 11-17-2011 | Periyannan et al. | |
| | | US- 2011/0288970 | 11-24-2011 | Kidron et al. | |
| | | US- 2011/0302303 | 12-8-2011 | Dunkeld et al. | |
| | | US- 2012/0030367 | 2-2-2012 | Lei et al. | |
| | | US- 2012/0054146 | 3-1-2012 | Gupta et al. | |
| | | US- 2012/0072610 | 3-22-2012 | Svendsen | |
| | | US- 2012/0072852 | 3-22-2012 | Svendsen et al. | |
| | | US- 2012/0072932 | 3-22-2012 | Atwater et al. | |
| | | US- 2012/0072948 | 3-22-2012 | Yang et al. | |
| | | US- 2012/0102116 | 4-26-2012 | Shi et al. | |
| | | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.¹ | Foreign Patent Document<br><br>Country Code³ Number⁴ Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08a (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE
## STATEMENT BY APPLICANT
### (Use as many sheets as necessary)

Sheet | 5 | of | 5

**Complete if Known**

| Application Number | |
| Filing Date | |
| First Named Inventor | Gregory H. Leekley |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 12113 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 2012/0116937 | 5-10-2012 | Van Biljon et al. | |
| | | US- 2012/0117605 | 5-10-2012 | Miao et al. | |
| | | US- 2012/0124178 | 5-17-2012 | Sparks | |
| | | US- 2012/0124211 | 5-17-2012 | Kampas et al. | |
| | | US- 2012/0124678 | 5-17-2012 | Shintani et al. | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |
| | | US- | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.¹ | Foreign Patent Document Country Code³ Number⁴ Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹Applicant's unique citation designation number (optional). ²See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶Applicant is to place a check mark here if English language Translation is attached.
This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

SPECIFICATION


BE IT KNOWN that Gregory H. Leekley, is a citizen of the United States, and a

resident of Charlotte, North Carolina; Alexander Savenok is a citizen of the United States

5   and a resident of Grandview, Missouri, U.S.A.; and Pavel Savenok is a citizen of the

Unites States and a resident of Wheaton, Illinois; and together have jointly invented new

and useful improvements in a


PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER

10

and do hereby declare that the following is a full, clear and exact description, reference

being had to the accompanying drawings and to the numerals of reference marked

thereon, which form a part of this specification.


15                                BACKGROUND OF THE INVENTION

PRIOR HISTORY

This U.S. Provisional Patent Application claims the benefit of (1) pending U.S.

Patent Application No. 13/065,254, filed in the United States Patent and Trademark

office on 17 March 2011; (2) pending U.S. Patent Application No. 13/134,044, filed in

20   the United States Patent and Trademark Office on 26 May 2011; (3) pending U.S. Patent

Application No. 13/199,474, filed in the United States Patent and Trademark Office on

30 August 2011; and (4) pending International Patent Application No.

PCT/US2012/000060, filed in the United States Patent and Trademark Office as

1

International Receiving Office on 06 February 2012, the specifications of which are hereby collectively incorporated herein by this reference thereto.

FIELD OF THE INVENTION

5

The present invention generally relates to content delivery network and associated methodology that provides a media compliance engine.  The media compliance engine according to the present invention operates by way of local gateway servers, which utilize peer-to-peer networks and multiple data origins (clouds) to optimize the delivery of media and streamline the reporting process.  The media compliance engine according to the present invention matches requests from streaming providers with an optimized data source and network.  By doing this the media compliance engine can minimize bandwidth consumption, licensing, and reporting costs.

15   SUMMARY OF THE INVENTION

The present invention provides a peer to peer Content Delivery Network (CDN) that can be added to any existing standard content delivery network, or server configuration without any changes to back end systems.  The peer to peer CDN according to the present invention is created when the end user installs a local peer to peer gateway server on the client machine.  The gateway server receives request(s) from the media consuming client via encrypted or unencrypted connections (e.g. HTTP, HTTPS, Secure Socket, and/or Socket).

2

The local gateway server acts as a peer on the peer-to-peer network and has an encrypted cache for storing data for delivery to other peers or for local delivery to a data consuming client.  The local gateway server can also pull resources from a related remote data source (e.g. a server or other CDN).  The consuming client would only need to pass

5   a single request to the gateway server, and the gateway server manages the resources and network connection independently of the client.  This type of setup enables the delivery of media not only to stand alone desktop applications but also to browsers and media players, and mobile applications that have standard web browsers capabilities (e.g. HTTP, HTTPS, and/or Socket).

10   The present invention provides a peer-to-peer (P2P) gateway server that receives communication from a client on a local machine.  The communication or request can be formatted as a standard HTTP request directed at the local gateway server which will be registered under a local domain name.  It is contemplated that the request(s) may be formatted differently if a new transfer protocol is created that references a reserved port

15   where the gateway server would reside.  In this case, the request would be formatted slightly differently (i.e. without the HTTP prefix).

The invention provides a Resource Name Server (RNS), which RNS caches resource URL's, and resource locations (i.e. IP addresses) and resolves resource requests with machine addresses.  The general process or methodology for an un-matched media

20   type would be as follows.

    1.  Client sends a request for resources to the gateway server;

    2.  The gateway server then sends the request to the RNS to resolve the resource request with a resource address;

3

3.  Once the resource request is matched with the optimal (least costly) resource locations, the resource location data is returned to the gateway server;

4.  The gateway then sends the request for resource data to the appropriate machines or server clusters;

5.  The machines or service clusters then respond by serving the data that is requested to the gateway server located on the local machine.

6.  The gateway process organizes and validates the data and then delivers the resources to the client on the local machine.

The reader will note that in a traditional Client-Server relationship, a client requests data from a server and the server delivers data pursuant to client request.  In a traditional unmanaged peer-to-peer network each peer can act as both a server (i.e. a deliverer of data) and a client (i.e. a receiver of data).  In an unmanaged environment a request for data is passed from peer to peer until a file is located.

A managed peer to peer network has a centralized server that indexes resources. The peers in such a network report and register their availability, thus making it easier and quicker to locate a resource.  In a hybrid system a peer to peer network is used alongside a centralized data source/indexing server to provide the low costs of peer delivery but the consistency and speed of a centralized data source and in order to expedite resource delivery as in the managed peer to peer network.  In this situation a mix of data origin server and peers deliver the data.

4

According to the present invention, the client is a stand-alone client, and the data request originates and is consumed by a stand-alone client (browser, desktop or mobile application).  Unlike the networks prefaced hereinabove, the request for data does not originate with the peer, but with a stand-alone client as in a traditional client server

5     relationship.

The gateway server receives the request and then resolves the request for a resource with a Resource Name Server (i.e. resource indexing server).  The RNS responds with resource locations (IP address), which can be resource origins or peers. Given that the network is data origin agnostic, peer data is not managed by a central data

10     server, but rather indexed on the RNS as requests are passed and cached at the gateway server.

Accordingly, in such a network the data source is separate from the resource indexing server, thus allowing any request for data by a stand-alone client to be filled from the data origin or a peer-to-peer (P2P) network, since the data within the P2P

15     network is cached when the request is sent from the stand-alone client.

20

BRIEF DESCRIPTION OF THE DRAWINGS

Other features of our invention will become more evident from a consideration of the following brief descriptions of illustrations of the subject invention:

5

Figure No. 1 is a diagrammatic depiction of a fragmented arrangement for a data file including rows of sub-stream packets and columns of validation packets.

Figure No. 2 is a first diagrammatic depiction of a system overview according to the present invention, showing a gateway server positioned intermediate a cloud of server clusters and a resource name server.

Figure No. 3 is a second diagrammatic depiction of a system overview according to the present invention, showing a gateway server positioned intermediate a cloud of server clusters and a resource name server.

Figure No. 4 is a diagrammatic depiction of a domain name server system overview.

Figure No. 5 is a diagrammatic depiction of a resource name server system overview.

Figure No. 6 is a diagrammatic depiction of a non-plug-in security measure overview.

6

Figure No. 7 is a diagrammatic depiction of a traditional client-server relationship whereby a client requests data and the server delivers data.

5       No. 8 is a diagrammatic depiction of a peer-to-peer unmanaged network overview whereby each peer can act as both a server and a client where requests for data are passed from peer to peer until a file is located.

Figure No. 9 is a diagrammatic depiction of a peer to peer managed network

10     overview in which a centralized server indexes resources and in which the peers report and register their availability.

Figure No. 10 is a diagrammatic depiction of a peer to peer centralized hybrid network overview with which a peer to peer network is used alongside a centralized data

15     source/indexing server to provide the low costs of peer delivery but the consistency and speed of a centralized data source.

Figure No. 11 is a diagrammatic depiction of a peer to peer gateway server network overview.

20

Figure No. 12 is a diagrammatic depiction of how secure connections are structured view a local server and browser.

7

Figure No. 13 is a diagrammatic depiction of how a local gateway server is validated via a plug-in.

Figure No. 14 is a diagrammatic depiction of a resource indexing arrangement with

5   an initial request and no file matching.

Figure No. 15 is a diagrammatic depiction of a resource indexing arrangement with subsequent request and no file matching.

10   Figure No. 16 is a diagrammatic depiction of a progressive cloud indexing arrangement with an initial request.

Figure No. 17 is a diagrammatic depiction of a local resource indexing arrangement.

15   Figure No. 18 is a diagrammatic depiction of a first indexed resource request processing arrangement.

Figure No. 19 is a diagrammatic depiction of a second indexed resource request processing arrangement.

20   Figure No. 20 is a diagrammatic depiction of a third indexed resource request processing arrangement.

8

Figure No. 21 is a diagrammatic depiction of a fourth indexed resource request processing arrangement.

Figure No. 22 is a diagrammatic depiction of a sub-licensing, cloud delivery

5   arrangement.

Figure No. 23 is a diagrammatic depiction of a sub-licensing, peer-to-peer delivery arrangement.

10   Figure No. 24 is a first diagrammatic depiction of a streaming provider requesting that a song be played on a mobile device according to the present invention.

Figure No. 25 is a second diagrammatic depiction of a streaming provider requesting that a song be played on a mobile device according to the present invention.

15

Figure No. 26 is a diagrammatic depiction of a gateway server enhanced system overview according to the present invention.

Figure No. 27 is a diagrammatic depiction of a pre-recorded media queue

20   arrangement according to the present invention.

Figure No. 28 is a diagrammatic depiction of a stream splitting arrangement according to the present invention.

9

Figure No. 29 is a diagrammatic depiction of a MP3 file structure according to the present invention showing frame headers and audio frames of an audio stream.

5      Figure No. 30 is a diagrammatic depiction of state of the art methods for streaming radio over the Internet.

Figure No. 31 is a diagrammatic depiction of a system overview for advertisement integration without audio mixing according to the present invention.

10     Figure No. 32 is a diagrammatic depiction of an advertisement marker arrangement according to the present invention.

Figure No. 33 is a diagrammatic depiction of methodology relating to routing

15     HTTP requests from browsers and/or other media-consuming clients.

20

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT / METHODOLOGY

      Referencing the drawings now with more specificity, the present invention provides a Content Delivery Network and associated Methodology for Cloud Agnostic

5    Peer-to-Peer Data Streaming.  As discussed above, the invention comprises a peer-to-peer (P2P) gateway server as depicted and referenced at 3.  The P2P gateway server 3 receives communications (as at 200) from the client 2 on the local machine 101.

      These requests may be formatted as standard HTTP requests directed at the local gateway server 3 which will be registered under a local domain name.  While routing

10   HTTP requests from web browsers and other devices may include the use of locally registered domain names and protocols are viable methods, the following method is preferred when routing HTTP requests from browsers and other media consuming clients.

      The consuming client 2 is given a Fully Formatted domain name to the peer-to-peer remote servers 4 or Resource Name Servers 4.  For the sake of simplicity, the reader

15   will consider the domain name www.rns_server.com.  In order to request media 401 through the peer-to-peer Content Delivery Network (CDN) as at 144, the client 2 contains a Uniform Recourse Locator (URL) with RNS public domain name, and a GET variable with the location of the requested media, something of the form www.rns_server.com?media=www.somemediasource.com/media.mp4&protocol=http.

20   When the RNS 4 receives the request it queries 404 two distinct data bases.  The first query uses the requesting devices public Internet Protocol (IP) address to identify if any network peers 3 exist within the requesting devices local network 101.  The second query searches the resource database to identify peers 3 with the requested media

available for streaming (as at 200, 207, 208, 209, and 210) within the peer-to-peer (P2P) CDN 144.

Based on the result of queries 404 the following things could happen.  Firstly, if there is no registered peer on the local network the request is redirected as at 403 to the

5    media's remote source 104, and the P2P network 144 will not be utilized.  If there is a registered peer 3 within the local network 101, the request is redirected as at 402 to the local network peer 3 along with the resource location and availability data which was retrieved in the second query 404.  The local network peer 3 then handles the media stream (as at 200, 207, 208, 209, and 210).

10    The reader will thus appreciate that the Resource Name Server (RNS) as referenced at 4, is central to the practice of the present invention.  The RNS 4 caches resource URL's and resource locations (IP addresses), and resolves resource requests with machine addresses (IP addresses).  The general process for an un-matched media type would be as follows.  The client 2 sends a request for resources (as at 200) to the

15    gateway server 3.

The gateway server 3 then sends the request (as at 201) to the compartmented RNS 4 to resolve (as at 202) the incoming resource ID/URL request (as at 203) with a resource address (as at 204), which resource or IP address is then communicated back (as at 205) to the gateway server 3 as more particularly depicted in Figure No. 5.  In other

20    words, once the resource request 203 is matched as at 202 with optimal (e.g. (a) most price efficient or (b) highest sound quality of source) resource locations 204, the resource location data or IP address(es) 204 are returned as at 205 to the gateway server 3.

The gateway server 3 then sends (as at 206, 207, and 208) request(s) for resource data to the appropriate machines (102 and/or 103) or server clusters as at 104. The machines 102 / 103 or server clusters 104 then respond by serving (as at 209) the data that is requested to the gateway server 3 located on machine 101. The gateway server 3

5    on machine 101 processes (i.e. organizes and validates) the data as served at 209, and then delivers 210 the resources to the client 2.

Certain client-server-peer relationships are basically diagrammatically depicted in Figure Nos. 7, 8, 9, and 10. A Traditional client-server relationship is depicted in Figure No. 7; an unmanaged peer-to-peer network is depicted in Figure No. 8; a managed peer-

10   to-peer network is depicted in Figure No. 9; and a centralized/hybrid peer-to-peer network is depicted in Figure No. 10.

In a traditional client-server relationship a client 105 requests 211 data from a server 106, and the server 106 delivers 212 the data in a cyclic manner as depicted in Figure No. 7. In a traditional, unmanaged peer to peer network each peer (or client/server

15   combination) 107 can act as both a server 106 for delivering data and a client 105 for receiving data. In an unmanaged environment as generally depicted in Figure No. 8, a request 211 for data is passed from peer 107 to peer 107 until a file is located.

A managed peer to peer network as generally depicted in Figure No. 9 has a centralized, resource-indexing server 108 that functions to index resources. The indexed

20   resources are delivered 213 to the peers 107 following requests 214 thereby. The indexed resource availability is then reported and registered by the peers 107. This type of arrangement makes it easier and quicker to locate a resource.

13

In the hybrid system generally depicted in Figure No. 10, a peer to peer network is used alongside a centralized data source/indexing server 109. Both indexed resources and data are delivered 215 to the peers 107 from the server 109 following requests 216 for resources and data by the peer(s) 107. This type of arrangement provides the low

5    costs of peer delivery but the consistency and speed of a centralized data source and in order to expedite resource delivery as in the managed peer to peer network. In this situation a mix of data originate from server 109 and peers 107 deliver the data.

In the origin-agnostic peer-to-peer Content Delivery Network (CDN) 144 generally depicted in Figure Nos. 2 and 3, the client 2 is a stand-alone client. In other

10    words, the data request originates and is consumed by a stand-alone client 2 (i.e. browser, desktop or mobile application). Unlike in other networks, the request for data does not originate with a peer 107, but with a stand-alone client 2 as in a traditional client server relationship as generally depicted in Figure No. 7.

The gateway server 3 receives the request from the client 2, and then resolves the

15    request for a resource with a Resource Name Server or RNS or resource indexing server 4. The RNS 4 responds with resource locations (e.g. IP address), which resource locations can be resource origins or peers. Given that the network is data origin-agnostic, peer data is not managed by a central data server, but rather indexed on the RNS 4 as requests are passed and cached at the gateway server 3.

20    In such a network the data source is separate from the resource indexing server or RNS 4. This allows any request for data by a stand-alone client 2 to be filled from the

14

data origin or a peer-to-peer network, since the data within the peer-to-peer network is cached when the request is sent from the stand-alone client 2.

The present invention is not limited to using HTTP or Web Sockets, but could also use standard file transfer protocols (FTP, WebDAV, SMB, AFP etc…).  In this case

5   the client would be a standalone FTP (or any standard file transfer protocol client).  If the FTP directory (or WebDAV, SMB, AFP etc…) is mounted as a network drive within an operating system, the operating system would act as the client.  In this situation the gateway server would operate as a file server.

Notably, there are some security concerns in such an arrangement.  The proposed

10   solution or arrangement according to the present invention is potentially vulnerable to "man in the middle attacks" and/or unauthorized client access.  These concerns can be addressed by providing certain client and/or server authentication means.  The client and/or server authentication means basically function to verify client and/or server authenticity.

15   The client and/or server authentication means may be exemplified by a number of different mechanisms as described in more detail hereinafter.  For example, said authentication means may be provided by way of media plug-in authentication (client authentication) and browser extensions that validate the local server to ensure that it is not a corrupt server (this would require some sort of unique ID, session tokens, or key

20   pairing).

Client sided scripts along with plug-ins can also be used to authenticate both the client and the server by embedding some form of verification identification within the

15

plug-in, which is then passed to the client-sided scripts which validate the verification identification using AJAX.  The use of client-sided scripts in tandem with a browser plug-in is preferred as it provides both client and server verification in one process.  This method is discussed below.

5      Referencing Figure Nos. 12 and 13, the reader will consider client verification via browser plug-in and client sided scripts.  The process of creating a secure connection begins with the installation of the local server.  When installed, the server creates a self-signed certificate, and adds the self-signed certificate to the root certificate tree.  This enables the server to create a secure connection from a browser.

10     To add another layer of security the local server 110 loads multiple instances of a media processing browser plug-in 24 (e.g. flash, sliver light, etc…).   The local server 110 can easily load as many as 1,000 multiple instances of a media processing browser plug-in 24.  Each instance has embedded within it a unique encryption key as at 27.  Instead of loading multiple instances, the encryption key 27 can be injected into the plug-in component file if the plug-in libraries allow for custom code injection.

15

       When a browser creates a secure connection as at 26, the server 110 creates a unique session for the initiated connection, and then pairs the session with a media plug-in instance 24 and its embedded encryption key 27, or creates an encryption key 27 and injects it into the plug-in component file.  The plug-in component file 25 is then loaded into the browser 111.  The plug-in file 25 encrypts all the requests that come from the browser 111 via client-sided script and sends them to the server 110 via the encrypted

20

16

connection 26.  The unique encryption key 27 can also be a unique token used to sign the requests to validate them.

In order to retrieve the encryption key or token 27 one would have to decompile the plug-in file 25 served by the local server 110, and then re-establish a connection with the server 110 using a new "cracked" plug-in instance.  However, since the server 110 selects a different encryption key 27 with every session, the moment the new secured socket connection 26 is established the previous encryption key 27 expires.  This makes the encryption key 27 retrieved via decompiling worthless.

One of the primary concerns about using a local server to deliver content is the possibility of a "man in the middle attack" in which scenario malicious software could pose as a valid gateway and possibly intercept user data.  In order to avoid this form of attack, the present system employs methods that require the local server 110 to verify the authenticity of a valid gateway by presenting a valid server authentication identification 31 via the browser plug-in component 25.  The process is described in more detail hereinafter.

Every local gateway server 110 registers (as at 19) itself with the remote host 112 by creating a verification identification 31 that is linked to the public internet protocol of the local machine.  This verification identification 31 and its related public internet protocol are stored in a database 29 on the remote host 112.  When a web page 30 is loaded that will be using the local gateway server110, the browser 111 sends a request (as at 217) to the local server 110.  The server 110 responds by presenting its verification identification 31.

17

The browser 111 then sends a request (as at 218) with the verification identification 31 to the remote host 112.  If the verification identification 31 matches the internet protocol address and the verification identification stored in the remote database 29, the remote server 112 sends a response along pathway 218 validating the local

5    gateway server 110.  After verification, the browser 111 then proceeds to load (as at 26) the media plug-in 24 from the local server 110.  The media plug-in 24 then creates a secure connection 219 to the local gateway server 110 over which it will deliver data (e.g. music-based data).

Referencing Figure No. 6, the reader will consider a non-plug-in security

10   measure.  A method that does not require the use of a media plug-in according to the present invention involves having the client 2 send a request (as at 220) for registered session identification 113 from the gateway server 3 to validate its authenticity.  A session identification 114 is pre-registered (as at 221) by the gateway server and is invalid after a single authentication.

15   This requires that the gateway server 3 register multiple sessions 114 ahead of time, and each session identification 113 is valid only for a single validation.  The gateway server 3 presents (as at 222) the session identification 113 to the client 2.  The client 2 then validates (as at 223) the received session identification 115 with the verification server 116.  The verification server 116 matches (as at 224 and 225) the

20   session identification 115 sent by the client 2 with registered session identifications 114. If a match is found then the verification server 116 confirms (as at 224) to the client 2 the validity of the gateway server 3.

There are other alternative methods to guarantee a valid connection, including an operating system integration which would have a local domain name reserved for the gateway server so that other applications could not pose as a legitimate gateway server or through the creation of a transfer protocol for the transmission of data via such a system.

5   Both of these are possible solutions.  The custom protocol solution, however, requires different request formatting, as exemplified hereinafter:

rstp://domain.com/resource_directory/resource_name?var=123

(and not http://vertigo/domain.com/resource_directory/resource_name?var=123)

10   Another way to secure the system is to limit the content delivered via that system to media (music, images, video, etc) and restrict file distribution to content that is not related to the structure and code of a website or application.  This way it is more difficult to import malicious code since only media files are permitted.  This is done with security in mind.  In other words HTML, Javascript, CSS, PHP files etc… cannot be delivered via

15   the gateway server.  Another restraint is to have the client (browser) restrict the use of such a gateway or protocol if the website (structure, code and media) is loaded via https, and is sensitive.

Referencing Figure No. 1, the reader will consider certain data validity and security aspects according to the present invention.  One of the concerns in a data-origin agnostic CDN 144 is the validity of the data.  If, for instance, one of the peers has

20   corrupted data, or if someone were to create a malicious peer that registers files that are

19

unrelated to the original data, as a peer cached version of an original file, the reliability

and the usefulness of the system can be compromised.

This is why data fragmentation and validation methods must be included for the

system to be reliable and useful.  Thus, in order to keep a single peer from possibly

5   corrupting or purposefully replacing data in an inappropriate manner, it is preferable to

fragment the delivery of the data across multiple peers via certain data delivery

fragmentation means.  The data delivery fragmentation means according to the present

invention may be exemplified by a number of mechanisms.  Data delivery fragmentation,

for example, can be achieved by breaking the data 199 into packets or sub-streams as at

10   rows 117, 118, 119, and 120.  The fragmentation can be optimized to meet the needs of

the system.

The fragmentation can be done by simply limiting each peer's delivery to a

maximum of an exemplary third or a quarter of a certain media file.  This is managed

using the Resource Name Server or RNS 4 as discussed in more detail later below.

15   Along with data delivery fragmentation, each data file has with it a validation package for

a specific sector of the data as at columns 121, 122, 123, and 124.  This is done because

every peer that serves data must first cache the media before serving it again.

Accordingly, as an example, if the peer delivers data sub stream 117, it would also

deliver along with that data a validation package for sector 121 of the file.  This

20   validation package is a checksum created by a predetermined algorithm.

Therefore if the peer sending sub-stream 118 were to deliver data that was

corrupted or malicious, the receiving peer would be able to detect this by using the

validation checksum from the peer sending sub-stream 117 to validate the content

delivered by the peer sending sub-stream 118.  If the content cannot be validated the peer would send the data request to the original or data origin source.  The present invention further contemplates setting a minimum daily threshold of requests, which would enable such peer-to-peer data validation.  Otherwise, a validation server would serve the

5    checksums, and these checksums would be created at the first request passed to a gateway server for a resource.

Referencing Figure Nos. 4 and 5, the reader will comparatively consider certain differences between a Domain Name Server (DNS) and a Resource Name Server (RNS). The main difference between a DNS 130 and an RNS 4 is in how a request for a resource

10   is handled.  Within DNS 130 a request for a resource (as at 226) is resolved (as at 227) to a domain name 129 or a Start of Authority (SOA) 126 which has the specified resource 127 within a directory 128 of the SOA 126.  The client 2 receives (as at 228) the IP address of the SOA from the DNS, and then makes a request (as at 229) for the resource 127 from the SOA 126.

15   Within a Resource Names Server or RNS 4, the RNS 4 resolves (as at 202) the request (as at 201) for a resource to multiple machines that have the unique resource stored or cached.  Accordingly, the IP address of the SOA with the resource can be returned (as at 205) as a valid resource location, but also the IP address for peer cached resources.  In other words, within a DNS system a URL is more like the address of a

20   specific resource, within RNS 4, the URL 240 is treated as a unique identification linking a unique resource to multiple locations.

Certain means for resource indexing without file matching are depicted in Figure Nos. 14 and 15; and certain means for resource indexing with file matching are depicted

in Figure Nos. 16 and 17.  One of the primary issues that arise when dealing with

compliance is how to verify what is being played.  Metadata is often corrupted or

modified by the user.  Therefore to more effectively stream local media, one needs to

provide a way to verify with a very high degree of certainty that a media file or song on

5    the local drive corresponds to those stored in the cloud.

        This is done by using a metadata-independent file matching system or means, and

indexing all local files and matching them with cloud files.  There are two sources of files

that must be matched against the library according to the present invention, including (1)

those originating from other streaming providers or coming in from external clouds and

10    (2) those that are on the local machine.

        Referencing Figure No. 16, the process of progressive indexing 247 begins with a

request that comes in from a 3rd party client application.  This can be a stand-alone

desktop application as at 131 or a website playing through a browser as at 132.  The

application 131 or browser 132 passes along as at a properly formatted and valid URL (as

15    241 and 242) to the local gateway server (133).  The local gateway server 133 uses the

URL (as at 241 and 242) to retrieve the requested resource for streaming (as at 243 and

244) from the related clouds 245 and 246 (or related peer-to-peer network, or any

possible network based resource).  Once the resource has been downloaded for streaming

as at 243 and 244, the local server 133 begins the process of indexing as at 247 (with sub-

20    routines 248 – 252).  Local resource indexing 253 is generally depicted in Figure No. 17

(with sub-routines 254 – 258).

        Indexed Resource Request Processing 259 is generally depicted in Figure No. 18.

After a resource has been indexed, the following process occurs when subsequent

requests are made from 3rd party clients.  Assuming a media streaming service provider (as at 132) puts in a request 242 to the local server 133 using its standard URLs, the request 242 comes in and the local server 133 queries the local file system database 135 and the indexing server 134 to determine if the resource has been previously indexed.

5   (The URL is used to determine if it exists in the indexing server 134 or in the local file system 137).  In this case, the local server 133 determines that the resource has been indexed and is available on the peer-to-peer network 138.  The media is then retrieved from the peer-to-peer network 138 and served to the media streaming service provider (as at 132) for playback.

10   In another case, a media streaming service provider (as at 131) makes a similar request using a URL.  This time the server 133 determines by querying the local database that indicating that the resource is indexed and associated with a local file 137.  The server 133 then serves this file, for example, to a third party cloud-based music streamer (e.g. Spotify) (as at 131).  It is likely that systems or applications that access the local

15   gateway server (133) will pass all resources that will be needed during a session when a session starts.  The server 133 will then pull the associated fields from the resource indexing server (134).  This way all indexed data is stored locally for quick access and routing.

The gateway server according to the present invention provides certain means for

20   both smart routing and royalty reporting for data (e.g. music) transmission.  Given that music can be transmitted from multiple sources, the local gateway servers according to the present invention deliver both interactive and non-interactive music requests made by a client application and route the actual transmission from the optimal (e.g. (a) most price

23

efficient or (b) highest sound quality of source)  location both bandwidth costs and

royalty obligations.  Such a system results in a unique Compliance Engine or Compliance

Appliance allowing usage reports and royalty obligations to be generated from and across

multiple types of service platforms, meeting all rights holder requirements and standards.

5      Examples of transmission sources include but are not limited to: (1) A cloud-

based streamer; (2) A third party cloud-based storage provider who makes data purchases

available to the device owner; (3) Vertigo's cloud-based virtual locker (shielded under

512(c) of the Copyright Act); (4) Vertigo-licensed music driven by user/sub-service

matched data; (5) locally owned and stored music files available on the listener's device

10     or another owned and qualifying device connected via Wi-Fi; (6) transmission to a

mobile device from a linked PC; (7) Peer-to-peer owned files available for transmission

and routed in substitution of a file before it is streamed from No. 1, No. 3 and No. 4 listed

hereinabove.

A few examples of music routing and route-result reporting are as follows.

15     Referencing Figure No. 19, the reader will consider than when a listener is listening to a

non-interactive internet radio channel via a related streaming client (as at 140) (e.g. a

web-site or stand alone desktop application) and the internet radio service provider is

getting ready to stream (as at 230) a file 139 already stored and available on the listener's

device, the gateway server 141 according to the present invention matches (as at 231) the

20     indexed local file 139 with the Internet radio service provider's incoming request and

streams (as at 232) the file 139 instead of the play from the Internet radio service

provider's cloud as at 142.

24

Notably, all resources, whether local and remote, are indexed which enable quick matching.  After streaming 232, the use of the local file is reported as at 233 to the compliance server 143.  It is possible that labels could require that the Internet radio service provider pay a small fee when streaming 232 local files 139 since there is no way

5    of guaranteeing that they are not pirated.  As a result of the efficient resource allocation according to the server 141, the Internet radio service provider 140 would not have to pay bandwidth or pay for full licensing, and these cost savings can then be passed along to the Internet radio service provider.

Figure No. 20 attempts to depict a scenario when a listener is listening to a non-

10   interactive Internet radio service provider channel and the Internet radio service provider client 140 is getting ready to stream (as at 230) a file NOT available on the listener's device, but available on a peer 141 within a peer-to-peer network 144 according to the present invention.  There is no royalty savings to the Internet radio service provider but the peer-to-peer network 144 according to the present invention transmits as at 233 the

15   file 139 in substitution of the Internet radio service provider's file at a bandwidth savings to the Internet radio service provider.  The server 141 can then report at 233 which song was played to a compliance server 143 if needed.

Figure No. 21 attempts to depict the scenario when a listener creates a ten-song playlist in their media streaming service provider account as at 145 for a special event.

20   The listener happens to be a restaurant owner or manager and the event is a public event in a commercial environment.  The media streaming service provider account 145 does NOT allow for a commercial environment and while three of the songs are in fact available for download onto the local device via the listener's cloud storage locker, the

purchased media license agreement also does not allow for the transmission in a commercial environment.

A commercial licensing provider device 146 is installed on the premises with the legal rights to broadcast all 10 songs but there are only five of the requested playlist of ten songs available on the provider's locally installed device 146.  The system according to the present invention synchronizes the playlist made in the media streaming provider's media player 145 and matches (as at 231) the missing files to files available in the Vertigo cloud and transmits 234 the songs to the commercial licensing provider's device 146 per the provider's licensing agreement.  This transfer can come from Vertigo's peer-to-peer network 144 depending on bandwidth costs.  All transmission and streaming can be reported 233 by the server 141 (if needed) to a compliance server 143 to track the number of times a song was played.

In the scenario depicted in Figure No. 24, a streaming provider 147 requests that a song 151 be played on a mobile device 148.  The request is sent from a mobile device application 149 on the mobile device 148, and sent to remote server 150 according to the present invention.  If the mobile device 148 requesting 237 the song is linked as at 235 to a personal computer 152 that has the file stored locally, instead of routing the request for the song to the data origin server 147 (i.e. the server of the streaming provider), the request is sent to the personal computer 152 and streamed as at 236 from the personal computer 152 to the mobile device 148.  In such a situation no additional streaming rights would be required and no bandwidth cost incurred.  If the request 237 is sent to the remote server 150 according to the present invention, and the file does not exist on either

a linked personal computer 152 or cloud, the request 237 is sent as at 238 to the data origin 147 which data origin 147 can then stream 239 the file to the device 148.

In the scenario depicted in Figure No. 25, a streaming provider 147 requests that a song be played on a mobile device 148.  The request is sent from the mobile application 149 on the mobile device 148 and sent to remote server 150 according to the present invention.  If the mobile device 148 is requesting a song that was uploaded as at 240 to a cloud service 153 from a personal computer 152 to which the mobile device 148 is linked as at 235, the remote server 150 routes 236 the request 237 to the cloud locker or service 153.  In this case no licensing is required, but bandwidth charges would apply.  If the request 237 is sent to the remote server 150 according to the present invention, and the file does not exist on either a linked personal computer 152 or linked cloud 153, the request is sent as at 238 to the data origin 147, whereafter the file may be streamed as at 239 to the device 148.

The server 150 according to the present invention, and its smart music routing engine as described within the foregoing examples not only selects the song from the least expensive point of transmission with regard to bandwidth and royalty costs including but not limited to resources such as Example Nos. 1 – 6 above, but has also evaluated the compliance aspects of such a transmission and reports such activity for royalty purposes.

Referencing Figure Nos. 22 and 23, the reader will consider certain sub-licensing arrangements according to the present invention.  The use of the local gateway server for automated sub-licensing of streamed content is dependent on the terms of agreements between right holders and content deliverers (i.e. streaming service providers).  Described

27

below is a situation that is possible given that the streaming provider has an agreement that requires that they share a portion of revenue derived from streaming licensed media. There may be a requirement that such a license specifically allow the streaming provider to act as a wholesaler.

5    A first case scenario is depicted in Figure No. 22. In this case a streaming service provider 155 passes a request to the local gateway server 150 along with the request that the provider 155 must set certain parameters allowing the local server 150 to stream 241 at an optimal price. This would indicate that the server 150 may stream from a sublicensed account as at 156. In the diagram there are three sub-licensed accounts

10   referenced at 157, 158, and 159.

When the request comes in from the client application 155, the local server 150 determines as at 242 which sub-licensing account (as selected from accounts 157 – 159) has the optimal licensing cost for the given request 241. The song is then streamed 243 from the sub-licensors cloud (e.g. from account 157). The streaming provider is then

15   billed as at 244 on behalf of sub-licensor 157. The billing would include licensing costs and streaming costs based on the sub-licensors licensing agreement. The sub licensor then pays 245 the rights holder 160 the royalties and keeps monies necessary to cover the cost of streaming and profit derived from the transaction.

In a second case as depicted in Figure No. 23, the primary difference is seen in

20   how the cost of streaming is covered. Since the data is streamed 246 from a peer-to-peer network 161 according to the present invention, the fee associated with using the peer-to-peer network 161 is paid 247 to the service provider 162 owning the network 161 and then the costs of licensing are passed along 244 to the sub-licensor 157 who then pays

28

245 the royalties to the rights holder 160 and retains the profit derived from the transaction.

     The sub licensing cases above are possible because the local server 150 tracks and reports streams, namely, who streams from where (which sub licensor) and as a result can

5    properly route royalty payments.  The uniqueness of the system is not that is allows for such tracking, but that it is possible to access a peer-to-peer network and still report such usage.  The second case scenario presented above is only possible with a local gateway server 150, while the first scenario can happen with a standard server to server request, or some form of rewrite or redirect.

10    Certain licensing benefits/advantages by using local server content are evident according to the present invention.  In this regard, a local media use comes into play when a song exists on a local server controlled or owned by the end user of the service. This would be a title or album already in the user's personal media library account or any part of their local computer.  This content could have been placed there by purchase,

15    download or gift.  It is not the responsibility of the service provider or the owners of the present system/methodology to confirm the legal sourcing of the local files on an end user's computer.

     The streaming provider will not be making a duplication, distribution or performance of a locally controlled sound recording or musical work.  Therefore, no

20    rights are used and no additional license fee is needed for calculation or reporting.  The key is being able to quickly and accurately identify these tracks as to not interrupt the end user's experience.

The use of media from a server according to the present invention happens when a song that has been licensed at a more favorable rate from the owner's of the present system/methodology can be used in the place of a song from the streaming provider. This is made possible by licenses that are made directly with content controllers. These

5    new direct agreements offer a more transparent royalty structure and reporting process directly to the artist.

The direct licenses also take into account both interactive and non-interactive uses creating more of a "one-stop" relationship for online usage. The agreement will also offer a unique royalty payment that is calculated by the savings gained from delivery

10    efficiencies. There are currently no agreements that pass a portion of the savings created by shared files back to the industry.

The benefit of using these files to the streaming providers comes from the reduced royalty rate across interactive and non-interactive usage. All performances and listening hours calculated from the use of these titles will be carved out of the standard "full-rate"

15    royalty calculations and will be based on the more favorable rate.

The use of controlled peer-to-peer media happens when a file is located within the controlled user server's secure cache and can replace a file scheduled to play per the streaming providers data feed. While there is no cost savings from the royalty fees there is a delivery savings that will intern benefit the artists that are under the direct licenses

20    according to the present system and methodology. Therefore, the more titles that can come from this secure cache the more benefit to both the streaming providers and music industry.

Below is a breakout of a sample month of programming from a fictitious streaming provider.  The breakout is meant to show not only the savings involved with the use of the multi-sourced content but also how critical the unique compliance calculation process is to the overall savings process.

5   The compliance engine and reporting tool with have the ability to pull the following information:

1) Usage reports based on the unique specifications required by all Performing Rights Organizations.  These specifications include the following items.

   a.   Provide unique reports per platform (Stream Provider)

10   b.   Provide ability for revenue information to be securely entered based on platform type and per Streaming Provider

   c.   Usage reports per unique user session to create Average Listening Hour totals, Per play totals, and per listening session totals

   d.   Ability to aggregate all usage and revenue information  into separate usage

15   reports per SP per PRO

2) Usage specifications for Sound Exchange reporting and payments

   a.   Provide unique reports per platform (Stream Provider)

   b.   Provide ability for revenue information to be securely entered based on

20   platform type and per Streaming Provider

   c.   Usage reports per unique user session to create Average Listening Hour totals, Per play totals, and per listening session totals

31

     d.   Ability to aggregate all usage and revenue information  into separate usage reports per SP

3)  General usage specification for Record Labels and Publishers   - Used for Interactive uses.

4)  Rights Module "Compliance Dashboard" - Ability to batch change or individually change (per media asset) rights, royalty rate, clearance status and uses granted by content controller for various agreement types:

     a.   Record Label License Agreement

     b.   Residential License Agreement

     c.   Commercial License Agreement

     d.   Multiple Platform License Agreement

     e.   Bundled Rights Agreement

     f.   Royalty Sharing Agreement (Publishing Administration)

     g.   Waiver/gratis

5)  Ability to provide individual and aggregated account of all report requirements above across all separate platforms and services for the each of the following "Content Source Types"

     a.   100% Streaming Provider (SP) Content

     b.   Local Server Content

     c.   Controlled P2P Content

32

d.   Vertigo Licensed Content

6)   Royalty Calculation Engine - The system has the ability to calculate royalties owed by combining the usage data per date range, content source type and

5                   Streaming Provider based on rates entered into the Compliance Dashboard. The following calculation will be used for local server content carve outs. X/X+Y x (per play or streaming hour rate)  = total royalty.  X = Local Server Content  and Y = Streaming Provider Content

The ability to accurately calculate and report for all rights societies, store, source,

10    and calculate controlled and proprietary content uses, and incorporate delivery cost savings into the total overall royalty make this a one of a kind compliance service.

This portion of the document discloses how the local gateway server could be used to make traditional radio stations Internet streams more efficient and increase the

15    quality of the streamed audio.  The invention or rather this portion of the disclosure is focused on radio broadcasts which primarily play music as opposed to talk shows, sport broadcasts etc… Significant savings can be derived and the quality of the audio can be significantly improved due to the fact that music based radio broadcast are a mix of live audio and pre-recorded audio.

20    Significant saving and increases in audio quality can be achieved if  the pre-recorded audio can be separated from the live audio or studio mix and delivered to the local computer via a peer to peer network or through local file systems (a metadata file matching system would be used to ensure that the proper song is played).  The pre-

33

recorded audio and the studio mix could then be mixed on the local computer to ensure consistent broadcast content and quality.  The disclosure will explain how this can be achieved.

Existing methods for streaming radio via the Internet are generally depicted in

5    Figure No. 30.  Current methods for delivering radio streams via the Internet typically involve the use of a media playing device as at 163 (e.g. typically a personal computer) which plays pre-recorded audio (music tracks, advertisements, etc…) and outputs 248 the audio to a soundboard 164.  This audio is then mixed with the disc jockey's remarks and/or commentary and other live audio 165 that is input 249 into the soundboard 164 all

10    at a studio or recording system 170.

The soundboard mix is then output as at 250 to a computer 166 as a single stream of audio.  The computer 166 then compress the audio stream and outputs the audio stream to a compressed audio file 167 (this is usually an MP3 file).  This MP3 file does not have a set duration as the file is live streamed and new data is being appended to the end of the

15    file constantly.  This MP3 file is typically located on a content delivery network 168 and the computer 166 that compresses and trans-codes the audio stream appends 251 this file with new data as it compresses it.  The content delivery network 168 then distributes 252 this file to clients 169.  Again this is a simple system overview and is likely similar to most configurations on the market.

20    The gateway server enhanced system according to the present invention is generally depicted in Figure Nos. 26 – 29.  The enhanced system begins in a radio studio 170 and a computer 163 that output 248 pre-recorded audio to a soundboard 164.  The computer 163 according to the present invention would have certain event marker

34

association means as exemplified by proprietary software, which when installed or
applied allows…

1.   A disc jockey to queue songs for a broadcast; the software creates a song

5           queue 171 that is then distributed to clients 172, which clients 172 stream the

broadcast. The queue 171 contains songs, which the disc jockey plans to play

during the broadcast. The local server 184 pre-loads 253 these songs so that

when the disc jockey decides to play a song, the song will be available at the

client 172 for play back. These songs can be delivered via a remote content

10         delivery network client 173, a peer-to-peer network client 174 or matched and

streamed from a local file system 175.

2.   The software also compresses as at 256 the audio output 176 returning from

the soundboard 164. The software also imbeds event markers in the frame

15         headers 177 of the audio stream 179. Each MP3 audio stream/file 179

consists of audio frames 178, which audio frames 178 each have a header 177.

As new audio is added, new frames 178 are appended to the file. These

headers 177 are 32 bits long. Within each header 177 there is a bit reserved

for private application use. This bit would be set to "1" at the start of an

20         event, and set to "0" during regular streaming. This data would be embedded

into both streams 176 and/or 256 coming from the soundboard 164. Each

header 177 also contains bits that are informational only and do not affect

audio playback (e.g. "copyright", "original"). Each header 177 has at least 3

bits (including the private bit) which would not affect audio play-back.  These bits could be used to create an event ID.  The ID would be created by using these bits (following an event indicator bit) to create a combination of "0" and "1" to allow for enough unique ID's to accommodate enough events to fill 10

5   seconds of play-back.  Thus, if the frame header with the original even indicator bit is used along with the frame header directly following are used at total of at least 5 bits could be used to create at least 32 or $2^5$ unique markers. This should be more than enough unique markers to cover enough events for a possible 10-second lag.  If more markers are need, another header can be

10   added to increase the total to 256 from 32.  Since each event will have a unique marker within a 10 second time frame, these markers can be used to synchronize two separate streams (one which contains live audio only and the other which would be the full mix) to hand off and transition to a fully remotely mixed stream and a locally mixed stream (which would be a stream

15   of live audio streamed from the studio and pre-recorded audio mixed into the stream at event markers by the local server).  The event markers would also link to mixing instructions to mimic the audio mix from the studio.

3.   The application also creates an events queue.  This would be a queue of events

20   which will be matched to event markers based on the unique bit ID following the marker (as explained above).  These events would be recorded on the computer 163 which is compressing the audio, so that each event is registered at the exact frame 178 in which they occur, ensure that the timing of the

36

events is embedded into the live audio stream 256 at the exact place they

occur in the original studio mix 176.  These events will contain information on

    a.  What pre-recorded audio needs to be played at the event marker.

    b.  At which frame playback begins for the pre-recorded audio.

5        c.  At which Volume playback should begin.

    d.  And if the volume was being faded in, an equation that best fits the

        direction and the slope of volume fade in/out.  This will be used to

        mimic studio fade in/out.  This information could possibly be recorded

        by a peripheral fader 180 that allows the disc jockey to control 257 the

10        audio as it is output to the sound board 164 and report the changes in

        volume back to the computer 163.

    e.  The end of the event (this is typically required to mark when fade

        in/out stops).

    f.  And more… This is just an example of the most likely type of events.

15

    4.  The application would also update 258 the live audio stream file 181 and the

        full mix file 182 on the remote server or content delivery network 150.

Once the two streams 181 / 182 are recorded and encoded by the application

20  within the studio 170 on computer 163, both the files 181 / 182 are uploaded 258 to a

content delivery network or a remote server 185 for delivery 259 to clients 172.  Client

sided applications 183 (e.g. browsers, etc…) send requests for the radio stream by using a

properly formatted URL.  The URL is structured as a sub-domain of the primary domain

37

name, for instance a URL of this format could possibly be used to reference a radio

station stream radiostation.vertigomusic.com/[show id].  If the vertigo gateway server

184 has not been installed, this URL would refer the client to the fully mixed studio

stream 182 and would play the file in the same manner as a traditional Internet radio

5    stream (see above and Figure No. 30).

        If a vertigo gateway server 184 has been installed, the server 184 registers that

sub-domain name to itself and then handles all request to the sub-domain name from the

local client application 183.  In this case when a request for the stream is made by a client

application 183, the request is served 260 by the gateway server 184.  The gateway server

10   184 begins by serving the fully mixed stream 182 from the remote content delivery

network 185.  Once the stream begins the gateway server 184 requests the pre-recorded

audio queue 171 and begins caching 253 the pre-recorded audio from peer-to-peer 174,

remote content delivery network(s) 173, or local sources 175.  The gateway server 184

also loads 261 the events queue from a remote database 186, which is constantly updated

15   by the studio computer 163.  The gateway 184 would consistently receive updates of

events261 while the stream 181 is live.

        In order to transition from the full studio mix 182 to the live audio only stream

181, the gateway server 184 loads both streams 181 and 182 and only serves the full mix

182.  In order to ensure that the gateway server 184 and the mixing application 187 have

20   enough time to complete all tasks, the server 184 starts the stream 10-20 seconds from

live data reception, creating a custom lag which would be used to create time for the

system to execute the mixing and transition.  The gateway server 184 waits for an event

bit in the full studio mix 182 frame headers 177 to transition to the live audio stream 181.

38

The gateway server 184 aligns the two streams 182 / 181 at the event bit. This is done by matching the bit code following the event bit. If the bit code matches for both events, the events are considered matched, since only the last 10-15 seconds of a stream are searched. The 32 unique bit codes provide enough uniqueness to guarantee that the

5   matched events are in fact identical. Once event bits are matched, the gateway server 184 transitions from the full studio mix 182 to the live audio mix 181 at the frame 178 in which the event bit occurs. Using this method provides a seamless transition from stream to stream with frame-to-frame accuracy.

Once the gateway server 184 has transitioned to the live audio only stream 181, it

10   begins to follow the mixing instructions that are stored in the events database 186 when an event bit appears. Since only the last 10 – 15 seconds of the live stream are tracked for event bits, the bit code is used to locate the event data within the database 186 that matches the event bit code.

Thus, assuming the first event was for playback of the first song within the pre-

15   recorded audio queue 171, the application will already have cached at least 10 – 20% of the audio. In this case, the gateway server 184 passes the live audio stream 181 and the pre-recorded audio data 188 to an internal mixing application 187 (this can be a command line application like SoX or a custom built application).

The gateway server 184 also sends 261 the mixing data to the application which

20   mixes live audio stream 181 and the pre-recorded audio to mimic the full studio mix 182. This is done by using the data that is recorded at the studio 170 and associated with an event to mimic the disc jockey's fading and timing. The application 187 then outputs a new locally mixed file 189 which is then served to requesting client 183. This can all be

39

done seamlessly because the server can create a significant lag between live data transmission and serving data to the client application.  As long as this lag is create at the outset of serving the audio this lag timeframe can be used to mix and prepare the audio.

      In cases where a radio station or show will only be integrating advertisements and

5    will not be mixing a live stream with pre-recorded audio (e.g. music), the system contemplates certain advertisement integration means, which will work as described below, and as generally depicted in Figure Nos. 31 and 32.

      A radio show can be recorded on a computer 190 through software 191 which would encode the audio and mark when an advertisement or other pre-recorded file needs

10   to be played.  Advertisement markers are placed after a predetermined time of audio silence.  In order to achieve this, the encoding application 191 creates a lag 300 a few seconds longer then the predetermined advertisement indicating audio silence 301.  Thus, if a radio personality is recording and needs to insert an advertisement break, the radio personality simply mutes or silences the microphone for 5 seconds as at 301 (for

15   example).  After 5 seconds of silence (as at 301) (as an example) the encoding application marks the audio stream not at the end 302 of the 5 seconds of silence, but at the beginning 303.  This way the end listener does not hear the silence but an advertisement.

      Once the pre-determined timeframe of silence has passed the application 191 prompts the radio personality to indicate how long advertisements should be played, and

20   advertisements are integrated according to the timeframe selected.  This audio stream is then encoded and marked by the application 191 and uploaded to the server or content delivery network 192 of the radio personality's choosing.

      When the listener from their device 193 requests through a client application 194

(e.g. a browser or mobile app) for the radio stream, the request is sent 270 to a gateway server 195. The gateway server 195 the sends 271 the request for the audio stream to the cloud/server 192, which responds and delivers 272 the audio to the gateway server 195.

The gateway server 195 then delivers 273 the audio stream to the client 194. The gateway server 195 creates a small buffer (2-5 seconds of data), so that when an advertisement marker is identified within the audio stream, the gateway server 195 can fetch 274 an appropriate advertisement from the advertisement server 196 and integrate it at the specified time. In a mobile application, the application would have to integrate the advertisements without a gateway server 194. The mobile application would have to have it integrated into the application's source code. So it would have code that would detect an advertisement marker, and then integrate an advertisement at the start of the advertisement marker.

While the above description contains much specificity, this specificity should not be construed as limitations on the scope of the invention, but rather as an exemplification of the invention. For example, it is contemplated that the present invention essentially provides a peer-to-peer (P2P) content delivery network for delivering (e.g. streaming) select data files to an end user.

The so-called P2P Content Delivery Network (CDN) or P2P CDN according to the present invention preferably comprises a client as at 2, a P2P gateway server as at 3, a Resource Name Server (RNS) as at 4, and a computer-populated network, which computer populated network may comprise local servers, peer-connected servers, cloud

lockers, cloud storage, cloud media, and/or commercial (music) streaming service provide infrastructure(s).

The client is in communication with the P2P gateway server, and the P2P gateway server is in communication with the RNS and the computer-populated network.  The

5   RNS basically functions to cache data resource locations within the computer-populated network and resolve resource requests with optimal (e.g. (a) most price efficient or (b) highest sound quality of source) data resource locations within the computer-populated network.

The P2P gateway server requests and receives optimal data resource locations via

10   the RNS; requests and receives data files from the computer-populated network by way of the optimal data resource locations, and processes received data files for data file delivery to the client and the end user.

The content delivery network or CDN according to the present invention incorporates a number of optional but preferably add-on's the basic system of

15   components, including certain client and/or server authentication means for verifying client and/or server authenticity as discussed in some greater detail hereinabove.  Further, in an effort to enhance delivery of non-corrupt data streams, the present invention contemplates certain data delivery fragmentation means as also discussed hereinabove.

Recourse locations may be preferably indexed via certain resource indexing

20   means cooperable in connection with the RNS for further enhancing network or method efficiency.  Notably, the resource indexing means may preferably comprise certain file matching means for quickly and effectively matching data files independently from data file metadata.  The file matching means according to the present invention are more fully

42

specified in allowed U.S. Patent Application No. 13/065,254, now issued U.S. Patent No. 8,589,171 to which these specifications claim a benefit, and which specifications have been incorporated by reference thereto.

The file matching means according to the present invention may thus preferably

5    comprise certain data extraction means, certain summary statistic derivation means, certain custom marker generation means, certain custom marker association means, and certain custom marker accessing means.

The data extracting means extract waveform data from a first data file.  The extracted waveform data comprise length segment values, which values are extracted

10    relative to a data extraction baseline and comprise trough-to-baseline and peak-to-baseline length segment values.  The summary statistic derivation means derive summary statistics from the extracted waveform data, which summary statistics are derived from the length segment values, and comprise trough-to-baseline and peak-to-baseline length segment statistics.

15    The custom marker generation means generate a custom marker based on the derived summary statistics, and the customer marker association means associate the custom marker with the first data file thereby constructing a custom marked data file. The custom marker accessing means access the custom marker when comparing a second data file to the marked data file for rendering a positive data file match.

20    The P2P content delivery network may further comprise certain event marker association means for associating event markers in frame headers of the data files for enhancing data file transmission as discussed in more detail hereinabove.  In this last regard, the reader will recall the present invention further contemplates certain

43

advertisement integration means, which means may be further employed for integrating advertisement content into data files via the specified event marker association means.

Given the data origin-agnostic character of the present invention, a data-routing governance system is further contemplated. The data-routing governance system

5    according to the present invention preferably comprises, in combination, a data-routing compliance appliance or engine and the described content delivery network. Accordingly, the data-routing compliance appliance is in communication with the content delivery network, which content delivery network comprises a plurality of data sources, which sources comprise or store data files.

10    The content delivery network delivers select data files to an end user from an optimal data source location, which optimal data source location is selected from the group consisting of the data sources. The compliance appliance or engine according to the present invention thus provides (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting of data file transmissions.

15    Essentially, the present invention may be said to provide functionality for (1) delivering an indirect request stream from a local server (e.g. digital radio as exemplified by PANDORA® radio); delivering an indirect request stream from a peer-connected server; delivering an indirect request stream from a second direct request source (e.g. iTunes Match or Spotify or cloud locker like DropBox or any media in the cloud); delivering an

20    indirect request stream from a peer-connected server based on a second direct request source's right to play or stream; delivering a direct request stream from a second direct request source based upon (a) price efficiency or (b) sound quality of source; and (6) delivering a direct request stream from a peer-connected source based upon a second

44

direct request source's right to play or stream.  Given the data origin-agnostic or cloud-agnostic aspects of the present system, the system further provides (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting where delivery of content is sourced from a secondary source other than the original requested source

5    service including examples 1 – 6 above.

The foregoing specifications are further believed to support certain origin-agnostic data delivery methodology for optimally (e.g. cost effectively) delivering select data to an end user in a computer-populated environment.  The origin-agnostic data delivery method according to the present invention may be said to preferably comprise

10   the steps of: communicating a client, a peer-to-peer (P2P) gateway server, and a Resource Name Server (RNS) with a computer-populated network; and caching data resource locations within the computer-populated network via the RNS.

Optimal data resource locations may be requested by the P2P gateway server via the client from the RNS-cached data resource locations, which resource requests are

15   resolved with optimal resource locations via the RNS.  The optimal resource locations are received by the P2P gateway server via the RNS whereafter data files from the computer-populated network are requested by way of or as enabled by the received optimal resource locations.  The requested data files are then transmitted (i.e. sent and received) and processing for data file delivery to the client.

20   Accordingly, although the invention has been described by reference to certain preferred and alternative embodiments, and certain methodology, it is not intended that the novel disclosures herein presented be limited thereby, but that modifications thereof

are intended to be included as falling within the broad scope and spirit of the foregoing

disclosure, the following claims and the appended drawings.

We claim:

1. A peer-to-peer (P2P) content delivery network, the content delivery network for delivering select data files to a user, the content delivery network comprising:

    a client, a P2P gateway server, and a Resource Name Server (RNS) in communication with a computer-populated network, the RNS for (1) caching data resource locations within the computer-populated network and (2) resolving resource requests with optimal data resource locations within the computer-populated network, the gateway server for (1) requesting and receiving optimal data resource locations via the RNS, (2) requesting and receiving data files from the computer-populated network via the optimal data resource locations, and (3) processing received data files for data file delivery to the client.

2. The P2P content delivery network of claim 1 comprising client authentication means, the client authentication means for verifying client authenticity.

3. The P2P content delivery network of claim 1 comprising server authentication means, the server authentication means for verifying server authenticity.

4. The P2P content delivery network of claim 1 comprising data delivery fragmentation means, the data delivery fragmentation means for enhancing delivery of non-corrupt data streams.

5. The P2P content delivery network of claim 1 comprising resource indexing

47

means, the resource indexing means for indexing resource locations and thus for enhancing network efficiency of the P2P content delivery network.

6.  The P2P content delivery network of claim 5 wherein the resource indexing means comprise file matching means, the file matching means for matching data files independently from data file metadata, the file matching means thus for enhancing network efficiency of the P2P content delivery network.

7.  The P2P content delivery network of claim 1 comprising (a) industry rights management means (b) compliance monitoring means and/or (c) compliance reporting means, said means for managing, monitoring and/or reporting data file transmission.

8.  The P2P content delivery network of claim 1 comprising event marker association means, the event marker association means for associating event markers in frame headers of the data files, the event marker association means for enhancing data file transmission.

9.  The P2P content delivery network of claim 8 comprising advertisement integration means, the advertisement integration means for integrating advertisement content into data files via said event marker association means.

10. In a computer-populated environment, an origin-agnostic data delivery method for

48

optimally delivering select data files to an end user, the origin-agnostic data

delivery method comprising the steps of:

communicating a client, a peer-to-peer (P2P) gateway server, and a

Resource Name Server (RNS) with a computer-populated network;

5        caching data resource locations within the computer-populated network

via the RNS;

requesting optimal data resource locations by the P2P gateway server from

RNS-cached data resource locations;

resolving resource requests with optimal resource locations via the RNS;

10        receiving optimal resource locations at the P2P gateway server via the

RNS;

requesting select data files from the computer-populated network via the

received optimal resource locations;

transmitting requested select data files; and

15        processing transmitted select data files for select data file delivery to the

client.


11. The origin-agnostic data delivery method of claim 10 comprising the step of

verifying client authenticity via client authentication means.

20

12. The origin-agnostic data delivery method of claim 10 comprising the step of

verifying server authenticity via server authentication means.

49

13. The origin-agnostic data delivery method of claim 10 comprising the step of fragmenting data files during data file delivery via data delivery fragmentation means, the data delivery fragmentation means for enhancing delivery of non-corrupt data streams.

5

14. The origin-agnostic data delivery method of claim 10 comprising the step of indexing recourse locations via resource indexing means, the resource indexing means for enhancing method efficiency.

10

15. The origin-agnostic data delivery method of claim 14 comprising the step of matching data files independently from data file metadata via file matching means, the file matching means for enhancing method efficiency.

16. The origin-agnostic data delivery method of claim 10 comprising the step(s) of

15

providing (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting for data file transmission.

17. The origin-agnostic data delivery method of claim 10 comprising the step of associating event markers in frame headers of the data files via event marker

20

association means, the event marker association means for enhancing data file transmission.

18. The origin-agnostic data delivery method of claim 17 comprising the step of

50

integrating advertisement content into data files via the event marker association means.

19. The origin-agnostic data delivery method of claim 15 wherein the step of matching data files comprises the steps of:

extracting waveform data from a first data file via data extraction means associated, the extracted waveform data comprising length segment values, the length segment values being extracted relative to a data extraction baseline and comprising trough-to-baseline and peak-to-baseline length segment values;

deriving summary statistics from the extracted waveform data, the summary statistics being derived from the length segment values, the summary statistics comprising trough-to-baseline and peak-to-baseline length segment statistics;

generating a custom marker based on the derived summary statistics;

associating the custom marker with the first data file thereby constructing a custom marked data file; and

accessing the custom marker when comparing a second data file to the custom marked data file for rendering a positive media file match.

20. A data-routing governance system, the data-routing governance system, comprising, in combination, a data-routing compliance appliance and a content delivery network, the data-routing compliance appliance being in communication with the content delivery network, the content delivery network comprising a

51

plurality of data sources, the data sources comprising data files, the content delivery network for delivering select data files to an end user from an optimal data source location, the optimal data source location being selected from the group consisting of the data sources, the compliance appliance providing (a) industry rights management (b) compliance monitoring and/or (c) compliance reporting of data file transmissions.

5

ABSTRACT

A peer-to-peer (P2P) content delivery network delivers select data files to an end user.  The content delivery network provides a client, a P2P gateway server, and a

5   Resource Name Server (RNS) within a computer-populated network.  The RNS caches data resource locations within the computer-populated network and resolves resource requests with optimal data resource locations within the computer-populated network. The gateway server requests and receives optimal data resource locations via the RNS; requests and receives data files from the computer-populated network via the optimal

10   data resource locations; and processing received data files for data file delivery to the client.  The network thus enables an origin-agnostic data delivery method for optimally delivering select data files to an end user.  A data-routing governance or management utility governs/manages the content delivery network and associated methodology for providing industry rights management, compliance monitoring, and/or compliance

15   reporting of data file transmissions.

Figure 1

Figure 2



Figure 3



Figure 4



Figure 5



Figure 6



Figure 7



Figure 8



Figure 9



Figure 10



Figure 11



Figure 12



Figure 13



## Figure 14



Client send request for resource to gateway server

Gateway server resolves Resource name (URL) With RNS

Gateway receives Resource location (in This case it will be the original source since no other peer Has cached the resource)

Gateway delivers Media to requesting client

The gateway holds the resource within Its cache for a pre-determine period of Time (probably 24 hrs). It Delivers the sub-streams requested by other peers within the network. It also keeps its record within the RNS updated while the resource is cached..

Gateway then Registers every individual Sub-stream of the media and The IP address of the local machine To the resource URL

The Gateway caches And prepares Media for P2P delivery

## Figure 15

Client send request for resource to gateway server

Gateway server resolves Resource name (URL) With RNS

Gateway receives Resource locations from Peer And the original source. The Gateway manages the delivery Of the resource alternating between origin and Peer resources depending on connection

Gateway validates (see H in write-up) peer resources and delivers Media to requesting client

The gateway holds the resource within Its cache for a pre-determine period of Time (probably 24 hrs). It Delivers the sub-streams requested by other peers within the network. It also keeps its record within the RNS updated while the resource is cached..

The Gateway then Registers every individual Sub-stream of the media and The IP address of the local machine To the resource URL

The Gateway caches And prepares Media for P2P delivery

Figure 16



**248**
*Cloud resource Downloaded During streaming*

**249**
*Matching Metrics Derived from Resource by local Server (13).*

**250**
*Resource URL (241/242) And Metrics are Sent to Indexing Server (134).*

**251**
*Resource Matched to 133 resource, Or identified as Unique and uploaded*

**252**
*The Resource ID Of 133 Resource is Associated with External resource URL (241/242) (indexing complete)*

Figure 17

134

133

136

253

135

**254**
*Server (133)
Searches local
File system, and
Retrieves matching
Metric from all music
File on the local file
system*

**255**
*The server
Sends 133
Matching metrics
To indexing
Server 134*

**256**
*Local resource
Matched to
133 resource,
Or identified as
Unique and
uploaded*

**257**
*Indexing server (134)
Returns) resource
ID and all
associated URL's
(See Cloud
Indexing)*

**258**
*All returned data
Is stored in a local DB
The local path to the
Matched file is
Associated with the
Resource ID in the
Local DB 135*

Figure 18

Figure 19

Figure 20

Figure 21



143

233

141

146          231          230          145

234

144

Figure 22



Figure 23



Figure 24





Figure 25

Figure 26



Figure 27





Figure 29

| (177) | (177) | (177) | (177) | (177) | (177) |
|-------|-------|-------|-------|-------|-------|
| (178) | (178) | (178) | (178) | (178) | (178) |

(179)

# Figure 30



Figure 31



Figure 32



301     300

302     303



Figure 33

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H Leekley |
| **Filer:** | Charles F. Meroni Jr./Christopher J. Scott |
| **Attorney Docket Number:** | 12113 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 70 | 70 |
| Utility Search Fee | 2111 | 1 | 300 | 300 |
| Utility Examination Fee | 2311 | 1 | 360 | 360 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **730** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 17592273 |
| **Application Number:** | 14099348 |
| **International Application Number:** | |
| **Confirmation Number:** | 4880 |
| **Title of Invention:** | PEER-TO-PEER CONTENT DELIVERY NETWORK, METHOD, AND MANAGER |
| **First Named Inventor/Applicant Name:** | Gregory H Leekley |
| **Correspondence Address:** | Charles F. Meroni, Jr.<br>Meroni & Meroni, P.C.<br>P.O. Box 309<br>-<br>Barrington            IL            60011<br>US            847.304.1500<br>meronilaw@ameritech.net |
| **Filer:** | Charles F. Meroni Jr./Christopher J. Scott |
| **Filer Authorized By:** | Charles F. Meroni Jr. |
| **Attorney Docket Number:** | 12113 |
| **Receipt Date:** | 06-DEC-2013 |
| **Filing Date:** | |
| **Time Stamp:** | 16:29:52 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $730 |

| RAM confirmation Number | 3656 |
|---|---|
| Deposit Account | 502063 |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | UtilTrans.pdf | 177060<br>cd8cf663b64eddb11281e626ad49b657630 83c47 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Fee Worksheet (SB06) | FeeTrans.pdf | 127055<br>bfd05b7d2360ba0f3914e32fd7d3b396b7e a349c | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Application Data Sheet | ADS.pdf | 1289509<br>6940fcd726aee9a4a4b12d1e2fd2ed48d65 0302a | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Oath or Declaration filed | Declaration.pdf | 4490860<br>c3fb0bf99ea05986200d14f6590e451a58f5 1263 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | Power of Attorney | POA.pdf | 7898725<br>930415b93439127f1189e27d0569515a617 1030e | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Information Disclosure Statement (IDS) Form (SB08) | IDS.pdf | 7876704<br>0194ea93505d12a65e0591205d9862d831 007bd0 | no | 5 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 7 | Specification | PatAppSpecs.pdf | 159665<br>01e7272c7494c853e7efbbcaad76b648025 d1cfa | no | 46 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |

| 8 | Claims | PatAppClaims.pdf | 21050<br><br>e1b07cc383c02729bea4e63d0d8be43e25dce509 | no | 6 |
|---|--------|------------------|---------------|-----|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 9 | Abstract | PatAppAbstract.pdf | 8778<br><br>6096d94b3719bbdc24acced1aad8c073038aa7d3 | no | 1 |
|---|----------|--------------------|--------------|-----|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 10 | Drawings-only black and white line drawings | PatAppDrawings.pdf | 165768<br><br>e76e174b8833abc563f3103ac5c33c18fdf8216a | no | 30 |
|----|---------------------------------------------|--------------------|---------------|-----|----|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 11 | Fee Worksheet (SB06) | fee-info.pdf | 33078<br><br>42d39e0aaacadf8d6a320ae3bc809954120eba31 | no | 2 |
|----|----------------------|--------------|--------------|-----|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | **Total Files Size (in bytes):** | 22248252 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

DocCode - SCORE

# SCORE Placeholder Sheet for IFW Content

**Application Number: 14099348**          **Document Date: 12/06/2013**

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above. This content is stored in the SCORE database.

- Drawings – Other than Black and White Line Drawings

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist. The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

To access the documents in the SCORE database, refer to instructions below.

At the time of document entry (noted above):
- Examiners may access SCORE content via the eDAN interface.
- Other USPTO employees can bookmark the current SCORE URL (http://Score.uspto.gov/ScoreAccessWeb/).
- External customers may access SCORE content via the Public and Private PAIR interfaces.

Form Revision Date: September 30, 2013

# EXHIBIT B

# DEPOSITION OF ALAIN VILLENEUVE

# CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY PER LR 26.2

# REDACTED IN ITS ENTIRETY

EXHIBIT C

EXHIBIT 18 FROM DEPOSITION OF ALAIN VILLENEUVE

CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY PER LR 26.2

# REDACTED IN ITS ENTIRETY

# EXHIBIT D

## Correspondence between K. Naroozi and A. Villeneuve

Sent at: 7/9/2021 5:56:27 PM

# RE: Vertigo Media, Inc. and Remote Media LLC v. Earbuds Inc., C.A. No. 21-120-MN

From: Kayvan Noroozi <kayvan@nooozipc.com>
  To: Alain Villeneuve <avilleneuve@duanemorris.com>
  Cc: Douglas L. Bridges <doug@nooozipc.com>, Tracey E. Timlin <ttimlin@duanemorris.com>, Nancy Lopez <nlopez@ashbygeddes.com>, John E. Munro <jemunro@duanemorris.com>, John G. Day <jday@ashbygeddes.com>, Michele L. Kipp <mkipp@ashbygeddes.com>, Andrew C. Mayo <amayo@ashbygeddes.com>

Alain,

Plaintiffs will not be permitted to present new evidence from a "rebuttal" witness after our opposition when no evidence and no witness has been provided to date. You brought a motion. Your evidence comes with your motion to prove up your entitlement to the extraordinary relief sought, not for the first time in a reply brief. Plaintiffs seek to throw around vague and incoherent allegations, see what Defendant says, and then try to pivot from there. That approach won't work. We've put Plaintiffs on repeated notice of the numerous deficiencies and failures in their case, which continue to mount.

As for your request for further discovery, we will respond separately in detail. However, if Plaintiffs feel that they do not know enough about the accused systems to state their infringement allegations with particularity and through a witness, then Plaintiffs certainly should not have brought a motion for preliminary injunction.

Plaintiffs have not presented a prima facie case of infringement, as our opposition will demonstrate. A prima facie case requires evidence, and specificity as to what exact component(s) of the accused systems and products meet each and every limitation and how. Plaintiffs have neither provided any evidence nor even specific allegations mapping their asserted claims to the accused systems. Plaintiffs' claim charts are replete with typos, vagueries, and grammatically incoherent sentences that seem half finished.

If Plaintiffs want to produce a deponent prior to our opposition on the requested issues identified in this correspondence, we are willing to discuss timing and process. Otherwise, Plaintiffs will bear the consequences of their failure and refusal to do so.

Best
Kayvan

Kayvan B. Noroozi
Noroozi PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
(310) 975-7074

Sent via Superhuman iOS

On Fri, Jul 9 2021 at 3:29 PM, Alain Villeneuve <AVilleneuve@duanemorris.com> wrote:

Kayvan:

Under the Supreme Court's new Octane standard of fees, holding a weak defensive claim and pushing without a justified non-infringement position is the road to fees, not trying to get to the merits. After 16 months, we have yet to see any credible defensive position as to why Earbuds does not infringe. The functionality and public information published by Earbuds itself on its own website is sufficient to clearly articulate infringement contentions in massive claim charts offered with great level of details.

After we received your technical information we will see if this casts any shadow over the prima facie case already made. What is certain is that in the event a technical witness is needed at a hearing or to rebut any non-infringement position (assuming such technical expert is able to see the technical information), we will gladly provide Earbuds a chance to depose that rebuttal individual even if our schedule does not provide for one. In the event a rebuttal deponent is needed, we will not oppose the filing of a sur-reply if you want to file one in an effort of fairness. Truth is, we want our judge well informed and our only goal is to get to the case.

What I suggest is that you send our way the technical information ASAP, if any supports a non-infringement position which you plan to articulate, please make sure we can use it internally quickly with any technical witness and we could coordinate the deposition of your deponent along with any rebuttal deponent.

I will be in Alaska for 3 days and return Thursday.

Sincerely,

Alain

---

**From:** Kayvan Noroozi <kayvan@noroozipc.com>
**Sent:** Friday, July 9, 2021 12:33 PM
**To:** Villeneuve, Alain <AVilleneuve@duanemorris.com>
**Cc:** Douglas L. Bridges <doug@noroozipc.com>; Timlin, Tracey E. <TTimlin@duanemorris.com>; Nancy Lopez <nlopez@ashbygeddes.com>; Munro, John E. <JEMunro@duanemorris.com>; John G. Day <jday@ashbygeddes.com>; Michele L. Kipp <mkipp@ashbygeddes.com>; Andrew C. Mayo <amayo@ashbygeddes.com>
**Subject:** RE: Vertigo Media, Inc. and Remote Media LLC v. Earbuds Inc., C.A. No. 21-120-MN

Counsel,

You are the only declarant who has provided any alleged "evidence" in support of the motion for preliminary injunction. At your deposition, you stated that you could not testify to the substance of Plaintiffs' infringement allegations. As such, there is currently no evidence of infringement and no witnesses who can provide such evidence. Attorney claim charts are not evidence. They are allegations. If Plaintiffs continue to refuse to provide any witness to attest to their infringement allegations, that will certainly be noted to the Court in our opposition brief, and our ultimate motion for fees and sanctions.

Best

Kayvan


Kayvan B. Noroozi

Noroozi PC

11601 Wilshire Blvd., Suite 2170

Los Angeles, CA 90025

(310) 975-7074



Sent via Superhuman iOS


On Fri, Jul 9 2021 at 12:21 PM, Alain Villeneuve <AVilleneuve@duanemorris.com> wrote:

Sir:


Our case order (1:21-cv-00120-MN, Dkt.20, ¶ 4) provides that depositions of "declarants" shall take place "between June 22, 2021 and June 25, 2021." A single deposition was notified by Earbuds of one of the two declarants. We made ourselves available for the entire duration and Earbuds took the deposition on the first day, namely June 22. Earbuds did not notify us of any issue or the need for further discovery. To our complete surprise, we received on Wednesday, June 30, 2021, an untimely request for a non-declarant (see attached). This is eight days after the deposition and five days after the close of the period. Nothing justifies any delay. As you know, we are on a tight PI schedule and this is highly prejudicial to Vertigo.

The request is also made highly burdensome by the fact the order fixed document production of Earbuds to Vertigo by June 18, 2021, <u>before</u> the deposition window. As of today, as you have read earlier, we have yet to receive any technical information requested. We remind you that on July 2, 2021, we quickly articulated our response to this demand and concluded:

"We have articulated our legal reasoning above. If you believe the rules and/or law warrants a different conclusion, <u>we kindly ask that you articulate the legal basis of such an argument</u>. This will allow us to avoid motion practice and associated delays." (emphasis added).

We have yet to receive any legal basis why your untimely demand for a non-deponent is warranted in light of a failure to provide technical documents.

Your brief is now due on July 21, 2021.

Sincerely,

Alain



www.duanemorris.com

**Alain Villeneuve**
Partner

Duane Morris LLP                 **P:** +1 312 499 6739
190 South LaSalle Street, Suite 3700   **F:** +1 312 277 3967
Chicago, IL 60603-3433           **C:** +1 312 404 1569

E-MAIL | BIO | VCARD

**From:** Kayvan Noroozi <kayvan@noroozipc.com>
**Sent:** Friday, July 9, 2021 11:13 AM
**To:** Villeneuve, Alain <AVilleneuve@duanemorris.com>
**Cc:** Douglas L. Bridges <doug@noroozipc.com>; Timlin, Tracey E. <TTimlin@duanemorris.com>; Nancy Lopez <nlopez@ashbygeddes.com>; Munro, John E. <JEMunro@duanemorris.com>; John G. Day <jday@ashbygeddes.com>; Michele L. Kipp <mkipp@ashbygeddes.com>; Andrew C. Mayo <amayo@ashbygeddes.com>
**Subject:** RE: Vertigo Media, Inc. and Remote Media LLC v. Earbuds Inc., C.A. No. 21-120-MN

Counsel,

I write once again regarding the below. Please respond.

Best

Kayvan

Kayvan B. Noroozi

Noroozi PC

11601 Wilshire Blvd., Suite 2170

Los Angeles, CA 90025

(310) 975-7074

Sent via Superhuman

On Wed, Jul 07, 2021 at 12:15 PM, Kayvan Noroozi <kayvan@noroozipc.com> wrote:

> Counsel,
>
> I write to follow up regarding the question below. Will Plaintiffs produce the requested competent and qualified witness who can testify with specificity and in detail to (a) Plaintiffs' claim scope positions and (b) Plaintiffs' infringement allegations as to how the accused products/systems supposedly meet the claims? Our response date is quickly approaching and we require Plaintiffs' response.
>
> Best
>
> Kayvan
>
> Kayvan B. Noroozi
>
> Noroozi PC
>
> 11601 Wilshire Blvd., Suite 2170
>
> Los Angeles, CA 90025
>
> (310) 975-7074
>
> Sent via Superhuman

On Fri, Jul 02, 2021 at 10:12 AM, Kayvan Noroozi <kayvan@noroozipc.com> wrote:

> Counsel,
>
> Plaintiffs have presented infringement allegations without offering any witness who can testify to Plaintiffs' infringement theories, their basis, and their scope. No witness has ever attested to those allegations, even by way of a sworn declaration. Plaintiffs cannot put forth allegations in support of a preliminary injunction request without providing a witness who will testify under oath and subject him or herself to cross-examination. Your email appears to indicate Plaintiffs will not produce any such witness. Please confirm if that is Plaintiffs position.
>
> Best
>
> Kayvan

Kayvan B. Noroozi



11601 Wilshire Blvd., Suite 2170

Los Angeles, CA 90025

(310) 975-7074

Sent via Superhuman iOS

On Fri, Jul 2 2021 at 9:24 AM, Alain Villeneuve <AVilleneuve@duanemorris.com> wrote:

Counsel,

In response to your communication dated June 30, 2021, in which Earbuds Inc. ("Earbuds") requests to depose additional witness(es), Vertigo Media, Inc. ("Vertigo") and Remote Media LLC ("Remote Media") (Vertigo and Remote Media collectively, "Plaintiffs") oppose the requested revision to the preliminary discovery schedule agreed to by both parties for the reasons set forth below.

First, Earbuds' reason for additional discovery appears to be that Earbuds is unsatisfied with the deposition of Declarant, Alain Villeneuve. When the parties agreed to the preliminary discovery schedule (D.I. #19), Earbuds was aware of the identity of Plaintiffs' Declarants. Earbuds was also aware the Alain Villeneuve is counsel of record in this case and that there are limitations on discovery and depositions of opposing counsel. See, e.g., Smith ex rel. Smith v. United States, 193 F.R.D. 201 (D. Del. 2000); Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986). As such, Earbuds cannot be surprised by Mr. Villeneuve's decision to decline to answer questions related to privileged and protected information, such as Plaintiffs' theories of infringement.

Additionally, Earbuds has been on notice of Plaintiffs' claims of infringement for more than a year and Earbuds' current counsel has had Plaintiffs' preliminary claim charts since, at least, mid-February of 2021. Plaintiffs' claims of infringement have been substantially unchanged and are based on publicly available information. Earbuds' production under the preliminary discovery schedule has not significantly added to this information despite Plaintiffs' targeted discovery requests. Thus, Earbuds has had ample time to review

Plaintiffs' preliminary claim charts in advance of agreeing to the preliminary discovery schedule such that additional discovery at this time is unwarranted.

Lastly, Earbuds' request for an additional witness appears to request discovery of information subject to protection under one or more privileges, including the work product doctrine.  See Hickman v. Taylor, 329 U.S. 495 (1947).  Therefore, Plaintiffs do not believe the request for additional discovery is warranted.

We have articulated our legal reasoning above. If you believe the rules and/or law warrants a different conclusion, we kindly ask that you articulate the legal basis of such an argument. This will allow us to avoid motion practice and associated delays.

We hope you have a happy 4th of July.

Alain Villeneuve



www.duanemorris.com

**Alain Villeneuve**
Partner

| Duane Morris LLP | **P:** +1 312 499 6739 |
| 190 South LaSalle Street, Suite 3700 | **F:** +1 312 277 3967 |
| Chicago, IL 60603-3433 | **C:** +1 312 404 1569 |

E-MAIL | BIO | VCARD

**From:** Douglas L. Bridges <doug@noroozipc.com>
**Sent:** Thursday, July 1, 2021 3:55 PM
**To:** Villeneuve, Alain <AVilleneuve@duanemorris.com>
**Cc:** Timlin, Tracey E. <TTimlin@duanemorris.com>; Lopez, Nancy <nlopez@ashbygeddes.com>; Munro, John E. <JEMunro@duanemorris.com>; Day, John G. <jday@ashbygeddes.com>; Kayvan Noroozi <kayvan@noroozipc.com>; Kipp, Michele L. <mkipp@ashbygeddes.com>; Mayo, Andrew C. <amayo@ashbygeddes.com>; Renck, Richard L. <RLRenck@duanemorris.com>
**Subject:** RE: Vertigo Media, Inc. and Remote Media LLC v. Earbuds Inc., C.A. No. 21-120-MN

Counsel,

Thank you for your prompt response. We were not aware of the logistics related to your move, nor of you needing to finish meeting your Illinois CLE requirements. Rather than respond to the non-relevant portions of your email, we reiterate our request to let us know whether Vertigo Media, Inc. and Remote Media, LLC will provide a witness for deposition on topics related to Plaintiffs' allegations of infringement.

Best regards,

Douglas Bridges

On Jun 30, 2021, at 11:42 AM, "Villeneuve, Alain" <avilleneuve@duanemorris.com> wrote:

> Counsel,
>
> As you must know, today is our Illinois deadline for CLE credits, this matter requires my full attention. My firm has also scheduled my move which includes putting my computer off-line later today until an IT experts can set it back up. I also note the national holiday and summer vacations are around the corner. My deposition, which lasted 6+ hours was held on Tuesday, June 22, 2021, now more than a week ago. We offered all relevant responses to the declaration as filed. We have also looked quickly at the Earbuds-produced documents and it appears most if not all technical documents are missing from the production. We are still in the process of review and plan to make, later this week a formal request for specific production.
>
> In this backdrop, let us review the rules and get back to you as quickly as possible with a formal response.
>
> Sincerely,
>
> Alain

www.duanemorris.com

**Alain Villeneuve**
Partner

| | |
|---|---|
| Duane Morris LLP | **P:** +1 312 499 6739 |
| 190 South LaSalle Street, Suite 3700 | **F:** +1 312 277 3967 |
| Chicago, IL 60603-3433 | **C:** +1 312 404 1569 |

E-MAIL | BIO | VCARD

**From:** Douglas L. Bridges <doug@noroozipc.com>
**Sent:** Wednesday, June 30, 2021 8:11 AM
**To:** Timlin, Tracey E. <TTimlin@duanemorris.com>
**Cc:** Villeneuve, Alain <AVilleneuve@duanemorris.com>; Lopez, Nancy <nlopez@ashbygeddes.com>; Munro, John E. <JEMunro@duanemorris.com>; Day, John G. <jday@ashbygeddes.com>; Kayvan Noroozi <kayvan@noroozipc.com>; Kipp, Michele L. <mkipp@ashbygeddes.com>; Mayo, Andrew C. <amayo@ashbygeddes.com>; Renck, Richard L. <RLRenck@duanemorris.com>
**Subject:** Request for Deposition - Vertigo Media, Inc. and Remote Media LLC v. Earbuds Inc., C.A. No. 21-120-MN

Counsel,

Earbuds Inc. requests that the Plaintiffs, Remote Media LLC and Vertigo Media Inc., provide a witness for deposition who can testify regarding the infringement allegations put forth by the Plaintiffs in its Motion for Preliminary Injunction.  During the deposition of the declarant Alain Villeneuve, the declarant refused to answer any deposition questions regarding the meaning of claim terms, any allegations of infringement (including pre-suit allegations that he was testifying about in his declaration), and any of the claim charts.

Accordingly, please provide us a witness who is willing to testify about the infringement allegations put forth by the Plaintiffs in this matter.  We would like to perform the deposition on July 8 or July 9, but are willing to accommodate the schedule of the deponent.  Please let us know by 5:00 P.M. Eastern Time, June 2, 2021,

# EXHIBIT E

VER_000740-VER_000761, VER_000900-
VER_000907, VER_000373-VER_000380

CONFIDENTIAL OUTSIDE ATTORNEYS'
EYES ONLY PER LR 26.2

# REDACTED IN ITS ENTIRETY